# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAYLA KIANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 04-CV-11838-PBS |
| | ) | |
| TRUSTEES OF BOSTON UNIVERSITY, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION (1) TO DISMISS COUNTS I, II, AND V THROUGH X OF THE COMPLAINT, AND (2) TO DISMISS THE INDIVIDUAL DEFENDANTS

Defendants Trustees of Boston University, Ronald Cass, Andrew Kull, Wendy Mariner, and Christine Marx (together, the "University") submit this memorandum in support of their motion to dismiss Counts I, II, and V through X of the complaint, and to dismiss individual Defendants Cass, Kull, Mariner and Marx in the entirety.

At the time of the events at issue, Plaintiff was a student at Boston University's School of Law. She committed plagiarism in violation of the Law School Disciplinary Regulations and was sanctioned accordingly. Plaintiff does not challenge the Law School Judicial Discipline Committee's finding of plagiarism, but she now seeks to blame the University for her own errors of judgment.

This is not a case about disability discrimination. Although the complaint asserts violations of the Americans with Disabilities Act, 42 U.S.C., §§ 12101, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, Plaintiff's disability was irrelevant to the decisions made by the faculty of the School of Law.

<u>PROCEDURAL HISTORY</u>

Plaintiff filed her complaint in Suffolk Superior Court on August 9, 2004.  On August 24, 2004, the University removed the case to the United States District Court pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).  Thereafter, the University filed an Assented-to Motion for Enlargement.

<u>ALLEGATIONS IN THE COMPLAINT</u>

Without conceding the veracity of any of the allegations contained in the complaint, but assuming them to be true for purposes of this Motion only, Plaintiff Layla Kiani alleges the following facts that may be relevant to this Motion:

Plaintiff has suffered from cerebral palsy all her life, and as a result she has a wide range of health-related problems.  ¶¶ 12-18.

Plaintiff graduated from the University of Texas, and enrolled in the University's Law School in August 2000.  ¶ 21; ¶ 26 (as amended).

At some point during her Law School career, Plaintiff began taking a medication that "caused her to experience high rates of drowsiness during the day when she was in class and also when she was studying and writing her course papers."  ¶¶ 28-30.  The medicine had certain side effects relating to her health and also caused her to experience "high degrees of difficulty with her studies."  ¶¶ 31-32.

Six days prior to her scheduled date of graduation, Plaintiff was informed that she would not be permitted to graduate, and was suspended from the Law School because of concerns that she may have committed plagiarism on a paper she had submitted to a member of the faculty. ¶¶ 34-36.  Defendant Professor Wendy Mariner, who reported the alleged grade violation, had an

opportunity to re-grade Plaintiff's paper during the spring of 2003 but did not change the grade at that time.  ¶¶ 36-38.

Plaintiff plagiarized four separate papers submitted to the Law School "while under the influence of the medicine Phenergan."  She never intended to plagiarize.  ¶¶ 39-42; Complaint, Ex. C.

Plaintiff was charged with four counts of plagiarism, and selected a member of the University faculty to represent her before the Judicial Discipline Committee.  She was never informed of her right to remain silent, as required by the University's own procedural rules and regulations.  ¶¶ 42, 44-45.

The Judicial Discipline Committee found that Plaintiff had violated the Law School's Disciplinary Regulations regarding plagiarism and suspended her for six months.  Thereafter, the professors who taught the four courses in which the plagiarism occurred were given the opportunity to change Plaintiff's grades.  Professor Mariner changed Plaintiff's grade to an F, causing her overall grade point average to fall below 2.00.  ¶¶ 46-50.

On December 18, 2003, Plaintiff was notified "that she had been dropped from the Law School due to 'academic deficiency'."  ¶ 51; Complaint, Ex. D.

The University failed to provide Plaintiff with a verbal and written document informing her of her right to remain silent as set forth in the School of Law's Disciplinary Regulations. ¶¶ 57, 58.

The University allowed an attorney, who was a member of the School of Law faculty, to represent Plaintiff.[1]  ¶¶ 65, 66.

"The individual Defendants had on several occasions intentionally made remarks such as that the Plaintiff was 'not intellectually up to' the Defendants' standards."  ¶ 73.  One member of the faculty remarked that "there had been 'some regret admitting her' to the School."  ¶ 74.

The University refused Plaintiff's request that she be provided with a stenographer as an accommodation.  Plaintiff was also denied access to a private room in the library to listen to her class tapes and was forced to use the main lobby of the library to study.  In her second year, she was given a key to use a room in the library.  ¶¶ 82-84.

During the course of Plaintiff's career in the Law School, "Defendants . . . had made comments that they were not content with the presence of the Plaintiff."  ¶ 95.

The University's conduct has caused Plaintiff to "become chronically traumatized and suffer[] from sleepless nights and recurrent nightmares."  ¶ 119.  The University has caused her to seek professional help through a hypnotherapist.  ¶ 120.

## STANDARD OF REVIEW

"Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law."  Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 567 (D.R.I. 1996).  "Dismissal or judgment on the pleadings is inappropriate unless 'it appears beyond a doubt that the [plaintiffs] can prove no set of facts in support of [their] claim[s] which would entitle [the plaintiffs] to relief.'"  Estate of Castucci ex rel. Castucci v. U.S., 311 F. Supp. 2d 184, 186, (D. Mass. 2004) (Lindsay, J.) (quoting U.S. v.

---

[1]     Plaintiff does not articulate the context for this allegation, but the University will stipulate that she is referring to Arnold Rosenfeld, Esq., an adjunct faculty member, who represented her at the proceedings of

U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999)).  "For the purpose of [a motion to

dismiss], [the court] must treat all well-pleaded facts, and all reasonable inferences therefrom, as

true."  Id.  However, "notice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless

tiger."  Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 67 (1st Cir. 2004)

(quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)).  "[I]n

considering motions to dismiss [the court] should continue to 'eschew any reliance on bald

assertions, unsupportable conclusions, and opprobrious epithets.'"  Id. at 68 (quoting Chongris v.

Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)).

## ARGUMENT

The complaint weaves two separate stories.  Plaintiff seems to suggest that she is the

victim of (1) the Law School's failure to follow its own procedures, and (2) the vagaries of

improperly prescribed medication.  But the threads must be untangled in order to analyze this

motion.  In fact, the Law School complied with its own procedures and well-established doctrine

in this jurisdiction governing the relationship between academic institutions and students.  And,

to the extent Plaintiff had difficulty with the medication she was taking, it has no bearing on this

case and does not add credence to her various claims.

**Count I:**     The University Did Not Breach Any Contract with Plaintiff, and the
            Individual Defendants Did Not Enter into a Contract with Her.

In Massachusetts, it is generally accepted that the relationship between a university and

its students is governed by contract principles.  Cloud v. Trustees of Boston University, 720 F.2d

721, 724 (1st Cir. 1983); Pacella v. Tufts Univ. Sch. of Dental Med., 66 F. Supp. 2d 234, 240-41

(D. Mass. 1999); Guckenberger v. Trustees of Boston University, 957 F. Supp. 306, 317

(D. Mass. 1997); Schaer v. Brandeis Univ., 432 Mass. 474, 478, 735 N.E.2d 373 (2000); Morris

---

the Judicial Discipline Committee.  ¶ 44.

v. Brandeis Univ., 60 Mass. App. Ct. 1119, 804 N.E.2d 961, 2004 WL 369106 at *1 (2004) (unpublished); Berkowitz v. President and Fellows of Harvard Coll., 58 Mass. App. Ct. 262, 269-70, 789 N.E.2d 575 (2003); Sullivan v. Boston Architectural Ctr., Inc., 57 Mass. App. Ct. 771, 773, 786 N.E.2d 419 (2003).

There are two fundamental guideposts:  First, courts apply "the standard of 'reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give to it.' "  Schaer, 432 Mass. at 478 (quoting from Cloud, 720 F.2d at 724).  Second, courts "adhere to the principle that '[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities.' "  Schaer, 432 Mass. at 482 (citing Schaer, 48 Mass. App. Ct. 23, 26, 716 N.E.2d 1055 (1999)).  Applying these principles illuminates fatal defects in this complaint.

Plaintiff makes the intriguing allegation that she was not afforded "the right to remain silent" as set forth in the School of Law Disciplinary Regulations.  However, that claim is categorically false.

In the ordinary course, a motion to dismiss is based solely upon the complaint, and if additional documents are incorporated into the Court's decision, the matter is properly converted into one for summary judgment under Rule 56.  However, courts have made exceptions for documents that are central to a plaintiff's claim, or referred to in the complaint, or whose authenticity is uncontested.  Estate of Castucci ex rel. Castucci v. U.S., 311 F. Supp. 2d 184, 188 n.7 (D. Mass. 2004); Lynch v. Bd. of State Examiners of Electricians, 218 F. Supp. 2d 3, 7 n.2 (D. Mass. 2002); Hogan v. Eastern Enterprises/Boston Gas, 165 F. Supp. 2d 55, 58 (D. Mass. 2001); Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4, 809 N.E.2d 1017 (2004).  Here, the complaint liberally references the School of Law Disciplinary Regulations, sections of

which are appended to the complaint.  Article IV(1) of the Disciplinary Regulations states that "[a]ll students are to be informed of . . . the right to remain silent."  (Complaint, Exhibit F).  Because the disciplinary hearing is "central to Plaintiff's claim" in Count I, this Court may consider whether in fact Plaintiff was made aware of that right at the hearing.[2]

A transcript of the opening remarks at Plaintiff's September 12, 2003, hearing before the School of Law Judicial Committee is attached (Exhibit 1).[3]  On the bottom of the page 7 of the transcript, Professor William Ryckman, a member of the Law faculty, states:

> Obviously the student has the right to remain silent and on advice of counsel I was informed that Ms. Kiani did not wish to be interviewed by me.  That is why these materials don't contain a transcript of that interview. . . .

Thus the allegation that Plaintiff was not informed of her right to remain silent (¶¶ 45, 58) is false.  Plaintiff, who was represented by counsel throughout the internal Judicial Committee proceedings, clearly knew her rights and, as indicated above, was informed of her rights.[4]

Consistent with the First Circuit's guidance in Cloud, the University reasonably expected that Plaintiff, a law student, would be familiar with the protocols set forth in the Disciplinary

---

[2]     As the cases cited above indicate, in this jurisdiction the consideration of materials outside the pleadings does not necessarily require conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56.  "For instance, documents referred to in the pleadings are incorporated therein, even if not attached to the pleadings, and therefore may be considered on a Rule 12(b)(6) motion without converting the motion to one for summary judgment."  1 Moore's Federal Rules Pamphlet, § 12.6[2], at 147 (2002) (citing multiple authorities).  The complaint refers to the Judicial Discipline Committee Hearing (¶¶ 44-46), and it is therefore appropriate to consider whether, in fact, Plaintiff was "informed of her right to remain silent."  ¶ 45.

[3]     Exhibit 2 is the affidavit of Professor Tracey Maclin, which describes the process of recording the hearing.

[4]     As Professor Ryckman notes in the above-quoted section of the transcript, Plaintiff declined to be interviewed.  Professor Ryckman's comment leads to the conclusion that, had Plaintiff consented to an interview, she would have been informed of her rights and would have signed a written acknowledgment that she had been so informed.  One can also assume that Plaintiff, a law student, and her attorney, an adjunct member of the School of Law faculty and a well-respected local attorney, were aware of Plaintiff's rights as described in the Disciplinary Regulations.

Regulations.  Further, the University could reasonably expect that Professor Ryckman's statement that she had the right to remain silent satisfied its obligation to provide her with notice of her rights in accordance with the Disciplinary Regulations.

The Supreme Court, and courts in this Circuit, have honored the traditional deference granted educational institutions to make academic judgments.  Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985); Sweezy v. State of New Hampshire, 354 U.S. 234, 262-64 (1957) (Frankfurter, J., concurring); Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 23-26 (1st Cir. 1991), after remand, 976 F.2d 791 (1st Cir. 1992); Vargas-Figueroa v. Saldana, 826 F.2d 160, 162-63 (1st Cir. 1987) (Breyer, J.).  As the First Circuit has observed, "[t]here can be no doubt that courts should be slow to intrude into the sensitive area of the student-college relationship especially in matters of curriculum and discipline."  Russell v. Salve Regina Coll., 890 F.2d 484, 489 (1st Cir. 1989), rev'd on other grounds, 449 U.S. 225 (1991), and reinstated on remand, 938 F.2d 315 (1st Cir. 1991).

In Schaer, the Supreme Judicial Court noted that courts are reluctant to interfere with academic and disciplinary decisions made by private universities.  432 Mass. at 482.  Colleges and universities, "in order properly to carry out their functions, must be given more contractual leeway than commercial parties."  Russell, 890 F.2d at 489.  "Courts should be slow to intrude into the sensitive area of the student-college relationship, especially in areas of curriculum and discipline."  Guckenberger v. Trustees of Boston Univ., 974 F. Supp. 106, 150 (D. Mass. 1997) (quoting Russell, 890 F.2d at 489).  Federal and state courts in this jurisdiction consistently honor these admonitions.

In disciplinary proceedings, the courts apply both a "reasonable expectations" test and a "basic fairness" test to determine good faith.  Courts look to see if a school followed its own

procedures.  Cloud, 720 F. 2d at 725; Schaer, 432 Mass. at 481.  Here, the complaint identifies

no procedural or substantive contractual right that the University has violated.  The School of

Law followed its own internal rules.  Plaintiff has failed to state a claim for breach of contract.

Count I must be dismissed.[5/]

**Count II:**     The University's Conduct Does Not Constitute "State Action."

The complaint alleges that the University "failed to afford the Plaintiff her right to remain

silent [and] violated the Plaintiff's right to a full due process."  ¶ 63.  To assert a valid cause of

action under the Fourteenth Amendment, a plaintiff must allege deprivation of a right which may

be " 'fairly attributable to the State'."  Ponce v. Basketball Fed'n of Com. of Puerto Rico, 760

F.2d 375, 377 (1st Cir. 1985) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

But the complaint contains no allegation of conduct by the University that is fairly attributable to

governmental action, and Count II must be dismissed.

The Supreme Court has held that state action requires (1) an alleged unconstitutional

deprivation caused by acts taken pursuant to state law (2) as a result of conduct that may be

fairly attributed to the State.  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999);

see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) ("Because the [Fourteenth]

Amendment is directed at the States, it can be violated only by conduct that may be fairly

characterized as 'state action.' "); Shelley v. Kraemer, 334 U.S. 1, 13 (1948) ("[T]he principle

has become firmly embedded in our constitutional law that the action inhibited by the first

---

[5/]     As a matter of law, the individual defendants have not "engaged in a contractual relationship with the student, the Plaintiff" (¶ 56).  The core nature of the contractual relationship between an academic institution and its students involves the payment of tuition in exchange for an education.  Plaintiff does not claim she paid any of the individual defendants, who are employed by the University to teach or perform administrative responsibilities.  The traditional elements of contract—offer, acceptance, consideration—are not pleaded, and do not exist, between Plaintiff and the individual defendants.  Their obligations to Plaintiff are governed by principles of law, not private agreements.  A corporate officer has no liability at common law for the corporation's contractual obligations.  Callahan v. Harvest Bd. Int'l., Inc., 138 F. Supp. 2d 147,

section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.").  The complaint ignores this core principle.

The fact that the University "receives federal financial assistance" does not make it "subject to the provisions of the 14th Amendment of the US Constitution."  (Complaint, ¶ 61) Federal funding of a private university does not support claims asserted under the Fourteenth Amendment.  See, e.g., Hoover v. Suffolk Univ. Law Sch., 27 F.3d 554, 1994 WL 251266 at * 1 (unpublished) (1st Cir. 1994) ("It is well settled, however, that receipt of federal funding does not render an entity a state actor for purposes of Section 1983."); Berrios v. Inter American Univ., 535 F.2d 1330, 1332 n.5 (1st Cir. 1976) ("The district court properly refused to take into account financial assistance from the federal government in considering the presence of state action.") (citations omitted); Molinar v. Western Elec. Co., 525 F.2d 521, 532 (1st Cir. 1975) (federal involvement "irrelevant" under Section 1983).

> In order to determine whether a private actor may be found to be a state actor, courts must examine:  (1) whether there was a sufficient nexus between the state and the private actor which compelled the private actor to act as it did; (2) whether the private actor has assumed a traditionally public function; or (3) whether there is a sufficient "symbiotic relationship" between the state and the private actor so that the state might be recognized as a joint participant in the challenged activity.

Missert v. Trustees of Boston University, et al., 73 F. Supp. 2d 68, 71 (D. Mass. 1999) (Saris, D.J.) (citations omitted), aff'd 248 F.3d 1127 (1st Cir. 2000).  The University's decisions do not qualify as governmental action under any of these tests.

---

163 (D. Mass. 2001); Guckenberger, 957 F. Supp. at 324; Porshin v. Snider, 349 Mass. 653, 655, 212 N.E. 2d 216 (Mass. 1965).

1.      Nexus/Compulsion Test.

In Perkins v. Londonderry Basketball Club, 196 F.3d 13 (1st Cir. 1999), the Court of

Appeals for the First Circuit defined the parameters of the nexus test:

> In order to prevail under the second test for state action, a plaintiff
> must show a "close nexus between the State and the challenged
> action of the [private] entity so that the action of the latter may be
> fairly treated as that of the State itself." Jackson v. Metropolitan
> Edison Co., 419 U.S. 345, 351, 95 S. Ct. 449 (1974).  Such a nexus
> requires more than the State's passive acquiescence in, or mere
> approval of, the challenged conduct.  See American Mfrs. Mut.
> Ins. Co. v. Sullivan, 526 U.S. 40, 119 S.Ct. 977, 986, 143 L.Ed.2d
> 130 (1999).  Rather, the plaintiff must show that the State "has
> exercised coercive power or has provided such significant
> encouragement, either overt or covert," that the challenged conduct
> fairly can be attributed to the State.  Blum v. Yaretsky, 457 U.S.
> 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

196 F.3d at 19.

The complaint fails to allege "a sufficiently close nexus between the State and the

challenged action of the regulated entity so that the action of the latter may be fairly treated as

that of the State itself." Jackson, 419 U.S. at 351.  Plaintiff does not allege, and could not prove,

that the University's private decisions reflect the coercive power of the state.  The complaint

recognizes that "the decision being challenged is [the University's] decision to terminate one of

its students for failure to meet its academic research requirements under standards set by the

university." Missert, 73 F. Supp. 2d at 72.  In Missert, this Court held that a similar decision

"was not affirmatively mandated or governed by federal law.  The termination decision,

therefore, flunks the nexus test." Id.

2.      Government Function.

In Perkins v. Londonderry Basketball Club, the First Circuit wrote:

> The public function analysis is designed to flush out a State's
> attempt to evade its responsibilities by delegating them to private

entities.  In order to prevail on such a theory, a plaintiff must show more than the mere performance of a public function by a private entity; she must show that the function is one <u>exclusively</u> reserved to the State.  Government customarily involves itself in many types of activities, but few of those activities come within the State's exclusive preserve.  To date, the short list of activities that have been held to satisfy this demanding criterion includes the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and, in at least limited circumstances, the operation of a municipal park.  When a plaintiff ventures outside such narrow confines, she has an uphill climb.

196 F.3d at 18-19 (emphasis in original) (citations omitted).  Here, Plaintiff's claim that the

University's academic disciplinary procedure serves a traditional public function has no basis in

fact or law.

To qualify as state action, the activity at issue must comprise both a <u>traditional</u>

government function and an <u>exclusive</u> government function.  <u>Rodriguez-Garcia v. Davila</u>, 904

F.2d 90, 98 (1st Cir. 1990); <u>see</u> <u>also</u> <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 842 (1982) ("[O]ur

holdings have made clear that the relevant question is not simply whether a private group is

serving a 'public function.'  We have held that the question is whether the function performed

has been 'traditionally the exclusive prerogative of the state.' ") (citations omitted); <u>Barrios-</u>

<u>Velazquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico</u>, 84 F.3d 487,

493-94 (1st Cir. 1996) (same); <u>Rodriques v. Furtado</u>, 950 F.2d 805, 813 (1st Cir. 1991) (same).

The mere fact that a private educational institution receives financial assistance from the

government does not elevate the conduct of that institution to state action.  <u>Rendell-Baker</u>, 457

U.S. at 840 (private school's receipt of federal funds does not make decision to discharge

employee an act of the state); <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982) (extensive regulation

does not convert nursing home into state actor); <u>Krohn v. Harvard Law Sch.</u>, 552 F.2d 21, 24

(1st Cir. 1977) (private university's receipt of state financial assistance, and its regulation by

public accreditation counsel, do not, either individually or together, constitute sufficient attributes of governmental involvement to render university's disciplinary proceedings state action for Section 1983 purposes); Tynecki v. Tufts Univ. Sch. of Dental Med., 875 F. Supp. 26, 33 (D. Mass. 1994) (relying on Rendell-Baker v. Kohn).  The financial ties that may exist between the government and Boston University are insufficient to transform the University into a state actor for purposes of asserting a claim under the Constitution.

In Missert, this Court observed that "[t]he First Circuit has held that education is not a traditionally exclusive public function.  Academic decision-making within a private graduate institution does not constitute state action."  73 F. Supp. 2d at 72 (citations omitted).  There is nothing about the operation of the University's academic discipline procedures that can even remotely be considered a traditional government function.

3.    Symbiosis.

The complaint fails to allege the existence of a symbiotic relationship between the University and the state sufficient to warrant a finding of state action.  Again, Perkins v. Londonderry Basketball Club charts the course:

> In terms, this test requires an evaluation of whether the government "has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity."  Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961).  A true symbiosis is predicated on interdependence and joint participation.  Thus, in contrast to the nexus inquiry, this avenue of approach ousts the challenged conduct from center stage and concentrates instead on the nature of the overall relationship between the State and the private entity.

196 F.3d at 21 (citation omitted).

Perkins describes "some factors to which courts typically attach special weight . . . [including] the extent to which the private entity is (or is not) independent in the conduct of its

day-to-day affairs . . . [and] the circumstances surrounding a private entity's use of public

facilities. . . ." Id. (citations omitted).  Neither of these factors is alleged in the complaint, and

there is no basis for finding a symbiotic relationship between the University and the state.

*     *     *     *     *

The complaint fails to meet any of the standards used to determine whether private

parties acted under color of law.  In the absence of allegations that could support a finding of

state action, Count II must be dismissed.

**Count V:**      Plaintiff Fails to Allege the Elements of a Claim of Fraud.

A claim of fraud must be supported by allegations (1) that the University made

knowingly false statements; (2) that it made those statements with the intent to deceive; (3) that

those statements were material to Plaintiff's decision to enroll in the School of Law; (4) that

Plaintiff had reasonably relied on those statements; and (5) that she was injured as a result of her

reliance.  Zyla v. Wadsworth, A Division of The Thomson Corp., 360 F.3d 243, 254 (1st Cir.

2004) (citing Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 (1st Cir.

2003) (applying Massachusetts law).  The complaint does not plead these elements.

Both Fed. R. Civ. P. 9(b) and Mass. R. Civ. P. 9(b) require that the elements of fraud

"shall be stated with particularity."  Conclusory allegations are insufficient.  "We have said that

Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the

alleged false or fraudulent representations."  U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,

360 F.3d 220, 226 (1st Cir. 2004) (citing Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18-19

(1st Cir. 2002).

Count V alleges that the University "made representations to the Plaintiff in order to

obtain money for tuition and services from the Plaintiff under false pretenses" (¶ 88), but fails to

describe those false pretenses.  Plaintiff claims that she relied to her detriment upon certain

representations made by the University (¶ 89), and that they were false (¶ 90), but she fails to say

what representations were false.

In <u>Karvelas</u>, the First Circuit restated its approval of allegations of fraud made on the

basis of "information and belief."  <u>Id.</u>  But allegations made on a plaintiff's information and

belief "remain subject to the particularity requirements of Rule 9(b).  Moreover, allegations of

fraud made on information and belief are also subject to the additional requirement that 'the

complaint set[] forth the facts on which the belief is founded.' "  <u>Id.</u>  (quoting from <u>New England</u>

<u>Data Services, Inc. v. Becher</u>, 829 F.2d 286, 288 (1st Cir. 1987).  <u>See</u> <u>also</u> <u>In Re Cabletron Sys.,</u>

<u>Inc.</u>, 311 F.3d 11, 28 (1st Cir. 2002) (same); <u>Romani v. Shearson Lehman Hutton</u>, 929 F.2d 875,

878 (1st Cir. 1991) ("where allegations of fraud are . . . based only on information and belief, the

complaint must set forth the source of the information and the reasons for the belief").

Count V's "information and belief" allegations include the charge that the University

"made misrepresentations to the Plaintiff in order to obtain money for tuition and services from

the Plaintiff under false pretenses."  ¶ 88; repeated in ¶ 90.  However, the complaint fails to state

the nature of those allegedly false misrepresentations, the facts upon which the belief that the

University's representations were false is founded, when the alleged misrepresentations were

made, or who made them.  <u>See</u> <u>Karvelas</u>, 360 F.3d at 226.

The complaint strains credibility by suggesting that the University and the individual

defendants made certain misrepresentations solely for the purpose of acquiring Plaintiff's tuition.

That, coupled with the complaint's failure to meet the particularity requirement of Rule 9(b) of

the Federal and Massachusetts Rules of Civil Procedure, compels the dismissal of Count V.

**Count VI:**     The Complaint Does Not Support the Claim that the University Engaged in Conspiracy.

Count VI contains the most farfetched charge in the complaint.  Plaintiff has again used hornbook language to support her claim of conspiracy ("The Defendants' conduct has consistently illustrated a common design. . . .") (¶ 94) but has not pleaded facts to support her theory.

Plaintiff apparently rests her conspiracy theory on "comments that [the University, and perhaps the individual defendants] were not content with the presence of the Plaintiff [in the Law School]."  ¶ 95.  Elsewhere, Plaintiff cites one, and perhaps two, such remarks.  ¶¶ 73, 74.  But claims that one or more unidentified individuals said that Plaintiff was not capable of performing at the academic levels expected at the Law School, or that the decision to admit her had been a mistake, are hardly the stuff of which conspiracies are made.

Plaintiff has acknowledged that she committed plagiarism.  ¶¶ 39-40.  Her suspension, and the consequences that followed, stemmed directly from plagiarism.  ¶¶ 35, 49-51.  The University may have misapplied its rules, as alleged in Count I.  Plaintiff may be able to show that the University engaged in discrimination on the basis of her disability, as suggested in Count III.  Plaintiff was apparently dissatisfied with the accommodations she received, as alleged in Count IV.  But the allegations supporting those claims simply do not support a claim of conspiracy.

In Aetna Casualty & Surety Co. v. P & B Autobody, et al., 43 F.3d 1546 (1st Cir. 1994), the Court of Appeals discussed conspiracy theory:

> [C]ivil conspiracy is more akin to a theory of common law joint
> liability in tort.  It is explicitly recognized in Massachusetts
> law. . . .  In the civil context, both elsewhere and in Massachusetts,
> the word conspiracy is frequently used to denote vicarious liability
> in tort for "concerted action.". . .  For liability to attach on this

- 16 -

> basis, there must be, first, a common design or an agreement,
> although not necessarily express, between two or more persons to
> do a wrongful act and, second, proof of some tortious act in
> furtherance of the agreement.

43 F.3d at 1564 (citations omitted).

Count VI rests entirely upon what appear to be a few stray remarks. They are not the materials from which "a common design" can be inferred. It defies common sense to rely on these remarks in support of Plaintiff's apparent conclusion that the University "never informed her that they planned to eject her from the School after she had fully paid her tuition for three years. . . ." ¶ 96. This assertion stretches the limits of plausibility.

In <u>Aetna Casualty and Surety</u>, the Court of Appeals held that conspiracy required "proof of some tortious act in furtherance of the agreement." <u>Id.</u> However, as noted above, Count V must be dismissed because Plaintiff has not pleaded the elements of a claim of fraud. For that reason as well, Count VI must be dismissed.

**Count VII:** <u>Count VII Must Be Dismissed Because Chapter 151B Does Not Provide a Remedy, and, In Any Event, Plaintiff Has Failed to Meet the Jurisdictional Prerequisite of Asserting a Claim Under That Statute.</u>

Count VII alleges that the University discriminated against Plaintiff because of her status as a disabled person. She claims (at ¶ 100) that she was denied the services of a stenographer as an accommodation (although she does not state that, in fact, she was given a wide range of services as a result of an assessment of her needs conducted by the University's Office of Disability Services). Her allegation that the University "delayed other forms of accommodation by not providing her access to the library for the entire first year of her law school" (¶ 101) pushes the boundaries of common sense. Plaintiff also claims that the charge of plagiarism amounts to discrimination because she was not given "a written document apprising her of her right to remain silent." ¶ 103.

Count VII must be dismissed for several reasons.  First, the Massachusetts Fair Employment Practices Act, G.L. c. 151B, cited in the complaint (¶ 98), prohibits discrimination in employment.  See, generally, G.L. c. 151B, § 4.  But Plaintiff was a University student, not a University employee, and Chapter 151B does not apply.

Chapter 151C, which is not pleaded, is titled "Fair Educational Practices."  However, it prohibits unfair educational admissions practices.  G.L. c. 151C, § 2(a)-(f).[6]

The Massachusetts Commission Against Discrimination has considered the scope of its own jurisdiction under c. 151C.  In Oliver v. Holyoke Community College, MCAD Docket No. 98-SED-0467 (November 5, 2001), the full Commission ruled that the MCAD lacked jurisdiction under c. 151C to hear a student's claim of adverse treatment as a result of her race because that statute prohibits discrimination in admissions to educational institutions, but does not address discrimination in the treatment of students (except with regard to sexual harassment).  See also Iskander v. BU Medical School, MCAD Docket No. 99-BED-1767 (July 30, 2002) (same).  Both decisions are attached (Exhibit 3).  The University was unable to locate any judicial decisions on this issue, but the Commission's interpretation of its own authority is dispositive.

---

[6]    Chapter 151C, § 2(g), prohibits sexual harassment "in any program or course of study in any educational institution."  The statute does not have an equally expansive remedy for students who claim disability discrimination "in any program or course of study."

For these reasons, Count VII must be dismissed.[7]

**Count VIII:**   Count VIII Must Be Dismissed Because a Claim for Unjust Enrichment
Does Not Lie Where the Parties' Relationship Is Treated as a Contract.

Plaintiff claims that the University has been unjustly enriched at her expense.  ¶ 106.  But

the relationship between an academic institution and its students is generally treated by federal

and state courts in this jurisdiction as a contractual relationship.  See pp. 5-6, supra.  The

complaint alleges (at, e.g., ¶ 57) that the University violated its own procedural rules that govern

disciplinary proceedings.  These rules may form the basis for a contract, in which case Plaintiff

may have a right to recover under a theory of contract if the University was unjustly enriched at

her expense.  But unjust enrichment is not a standalone claim.

Plaintiff has an adequate remedy at law.  In Micromuse, Inc. v. Micromuse, PLC, 304 F.

Supp. 2d 202 (D. Mass. 2004), Judge Stearns recently discussed the application of unjust

enrichment to a dispute:

> Unjust enrichment is an equitable claim.  In this context, the court
> is being asked to imply a contract in the event that it finds no
> enforceable agreement [between the parties] and to order
> restitution. . . .  To satisfy the five elements of unjust enrichment,
> a plaintiff must show (1) an enrichment, (2) an impoverishment,
> (3) a relationship between the enrichment and the impoverishment,
> (4) the absence of justification and (5) the absence of a remedy
> provided by law. . . .  Where a contract does govern the parties'
> relationship, the contract provides the measure of the plaintiff's
> right and no action for unjust enrichment lies. . . .  This principle is
> simply an extension of the fifth element of the doctrine, that is,

---

[7]   Furthermore, Plaintiff has not satisfied the jurisdictional prerequisite for filing a claim alleging
discrimination on the basis of Massachusetts state law.  The Fair Employment Practices Act, c. 151B, § 9,
par. 2, suggests that a claimant must also exhaust administrative remedies under c. 151C by filing a
complaint before the Massachusetts Commission Against Discrimination.  Although c. 151C neither refers
back to c. 151B nor contains the exhaustion requirement of that chapter, it is reasonable to conclude that a
claimant alleging an unfair educational practice must also exhaust her remedies.  But cf. Morrison v.
Northern Essex Community Coll., 56 Mass. App. Ct. 784, 786 n.6, 780 N.E.2d 132 (2002), in which the
Massachusetts Appeals Court allowed two female athletes who claimed to have been sexually harassed by
their basketball coach to pursue claims in Superior Court without exhausting administrative remedies.
Nonetheless, in light of Count VII's other, obvious defects, the Court does not have to reach this issue.

> where a plaintiff has an adequate remedy at law, a claim of unjust
> enrichment is unavailable.

304 F. Supp. 2d at 209 n.8 (citations and quotations omitted).

Where, as here, the student-university relationship is contractual in nature, Plaintiff has a remedy at law (although none is appropriate in this case), and her unjust enrichment claim is redundant and should be dismissed.

**Count IX:**    <u>Count IX Must Be Dismissed Because the Complaint Does Not Allege the Elements of a Claim of Conversion.</u>

Count IX quotes the hornbook definition of conversion (¶ 109), but the complaint fails to plead the elements and must be dismissed.

Under Massachusetts law, the tort of conversion requires the plaintiff to prove that the defendant "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he ha[d] no right of possession at the time of the alleged conversion." <u>Abington Nat'l Bank v. Ashwood Homes, Inc.</u>, 19 Mass. App. Ct. 503, 507, 475 N.E.2d 1230 (1985); <u>Cadle Co. v. Schlichtmann</u>, 267 F.3d 14, 21 (1st Cir. 2001). Plaintiff's Statement of Damages, appended to the complaint, includes a claim for $71,862 identified as "tuition to Boston University." This amount is also referenced in Count IX (¶¶ 109, 111). But Plaintiff does not argue, and certainly would be unable to show, that the University did not have the right to possession of tuition at the time it took possession—that is, at the time Plaintiff paid the cost of attending law school.

Plaintiff paid tuition in exchange for a service—that is, her education. The complaint does not allege that the University refused or otherwise failed to teach Plaintiff even though it accepted her tuition payment. Nor does (or could) Plaintiff try to characterize tuition as an exchange for a degree that was improperly withheld. In any event, that argument would fail

because a student does not receive a degree simply by paying tuition. She must complete her academic requirements.

In <u>Kelley v. LaForce</u>, 288 F.3d 1 (1st Cir. 2002), the Court of Appeals held that "[a]n action for conversion cannot be maintained without proof that the defendant either did some positive wrongful act <u>with the intention to appropriate the property to himself</u> or to deprive the rightful owner of it, or destroyed the property." 288 F.3d at 12 (emphasis added) (citations and quotations omitted). Plaintiff did not assert, and could not prove, that the University intended to deprive her of her property—the money she paid for tuition—and Count IX must therefore be dismissed.

> **Count X:**    <u>The Complaint Does Not Support a Claim of Intentional Infliction of Emotional Distress</u>.

The Supreme Judicial Court's decision in <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 355 N.E.2d 315 (1976), is the cornerstone of any analysis of a claim for intentional infliction of emotional distress. That case set the bar so high that very few claims survive. In <u>Agis</u>, the Court held that a claim must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' . . . (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure.' " 371 Mass. at 144-45. Thirty-eight years of judicial gloss have reinforced, rather than diluted, the <u>Agis</u> standard.

Paragraph 113 of the complaint sets out the gravaman of this claim:

> The actions of the Defendants in informing the Plaintiff Six (6)
> Days before her graduation, their maltreatment of her during her
> studies, their subsequent refusal to allow her to attend the
> graduation ceremony, and finally their action in dropping her
> under the guise of "academic deficiency" were extreme.

Count X then recites the buzz words for a claim of intentional infliction of emotional distress:
Plaintiff asserts that the University's actions "transcended all bounds of decency by human
standards," and were "intentional," "outrageous," and "continuous." ¶¶ 114-117. But that is not
enough. In essence, this case revolves around whether the University improperly applied its
academic discipline standards. It is notable that Plaintiff acknowledges that, by the School of
Law's definition, she plagiarized four separate papers. ¶¶ 39-41. Her failure to allege, for
example, that the University's charge of plagiarism was created out of whole cloth, or that
certain of her faculty charged her with plagiarism simply to be vindictive, is fatal to this claim.

To survive a motion to dismiss, a plaintiff must allege that a defendant's conduct is
outrageous to the point of unconscionability in order to avoid dismissal of their claims. For
example, in Haddad v. Gonzalez, 410 Mass. 855, 858, 576 N.E.2d 658 (1991), the Supreme
Judicial Court affirmed a finding of intentional infliction of emotional distress against a landlord
who knowingly rented an apartment with no heat; missing windows, screens, ceiling fixtures,
and doorknobs; cracked ceilings; and infestation problems. The Court held that conduct to be
"beyond all bounds of human decency." 410 Mass. at 870.

But Massachusetts courts do not allow emotional distress claims when the disputed
conduct falls short of outrageousness. See Foley v. Polaroid Corp., 400 Mass. 82, 100, 508
N.E.2d 72 (1987) (employer's harassment, intimidation, and job displacement do not constitute
outrageous, "concerted effort to drive employee out of company"); Butner v. Dept. of State
Police, 60 Mass. App. Ct. 461, 471-72, 803 N.E.2d 722 (2004) (physicians' discriminatory
recommendation of lighter duty for pregnant police officers notwithstanding their capabilities

was "cowardly" and "sham" but not extreme and outrageous); Conley v. Romeri, 60 Mass. App. Ct. 799, 805, 806 N.E.2d 933 (2004) (boyfriend's concealing of his vasectomy is "blameworthy [but] not legally compensable"); Quinn v. Walsh, 49 Mass. App. Ct. 696, 708, 732 N.E.2d 330 (2000) (an openly conducted affair intended to cause emotional distress is not "utterly intolerable"); Conway v. Smerling, 37 Mass. App. Ct. 1, 8, 635 N.E.2d 268 (1994) (employer's disclosure to employment agency of police investigation of former employee does not rise to the requisite level of "reckless ruthlessness" or "deliberate malevolence").

Courts are reluctant to create common law remedies that overlap other existing rights of action, and the allegations supporting Count IX (to the extent there are any) overlap with allegations supporting Count I and, perhaps, Counts III and IV. Taking the allegations in the complaint as true, the University's behavior is not sufficiently egregious or extreme enough to satisfy the Agis standard. In light of that demanding standard, the conduct alleged in the complaint fails to support the elements of a claim of intentional infliction of emotional distress, and Count X must be dismissed in its entirety.

<u>The Individual Defendants Should Be Dismissed Because the Complaint Fails to Allege Any Claims Against Them.</u>

The complaint names as defendants the University, former Law School Dean Ronald Cass, Professors Andrew Kull and Wendy Mariner, and Assistant Dean Christine Marx. However, none of the allegations supports claims against any of these individuals, and they should be dismissed.

Rule 12(b)(6) does not require the Court to give credit to

> 'bald assertions, unsupportable conclusions, and opprobrious epithets.' Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989) (internal quotation omitted) (quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). While forgiving, Rule 12(b)(6) 'is not entirely a toothless tiger.' Id. A

plaintiff must allege facts in support of 'each material element necessary to sustain recovery under some actionable legal theory.' Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Campagna v. Massachusetts Dep't. of Environmental Protection, et al., 334 F.3d 150, 155 (1st Cir. 2003).  The complaint does not meet the requirements of notice pleading in the First Circuit as set out in Campagna.  It identifies the individual defendants (¶¶ 3, 6-9), but thereafter completely fails to even mention either Professor Kull or Dean Marx.

The complaint alleges that Dean Cass informed Plaintiff that she would be suspended, and prohibited from participating in Commencement ceremonies "pending completion of an investigation of a possible violation of our disciplinary regulations."  ¶¶ 34-36; Exhibit B. However, the complaint does not allege that any of these acts support "some actionable legal theory" against Dean Cass.  For instance, the complaint does not claim that he failed to comply with internal University procedures amounting to a breach of contract, or that he made his decision on the basis of Plaintiff's disability.[8]

The complaint alleges that Professor Mariner reported that Plaintiff may have plagiarized a paper, but that she had the opportunity to re-grade the paper and did not do so during the spring of 2003.  ¶¶ 36-38.  The complaint then alleges that Professor Mariner did change Plaintiff's grade in the fall of 2003.  ¶¶ 49-50.  However, the complaint fails to assert that Professor Mariner's actions violated the University's Disciplinary Regulations.  (In fact, they were completely consistent with Section VII(9) of those Regulations, appended hereto as Exhibit 4.)

---

[8] Exhibit B, attached to the complaint, is Dean Cass's letter to Plaintiff, describing the interim sanction of suspension "pursuant to Article IV, Section 4 of the Boston University School of Law Disciplinary Regulations."  Exhibit F to the complaint is a section of the Disciplinary Regulations, which (at Section IV(4)) clearly shows that the Dean acted within the scope of his authority.

A bald assertion of rights denied is insufficient to ground a viable cause of action in the face of a motion to dismiss. Prisma Zona Exploratoria de Puerto Rico, Inc. v. Calderon, 310 F.3d 1, 8 (1st Cir. 2002). Even assuming that the facts, as pleaded, are true, the particular claims are not linked to any of the individual defendants. The complaint asserts that "the individual Defendants had engaged in a contractual relationship with the student, the Plaintiff" (¶ 56), but does not go on to claim that any of the particular allegations against Defendants Cass and Mariner breached that contractual relationship (and see n.5, p. 9, supra). The complaint alleges that the individual defendants "violated the Plaintiff's right to Due Process by agreeing to allow an attorney to represent her . . ." (¶ 65), but fails to state what role the individual defendants had in this particular allegation. (Regardless, for the reasons set forth on pp. 9-14, supra, Count II, alleging violation of due process, must be dismissed because the University did not engage in state action.) Count III of the complaint alleges that the "individual Defendants had on several occasions intentionally made remarks such as that the Plaintiff was 'not intellectually up to' the Defendants' standards" (¶ 73), but that allegation speaks more about Plaintiff's ability to handle the rigors of Law School, and has no bearing on the question of whether the individual defendants contributed to a violation of the Americans with Disabilities Act.

Count X seems to allege that Dean Cass (without specifically identifying him) committed the tort of intentional infliction of emotional distress by informing Plaintiff that she was suspended on the eve of her anticipated graduation, but as set forth on pp. 21-23, supra, the complaint fails to meet the exceptionally high standard for going forward on a claim of intentional infliction of emotional distress.

In Coyne v. City of Somerville, 972 F.2d 440 (1st Cir. 1992), the plaintiff appealed from the dismissal of claims brought pursuant to 42 U.S.C., § 1983, and various state law claims relating to a public school system's failure to promote him. His principal charge related to

political favoritism.  The court, upholding the dismissal, noted that "the complaint nowhere links these [people who were promoted] to any of the defendants.  [Plaintiff] does not allege, for example, that hired candidate A was a childhood friend of defendant B, or that hired candidate C was a political hanger-on of defendant D.  He merely avers generally that, 'on information and belief' the jobs went to 'friends, cronies' or other favorites of the school committee."  Id. at 444.  Here, the complaint does not even make that modest effort to link the named defendants to any of Plaintiff's alleged harms.  "And though for pleading purposes the line between sufficient facts and insufficient conclusions is often blurred, we nonetheless require that it be plotted."  Id. at 444-45 (citations and quotations omitted).

Here, Plaintiff's failure to carry the minimal burden of linking individual defendants to specific actionable allegations compels the dismissal of Ronald Cass, Andrew Kull, Wendy Mariner, and Christine Marx.

## CONCLUSION

It is ironic that the complaint in this case, which has its roots in plagiarism, has managed to successfully plead only two viable causes of action, both relating to disability discrimination.  The complaint can fairly be read to allege that the University denied Plaintiff certain accommodations to which she was entitled (¶¶ 80-84).  Although these allegations are untrue, they are sufficient under liberal rules of pleading to allow the plaintiff to go forward with those claims.  See Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 66-67 (1st Cir. 2004).

However, none of the remaining claims meets even the modest requirements of notice pleading.  The Law School's procedures are far more generous than the law requires, and those

procedures were followed with extraordinary precision.  Plaintiff has failed to assert the elements of any of her state or common law claims, or her Fourteenth Amendment due process claim.

For the reasons set forth herein, Defendants Trustees of Boston University, <u>et al.</u>, respectfully request that this Court DISMISS Counts I, II, and V through X of the complaint.

Respectfully submitted,

TRUSTEES OF BOSTON UNIVERSITY, <u>ET</u> <u>AL.</u>,
By their attorney,


s/Lawrence S. Elswit
Lawrence S. Elswit
(BBO #153900)
Boston University
Office of the General Counsel
125 Bay State Road
Boston, Massachusetts  02215
Date:  September 20, 2004       (617) 353-2326