| | | | |
|---|---|---|---|
| 01/21/93 | Examine letter from Choate, Hall & Stuart, confer with Ms. Cook | 0.04 | $74.00 |
| 01/25/93 | Confer by telephone with Ruby Mintz, MCAD | 0.04 | $74.00 |
| 1/25/94 | Confer by telephone with Ruby Mintz, MCAD | 0.04 | $74.00 |

b. Hourly Rates

We find that the rate of $185.00 per hour requested by Complainant's counsel is generally reasonable and within the range of rates common to the marketplace within which Complainant obtained counsel and litigated her claim. See, e.g., Baker v. Town of Winchester School Committee, 14 MDLR 1079 (1991).

c. Lodestar Figure

The adjusted hours for prosecution of this matter amounted to 117.7; at counsel's billing rate of $185 per hour, the lodestar figure is $21,663.50. We believe this to be reasonable given the circumstances.

d. Costs

Complainant requested costs in the amount of $1,948.45. We find that this amount represents a reasonable figure of costs incurred incident to the litigation of this matter.

ORDER

For the reasons set forth above, we hereby affirm the findings of fact and conclusions of the Hearing Officer and we hereby issue the following order of the Full Commission:

(1) We affirm and incorporate herein all aspects of the order of the Hearing Officer; and,

(2) We award reasonable attorneys' fees to Complainant in the amount of $21,663.50 and reasonable costs in the amount of $1,948.45.

This Order represents the final action of the Commission for purposes of G.L. c. 30A. Any party aggrieved by this final determination may contest the Commission's decision by filing a complaint seeking Judicial review, together with a copy of the transcript of proceedings before the Hearing Officer (See G.L. c. 151B, §6) in the Superior Court within thirty (30) days of receipt of this decision.

SO ORDERED this 5th day of November, 2001.

* * * * * *

---

LARISSA JEAN OLIVER

v.

HOLYOKE COMMUNITY COLLEGE

Docket No. 98-SED-0467

*November 5, 2001*
*Dorca I. Gomez Chairwoman*
*Cynthia A. Tucker Commissioner*

**MCAD Jurisdiction-Fair Educational Practices Act (Chapter 151C)-Treatment of Student**—The Full Commission ruled that the MCAD lacked jurisdiction under the Fair Educational Practices Act (Chapter 151C) to hear a student's claim of adverse treatment as a result of her race because that statute prohibits discrimination in admissions to educational institutions, not discrimination in the treatment of students.

### ORDER OF THE FULL COMMISSION

This matter is before us to address Respondent's Motion to Dismiss.[1] As the basis for said motion Respondent argues that the Commission is without jurisdiction to hear this matter. The complainant alleges inter alia that she has been subject to adverse treatment as a result of her race and color (black) in violation of M.G.L. c. 151C. Therefore, this case involves allegations of race discrimination in the terms and conditions of enrollment at a public college in the Commonwealth.

Based on the language of the statute and the recent decision of this Commission in *Barrett v. City of Worcester School Department*, we agree with Respondent that the MCAD lacks jurisdiction in this matter, and, therefore, it must be dismissed.

G.L. c 151C, section 2 states the following in pertinent part: "It shall be an unfair educational practice for an educational institution:

(a) To exclude or limit or otherwise discriminate against any United States citizen or citizens seeking admission as students to such institution because of race, religion, creed, color or national origin."

As noted in *Barrett*, "Chapter 151C, the Fair Educational Practice Act, designates the Commission as the agency with power to enforce its mandates and prohibitions. It creates a comprehensive legislative scheme, which declares certain actions by educational institutions to be ... discriminatory practices. M.G.L. c. 151C prohibits discrimination *only* in admission to an educational institution; it does not prohibit discrimination in the treatment of students who are actually enrolled in such schools." *Id.* at 1211 (emphasis added).[2] Thus, the Commission's jurisdiction and the protection afforded by this law are narrow in scope and the statute, on its face, provides no redress for race-based discrimination

---

1. The Full Commission asserted jurisdiction *sua sponte* in this matter to address the important jurisdictional issue raised.

2. This is most unfortunate, since this case, unlike *Barrett*, results in there being no protections under state law for this form of discrimination. As we noted in *Barrett*; "while General Laws c. 151B and 272 do not offer redress before this Commission, G.L. c. 76 and the Massachusetts Department of Education regulations at 603 CMR 26 (Access to Equal Educational Opportunities) prohibit discriminatory treatment both in admission to school and in obtaining the advantages, privileges, and courses of study of such public school on account of race, color, sex, religion, national origin or sexual orientation. 603 CMR 26.06 relates specifically to extra-curricular activities. Further 603 CMR 26.08 and 26.09 offers procedures and forums for redress of a discriminatory act." This result does not follow in the instant matter, since an institution of higher education is not a public school as defined by the provisions of M.G.L. c. 76.

against students once they are admitted to an educational institution. As the Commission noted in *Barrett*,

> in our view, the failure of G. L. c. 151 C to provide a comprehensive scheme for redress of discrimination in areas other than admission, deprecates the presumption that education constitutes 'an opportunity, which (*once*) the state has undertaken to provide ... must be made available to all on equal terms.' *See Brown v. Board of Education*, 347 U.S. 483 (1954) (emphasis added).

However, the Commission is not authorized to amend a statute deemed to be inconsistent and therefore lacking in essential protections for students. We conclude that to interpret the statute to be more comprehensive than its plain language suggests would be overreaching absent some direction from the courts or the legislature on this matter. It is within the proper purview of the legislature to broaden the coverage of the statute and we would welcome such action by the legislature in this regard.

Therefore, and for the aforesaid reasons, the matter is hereby dismissed.

SO ORDERED this 5th day of November, 2001.

* * * * * *

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION and BELINDA WILLIAMS

V.

MELVIN LEE HARDY

Docket No. 98-BPR-1732

*November 13, 2001*
*Judith E. Kaplan, Hearing Officer*

*Barbara Rabin, Esquire and Andrew Lane, Esquire for the Complainant*
*Calvin J. Weir, Esquire and James E. Small, Esquire for the Respondent*

**H***ousing Discrimination-Section 8 Tenant*—A Dorchester resident won a $50,000 emotional-distress damage award after being promised a recently renovated Roslindale apartment by a landlord who subsequently revoked the offer because of the Complainant's status as a Section 8 applicant and the difficulties involved in dealing with the program.

### DECISION OF THE HEARING OFFICER

On or about June 3, 1998, Complainant Belinda Williams filed a complaint with this Commission charging Respondent Melvin Lee Hardy with discrimination in housing on the basis of her receipt of a housing subsidy, a section eight housing certificate, in violation of M.G.L. c. 151B, §4(10). The Investigating Commissioner found probable cause to credit the allegations contained in the complaint. Attempts to conciliate the matter failed, and the Commission issued a complaint for certification on September 26, 2000. A public hearing was held before me on June 20 and 21, 2001. After careful consideration of the entire record and the post hearing submissions of the parties, I make the following findings of fact, conclusions of law, and order.

### I. FINDINGS OF FACT

1. Complainant Belinda Williams currently reside 30 Browning Avenue in Dorchester, Massachusetts.

2. In 1998, Complainant, along with her two children, resided in a public housing project on Beechland Street in Boston where she had lived for the previous nine years. After more than five years on waiting lists for a section 8 subsidy at various housing authorities, Complainant received a Section 8 certificate from the Quincy Housing Authority on March 11, 1998. She then began a search for housing for herself and her two sons.

3. Respondent Melvin Lee Hardy resides in one unit of the two-family residence that he owns at 163-5 Brookway Road in Roslindale, Massachusetts. Respondent also owns a three-decker at 210 Harvard Street in Dorchester, Massachusetts that he and his father, Frank Hardy, completely renovated. Respondent works in his father's oil business, making truck deliveries to residential customers in the winter months. During the warmer months, Respondent works primarily as a building contractor with his father. Much of their contracting work is for property owners who want to bring their rental units into compliance with the State Sanitary Code so that the units can pass the required Boston Housing Authority inspection for renting to tenants with Section 8 certificates.

4. Complainant testified that she was eager to use her Section 8 certificate to move out of the housing project as soon as possible. She testified that there had been a fire in her building, her apartment had been flooded, and there was widespread use of drugs in the area, as well as mice and cockroach infestation. She also testified that her child had become infected by a roach bite and required medical treatment. I credit this testimony.

5. Complainant learned through her sister, Matti Williams that Respondent had an available apartment located at 163-165 Brookway Road. Complainant called Respondent and made an appointment to view the rental unit. On March 14, 1998, Complainant, her sister Matti and Matti Williams' fiance met with Respondent at the unit. At this meeting, Complainant told Respondent that the apartment was beautiful and she loved it. The apartment was still being painted, and work remained to be done on the kitchen floor and appliances. Respondent told Complainant that the work would soon be finished and the apartment would be ready for occupancy in a few weeks.

6. During this March 14, 1998 visit, Complainant and Respondent completed a Quincy Housing Authority Request for Lease Approval (RFLA). Matti Williams asked Respondent "Are you really going to give my sister this apartment?" Respondent said, "Yes, don't worry about it." According to Complainant, he told her "It's yours. Don't waste your time looking for another apartment." I credit this testimony.

MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
ONE ASHBURTON PLACE, ROOM 601 BOSTON, MA 02108
(617) 727-3990

### -DISMISSAL and NOTIFICATION of RIGHTS-

JUL 3 0 2002

| | |
|---|---|
| To: Yvette Iskander<br>66 Glenville Avenue #19<br>Allston, MA 02134 | Case: Iskander v. B.U. Medical School<br>Docket No: 99121767<br>Field Rep.: Luther E. Allen |

Your complaint is dismissed for the following reasons:

[ X ]   The facts you allege fail to state a claim under any of the statutes the Commission enforces.

[ . ]   Respondent employs less than the required number of employees

[ ]   Your complaint was not timely filed with the Commission, i.e. you waited too long after the date(s) of the alleged discrimination to file. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[ ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conference, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your complaint. You have had more than 30 days in which to respond to our written request.

[ ]   The Commission's efforts to locate you have been unsuccessful. You have had at least 30 days in which to respond to a notice sent to your last known address.

[ ]   The Respondent has made a reasonable settlement, offering full relief for the harm you alleged. 30 days have expired since you received actual notice of this settlement offer.

[ ]   The Commission issues the following determination. Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes a violation of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

[ ]   Other (briefly state)_____

### NOTICE of APPEAL-

If you wish to appeal the dismissal of your complaint and believe that the above stated reason for dismissal is incorrect, you may appeal to this Commission within 10 days after receipt of this notice. You or your attorney must make your appeal of the dismissal in writing to the appeals clerk of this Commission. (Attention: Ms. Nancy To).

_____          7/25/02
Walter J. Sullivan Jr.                              Date
Investigating Commissioner

cc: Micheal B. Rosen
    Associate General Counsel

RECEIVED AUG - 2 2002 OFFICE OF THE GENERAL COUNSEL

MEMORANDUM

| | |
|---|---|
| TO: | Yvette Iskander |
| MCAD NO: | 99121767 |
| FR: | Luther E. Allen Jr. |
| RE: | Notification & Dismissal of Rights |

**Issues Investigated:**

On July 6, 1999 the Complainant filed this complaint alleging that she was discriminated against in education because of her undeclared non-American status in violation of chapter 151C of the M. G. L.

The Complainant was enrolled in the Respondents medical school and specifically alleges that she was denied opportunities afforded an American born student. The complainant alleges she was placed in a program not suitable for the course of studies she desired, was not allowed vacation time, forced to work while recovering from eye surgery and through allergies from working with animals. The Complainant also alleges that the Respondent forced her to reveal her computer password to another student in order for that student to use data the Complainant had complied, and other alleged acts that does not fall within the jurisdiction of Chapter 151C, such as engaging in scientific
and inappropriate professional conduct.

**Summary of Findings:**

The Complainant alleges the Respondent forced her to work with animals after learning that animals had caused her to become asthmatic. Chapter 151C ,the Fair Educational Practices Act prohibits discriminatory admissions to educational institutions, the Complainant was not denied admission.

**Recommendation:**

Chapter 151C prohibits discrimination in admissions, the Complainant was not denied admission, the Commission lacks jurisdiction in the terms and conditions complained of, therefore, it is recommended that the complain be closed as a lack of jurisdiction.

_____        _____
Luther E. Allen                                  Katherine M. Martin, Esquire
Reviewer                                          Supervisor