# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

### C. A. NO. 04-CV-11838-PBS

| | |
|---|---|
| LAYLA KIANI )<br>Plaintiff, )<br>)<br>)<br>)<br>)<br>)<br>TRUSTEES OF BOSTON )<br>UNIVERSITY, et al. )<br>Defendants. )<br>)<br>)<br>)<br>)<br>) | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS I, II, AND V THROUGH X OF THE COMPLAINT, AND TO DISMISS THE INDIVIDUAL DEFENDANTS**<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW

### I-INTRODUCTION

This case is about whether a law school, in its dealings with its students can unilaterally and with impunity act as a judge, jury, and the executioner. Apparently, the law school believes that it can. In fact, they argue that the legal system and the government should stay out of its affairs, no matter how egregious or unreasonable their actions. The Plaintiff, Layla Kiani ("Ms. Kiani") in the above-captioned matter, respectfully submits this Memorandum of Law in her Opposition to the Defendants' Motion to Dismiss Counts I, II, and V through X of her Complaint, and to dismiss the individual Defendants, Cass, Mariner, Kull, and Marx in the entirety. The instant matter revolves around the actions of the Defendants who have unlawfully ejected Ms. Kiani

from their school. Ms. Kiani, a handicapped law student, who suffers from Cerebral Palsy, subsequent to three years of law school, was notified Six days before her graduation ceremony that she could not attend the ceremony and that she could not graduate. See Complaint Exhibit B. Shortly thereafter, following an internal "judicial" proceeding, she was ultimately dropped for an alleged "academic deficiency." See Complaint.

Ms. Kiani has consistently maintained that she did not, nor did she intend to plagiarize. She has always demonstrated that the absence of proper citation in four of her seminar papers were largely as the result of her diminished capacity due to the medication under which influence she was functioning.

Ms. Kiani brings the Court's attention to the fact that as further stated in her Complaint, the individual Defendants were all employees of the Defendant University. These Defendants are named individually because their actions, as employees, implicated both the University as well as themselves as individually liable. Therefore, in the spirit of judicial economy, these individuals who are necessary and indispensable parties to the just adjudication of this case, are named as parties to this case.

It is also noteworthy that the Defendants, the moving parties, do not clearly state which rule of the Federal Rules of Civil Procedure they wish the Court would employ for their Motion. It appears, however, that their arguments rely on Fed. R. Civ. P. 12(b)(6). If this is so, the Defendants fail utterly to establish a basis on which to Court can grant the Motion under this Rule. As set forth more fully below, the facts show that the grounds for this Motion are indeed less than solid, and that the Defendants are simply attempting to shrewdly argue their way out of this Honorable Court.  It also appears that the purpose of

the Defendants in bringing this lengthy Motion is to eschew the truth and divert the Court's attention from clear violations of the law.[1] Ms. Kiani respectfully requests that the Defendants' Motion to Dismiss be denied.

Ms. Kiani also points to the tone of the Defendants' Memorandum ("Defs. Mem."). The Memorandum is replete with unfounded allegations, unsubstantiated conclusions, and condescending remarks about Ms. Kiani. Ironically, the Memorandum is in sync with the general attitude of the Defendants towards Ms. Kiani.

## II. STANDANRD OF REVIEW

It appears that the Defendants' Motion to Dismiss seeks dismissal based solely on Fed. R. Civ. P. 12(b)(6), "failure to state a claim upon which relief can be granted." For such a motion, the Court should consider whether the complaint itself states a legally sufficient claim. "The grounds for a Rule 12(b)(6) dismissal comprise only pleadings and no more." Fleming v. Lind-Waldock & Co., 922 F.2d 20,23 (1st Cir. 1990). No other relevant documents or evidence may be consulted when making such a decision. The moving party must convince the Court that the relevant counts must be dismissed because "beyond doubt [] the [plaintiff] can prove no set of facts in support of [plaintiff's] claim that would entitle the [plaintiff] to relief." Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir.1997). The Court must deny the Defendants' motion unless this burden is met.

---

[1] It is noteworthy that the Defendants' own Memorandum is rather equivocating: while seeking the dismissal of virtually all of Ms. Kiani's case, in the same breath, it concedes that Ms. Kiani's case may have merit. For instance, it states "[t]he University may have misapplied its rules, as alleged in Count I. Plaintiff may be able to show that the University engaged in discrimination on the basis of her disability, as suggested in Count III. " Defs. Mem, at 16.

In deciding the motion to dismiss, this Court is also required to "take the factual averments contained in the complaint as true, including every reasonable inference helpful to the plaintiff's cause."  <u>Garitia Hotel Ltd. Partnership v. Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992); <u>Fleming</u>, 922 F.2d at 23 (courts must accept as true the factual allegations of the complaint).  The Court must "accept the factual allegations in the [plaintiff's] complaint and must construe those facts in the light most favorable to the [plaintiff]." <u>Flood</u>. at 251.

As demonstrated below, the Defendants' motion cannot survive the application of these standards.

### III. <u>STATEMENT OF FACTS</u>

Ms. Kiani,  a 26 year-old law student of the Defendants' university, has been a victim of Cerebral Palsy since birth. As result of her disease, Ms. Kiani, lacks mobility and carries herself through the use of a wheel chair as well as crutches. Also, as a result of her underlying disease, she suffers from a slew of other ailments and diseases, affecting her bodily functions and cognition. Following an arduous, yet highly accomplished road, Ms. Kiani was admitted to the Defendants' law school. There are no questions raised by the Defendants that Ms. Kiani's acceptance to the law school was based on the merits of Ms. Kiani's qualifications, and not due to any preference due to her gender or handicap status. Ms. Kiani spent her own family's funds, as well as student loans to support her through law school. By the end of her first year in Defendant's law school, as the result of her intense course-load, Ms. Kiani began experiencing more frequent and prolonged episodes of dry heaves and nausea.  In order to reduce the effect

of the dry heaves on her studies, Ms. Kiani began taking Phenergan, a suppository. The drug, which had a calming effect on Ms. Kiani, was a somnolence-inducing medicine and caused her to experience high rates of drowsiness during the day when she was in class, and also when she was studying and writing her course papers. See Complaint Exhibit E.

As the result of the medicine, during the second and third years of law school, Ms. Kiani reported experiencing high degrees of difficulty with her studies. In the spring of 2003, after three years of intense studies, she was finally slated to attend a commencement ceremony of the Defendant University's law school on May 18, 2003. Six days before her graduation day, Ms. Kiani received a letter from Defendant Ronald A. Cass ("Defendant Cass"), the dean of the Defendant University's law school, informing her that she was suspended immediately, and that she would not be allowed to take part in the ceremonies. See Complaint Exhibit B. The Defendants' university then convened a Judicial Discipline Committee to address the charges of plagiarism.

As it later became apparent, while under the influence of the medicine Phenergan, Ms. Kiani had, on four separate papers, failed to notate fully the names of the authors, and attribute the sentences to them. Ms. Kiani had nonetheless, in the majority of these papers identified the authors by name, and had used the term "according to" instead of quotation marks.

By this time, the Defendant Mariner, a Professor who had initially reported the alleged violation, had already graded Ms. Kiani's papers. This Defendant had already known about the alleged plagiarism. Moreover, the Defendants during their hearing by the Judicial Discipline Committee ("Committee") did not follow their own rules and

regulations as promulgated in their school handbook. In particular, Ms. Kiani was never informed of her right to remain silent. See Exhibit A.

Ms. Kiani has never admitted or believed that she committed plagiarism. Complaint ¶ 41.

The Committee then determined that Ms. Kiani had plagiarized on four of her term papers. Ms. Kiani was suspended for a period of six months. However, the Professors, including Defendant Mariner and Kull changed their grades, which successfully resulted in changing Ms. Kiani's GPA to fall under 2.00, and hence her dismissal from the Defendants' university for "academic deficiency."  By this time, because of her reliance on the Defendants' representations, Ms. Kiani had spent approximately $185,562.00, at least half of it borrowed funds, including the tuition and living expenses. As the consequence of the Defendants' actions, Ms. Kiani has forever been foreclosed from obtaining a law degree, from any accredited law school.

Ms. Kiani is seeking to both be reinstated and allowed to retake the requisite course(s), if necessary; or for the Defendant University to re-adjudicate her case in a fair and non-discriminatory setting. She is also seeking equitable and monetary damages.

## IV. <u>LEGAL ARGUMENT</u>

### COUNT I : <u>MS. KIANI'S CLAIMS ARE WELL WITHIN THE PURVIEW OF THIS  COURT;  THE DEFENDANTS ENTERED INTO A CONTRACT WITH MS. KIANI AND THEY BREACHED THEIR CONTRACT THROUGH THEIR CONDUCT</u>

The Defendants' first claim goes to the ultimate merits of Ms. Kiani's assertion that this Honorable Court is the proper outlet for her grievance against an academic institution.

At the outset, it is noteworthy that the Defendants on Page 1 of their Memorandum claim that "Ms. Kiani does not challenge the finding of plagiarism." Defs. Mem. at 1.This is far from an accurate or a true statement. In fact, the whole premise of Ms. Kiani's Complaint is peppered with arguments denying that she ever committed plagiarism. See Complaint ¶ 41.

The Facts of this case should be recounted in the light most favorable to the nonmovant. See  Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001).

As the main pillar to their argument, the Defendants cite Schaer v. Brandeis University and state that "'[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities." 432 Mass. 474, 478, 735 N.E.2d 373 (2000). Defs. Mem. at 6. What the Defendants fail to mention that such deference is not one without any bounds. In fact, although decisions of academic nature are generally left to the academic institutions, (See  Regents of University of Michigan v. Ewing, 474 U.S. 214, 225 (1985)), when the issue is whether the school acted in good faith and in a reasonable manner, the Courts have opted out of their deference for academic institutions. See Mangla v. Brown University., IV,  No. 96-2333 (1st Cir. 1998) ("Applying the standard of deference enunciated in Ewing, we conclude that no reasonable jury could find that Brown acted arbitrarily or in bad faith.")

As the Supreme Court has stated "Plainly, [judges] may not override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic

norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Regents of University of Michigan v. Ewing, 474 U.S. 214, 225 (1985).

The courts in other jurisdiction have also rejected a carte-blanche treatment of their deference to academic entities. In Parents Involved In Community Schools v. Seattle School Dist. the Court has held that "such unfettered deference is inconsistent with [the court's] obligations under strict scrutiny." No. 01-35450, ¶ 17 (9th Cir. 07/27/2004). There, the Court also held that "while limited deference to educational institutions arguably could be due when they pursue core goals, such deference is entirely unwarranted when they court tangential ones." Id.

In the current case, the Court is the most appropriate outlet particularly because the Defendants have consistently displayed an attitude that they are somehow above the law and that their decisions cannot be challenged or overturned no matter how wrong, arbitrary, and capricious. See  Complaint; Defs. Mem. The actions of the school also reek of bad faith. For instance, the Defendants' decision  to ambush Ms. Kiani six days before her graduation, their subsequent disregard for her well-being while she was reeling under the metaphorical gun of the school, Defendant Kull's actions by losing Ms. Kiani's paper (and finding it later after the school's Add/Drop deadline had passed), and finally the Defendants' concerted and collective action in colluding to testify against her and ensuring that she be eternally ejected from the School (such as Defendant Mariner's decision to change her grades contrary to the School's policies and regulations), are all cases in point.

The Courts have consistently found that the student-university relationship is "essentially contractual in nature." See Mangla v. Brown Univ.,. See also Russell v. Salve Regina College, 938 F.2d 315, 316 (1st Cir. 1991). As the Court in Mangla stated, "the terms of the contract may include statements provided in student manuals and registration materials. Id. See also Lyons v. Salve Regina College, 565 F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978) (construing College Manual and Academic Information booklet as terms of a contract between a student and college).

According to Mangla, the court's standard for interpreting the contractual terms is one of "reasonable expectation -- what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." Id. (quoting Giles v. Howard University, 428 F. Supp. 603, 605 (D.D.C. 1977)); Cloud v. Trustees of Boston University, 720 F.2d 721, 724 (1st Cir. 1983).

Ms. Kiani, a law student reasonably expected that the Defendants, all of whom are well-versed, seasoned attorneys, would at least adhere to the disciplinary Rules and Regulations of the School of their own school, and would make sure that such rules are followed in the most concise manner.

> Article IV (1) of the Disciplinary Regulations states that
>
> All students are to be informed of the right to counsel and the right to remain silent, and shall be warned that anything the student may say may be used against the student. The student [*shall be requested to sign a statement to the effect that he or she has been informed of the above rights and has received the above warning*]. (Emphasis added). Exhibit A.
>
> First of all, as stated above, the Regulations place an affirmative duty on the

School to inform its student, not the other way around. They are not intended to be understood by inference or conduct.

Secondly, the student cannot be reasonably expected to know the intricate contents of a school disciplinary regulations. The Defendants argue that because Ms. Kiani was a law student, she should have somehow known the contents of the Disciplinary rules. Defs. Mem. at 7-8. This is an unreasonable expectation. Indeed it was certainly reasonable that considering Ms. Kiani's hardship due to the shock and dismay at the misfortune that had befallen her that she would not sit down and read the School's disciplinary manual. She reasonably expected the School and the Defendants to at least follow their own rules. They did not. In fact, not only was she not informed of her right to remain silent, apparently, she was encouraged to "interview" with the members of the Committee. See Defs. Mem. Exhibit 1. At the very least, she should have been afforded the rights promulgated by the School's own manual. She was not.

In their article, Academic Discipline: A Guide to Fair Process for the University Student, two Columbia University Law Professors argue that a student who has registered at a college has a legally protected interest in his or her college education, and that the level of procedural protection should not decrease because the student attends a private rather than a public school. Curtis J. Berger & Vivian Berger, Academic Discipline: A Guide to Fair Process for the University Student, 99 Colum. L. Rev. 289, 331-332 (1999). The Bergers further argue the educational "contract" between the school and their student is fundamentally a contract of adhesion, a "take-it-or-leave-it proposition," if you will, under which the only alternative to complete adherence is outright rejection. Id. at 322-324; See also  Lisa Tenerowicz, Student Misconduct at Private Colleges and Universities: A Roadmap for "Fundamental Fairness" in Disciplinary Proceedings, 42 B.C.L.Rev. 653, 678 (2004), available at:

http://www.bc.edu/schools/law/lawreviews/meta-elements/journals/bclawr/42_3/04_FMS.htm. Because the student and the school do not have "equal bargaining power," the Bergers contend that the school needs to treat its students with fairness. See Berger & Berger, at 335. These authors urge the courts to carefully scrutinize contracts when asked to review a discipline decision. See generally Tenerowicz.

As the result of the Defendant University's failure to forewarn Ms. Kiani of her right to remain silent, before, and during the hearing on Sept. 12, 2003, where for well over five hours she was placed on the witness stand and was grilled by the judges, she has been irreparably harmed. Given the context and atmosphere of the hearing, it is conceivable and reasonable that during the proceedings, Ms. Kiani had made comments and remarks that she would not have otherwise made. Since no discovery has been undertaken in this case thus far, Ms. Kiani bases this assertion on her memory of the hearing.

The Defendants claim that they did not breach their contract with Ms. Kiani. They also claim that the individual Defendants did not enter into a contract with the Plaintiff.

Contracts involving academic institutions should pass muster for a "basic fairness" test. Schaer, 432 Mass. at 481. The Defendants' Motion states that "the complaint identifies no procedural or substantive contractual right that the University has violated." Defs. Mem, at 9. However, every contract is believed to contain an implied covenant of good faith and fair dealing. Restatement (Second) of Contracts, P.24 American Law Institute (1981).  In Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806 (Mass. 1991), the Supreme Judicial Court stated that "the implied covenant of good faith and fair

dealing provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" <u>Id</u>. at 820 (quoting <u>Druker v. Roland Women's Jutras Assoc., Inc</u>,. 370 Mass. 383, 385 (1976)). Equally, according to Berger & Berger, the Courts have imposed the same duty of "good faith" upon private schools, meaning that, at a minimum, the schools must follow the rules they have published. <u>See</u> <u>Berger & Berger</u>, *Supra*, at 331-332.  Ms. Kiani reasonably expected that the Defendants as parties to the contract would at least adhere to these contract principles. The Defendants breached theses covenants by failing to treat Ms. Kiani in good faith when they hastily charged her with plagiarism, when they failed to even once sit down with her  to ask her personally the reason for her academic difficulties, and when they rushed to judgment to suspend and subsequently eject her from the School. They never acted in good faith and during her three years in their law school they certainly were not fair in their dealings with this handicapped student.

The Courts have held that although ordinarily they may not second-guess an educational institution's academic judgments, <u>see</u> <u>Regents of University of Michigan v. Ewing</u>, <u>474 U.S. 214</u>, 225-28, 106 S.Ct. 507, 513-15, 88 L.Ed.2d 523 (1985), a Rule 12(b)(6) dismissal of a student's claim is improper where the contention is that the institution's action was "motivated by bad faith or ill will unrelated to academic performance," <u>see</u> <u>Clements v. County of Nassau</u>, <u>835 F.2d 1000</u>, 1004 (2d Cir. 1987). The Court should carefully scrutinize the school's conduct. <u>See</u>, <u>e.g.</u>, <u>Ewing</u>, 474 U.S. at 225, 106 S.Ct. at 513 ("substantial departure from accepted academic norms" may "demonstrate that the person or committee responsible did not actually exercise professional judgment"). Moreover, if the School is given deferential treatment this time,

it may ultimately encourage it to eliminate the provision in their school book in the future.[2] Deference should never be confused with acquiescence.

It is not disputed that all the individual Defendants are or were employees of the Defendant Trustees of Boston University. Moreover, the Defendants do not dispute that there was a contractual relationship with the School. Therefore, the issue, which remains is whether the employees of a contracting party are also bound by the terms of the contract between Ms. Kiani and the School. It is a well-established principle under the agency laws that the agent of a principal is bound by the terms of his or her principal if the agent committed an intentional act which harmed a third party. See Restatement of the Law (Second) Agency (1958). Ms. Kiani claims that each of the Defendants, as employees, as well as in their individual capacity, acted tortiously towards her. An employee can certainly be viewed as an agent. Therefore, the individual Defendants are firmly bound by the contract, making them the proper parties to a claim of breach.

---

[2] As Tenerowicz writes:

> For their part, courts asked to review a private school's disciplinary decision should be more willing to do so. They should employ contract law principles as the doctrinal foundation of their review. The current deferential approach of the courts, finding that a school's disciplinary system is "fundamentally fair" if the school substantially complies with its own established procedures, is inadequate. In effect, it invites private schools to eliminate procedures to avoid violating them.

Tenerowicz at 685.

**COUNT II:  EVEN IF THE UNIVERSITY'S CONDUCT COULD NOT BE CONSTRUED AS "STATE  ACTION," IT STILL HAS A DUTY OF BASIC FAIRNESS TOWARDS MS. KIANI**

Once again, the Defendants' Memorandum attempts to mislead its reader by employing a twisted language. The following is an example of such a tactic:

> The complaint recognizes that "the decision being challenged is [the University's] decision to terminate one of its students for failure to meet its academic research requirements under standards set by the university."
>
> Defs. Mem. at 11.

This is simply an untruth. Ms. Kiani's complaint has never intended to convey such a message. By using the above methodology, the Defendants are attempting to cloud Ms. Kiani's clear message: the Defendants' decision was not academically based—It was based on their animosity towards Ms. Kiani as an individual. Furthermore, the statement misses the mark—The complaint is not about the *act* of the termination, it is about the *manner* and *reason* of her termination.

Although as a general matter, students at a private university do not enjoy the same due process privileges as public schools, it would be far fetched to assume that a private school can shamelessly maltreat its students. As Lisa Tenerowicz observes,

> in the absence of constitutional protections, courts generally have required that private school disciplinary procedures adhere to a "fundamental" or "basic" fairness standard and not be arbitrary or capricious. More precisely, state and federal courts have often held that a private school's disciplinary decisions are fundamentally fair if they comport with the rules and procedures that the school itself has promulgated.
>
> Tenerowicz, at 663-664.

The public-private distinction notwithstanding, it would be a "cruel hoax on the integrity of the educational process for a private university to take refuge in such a distinction." See Tenerowicz, at 685. Indeed, "because colleges and universities perform

an essential function in a democratic society and because they have been given a position of esteem, trust and responsibility, they must, in return, treat students fairly, with equal dignity, care and concern." Id.

It would have been reasonable for Ms. Kiani to expect the Defendants to at least treat her with the same respect and fairness afforded by the Constitution to the students of public schools. These Defendants appear to hold themselves out to a higher ethos and esteem. Hiding behind the veil of the private-school distinction would be and should be contrary to the mission and the mandate of the Defendant University.

### COUNT V: MS. KIANI HAS ALLEGED SUFFICIENT ELEMENTS OF FRAUD FOR THE CLAIM TO GO FORWARD

Ms. Kiani's claim of fraud is a permissible means to assert such a cause of action. Although under Fed. R. Civ. P. 9(b) and Mass.R.Civ.P. 9(b), circumstances constituting fraud must be stated with particularity, it must be noted that most of the cases, which deal with "particularity" issues deal with securities fraud, where specificity of action is of a much higher importance. See  Baron v. Smith No. 03-2440 (1st Cir. 08-18-2004).  The Defendants rely on U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004). Although factually Karvelas is inapposite, where the Plaintiff there was relying on the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq., nonetheless, Ms. Kiani will rely on the same case to dislodge the Defendants from their position. In Karvelas, the Court held that Rule 9(b) applied to claims under the FCA. Id.

 However, Rule 9(b) can be "relaxed" in certain instances. For example, the Rule may be relaxed "when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion." Id. (quoting from Boston & Maine

Corp. v. Hampton, 987 F.2d 855, 866 (1st Cir. 1993). Also, in <u>Karvelas</u> the Court held that relaxing the Rule 9(b) particularity requirements, would be "an opportunity for the plaintiff to plead generally at the outset and then later amend the complaint, filling in the blanks through discovery." <u>Id</u>. at 227.

More particularly, the rules of civil procedure, both State and Federal were "designed to facilitate pleading and to eliminate technicalities and niceties nurtured by our former system of pleading.". <u>Friedman v. Jablinski</u>, 371 Mass. 482, 488 (1976). For instance, in Federal practice, a claim for fraud, "which reveals an apparent lack of timeliness, need not allege more than the basic claim and that discovery of the fraud was made within the statute of limitations period preceding suit." <u>Id.</u>

Ms. Kiani's Complaint contained sufficient references to time, place and content of Defendants' misrepresentation. <u>See</u> Complaint ¶¶88-91. The Complaint sufficiently states the time (three years), place (Law School), and content (misrepresentation in order to obtain the tuition). In fact, in her Complaint, she had purposely used the term "specifically" to underscore the importance of the particularity requirement of Rule 9(b). In addition, as a whole, Ms. Kiani's Complaint is replete with references to time, place, and content. Moreover, there is no set formula under the Federal Rules of Civil Procedure to allege claims of fraud. As the Court in <u>Karvelas</u> aptly observed, "[t]hese details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in a complaint. " <u>Karvelas,</u> 360 F.3d at 227. To satisfy Rule 9(b), the Court required that "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)." <u>Id</u>. (quoting <u>United States ex rel. Clausen v. Lab. Corp. of Am., Inc.</u>, 290 F.3d, 1301, 1312 n.21. (11th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1105

(2003). Ms. Kiani, has pled sufficient information concerning the time and place of the fraud in her other claims, including the section of the Complaint entitled "Facts Common to All Counts," to satisfy this requirement. See Complaint, ¶¶ 10-52. Moreover, once given the opportunity through discovery, she intends to amend her Complaint by leave of Court, in order to allege more specific averments.

A glance at the Defendants' Memorandum highlights the omnipresent mentality of the Defendants as a group:

> The Complaint strains credibility by suggesting that the University and the individual defendants made certain misrepresentations solely for the purpose of acquiring Plaintiff's tuition.
>
> Defs. Mem. at 15.

This holier-than-though posture of the Defendants has been prevalent throughout the proceedings.  In fact it appears that it reflects the attitude of the School towards everyone, not just Ms. Kiani. Contrary to the Defendant's statement above, it is certainly entirely possible that the School and the named Defendants misrepresented themselves for financial and monetary gain. After all, their livelihood depended on the tuitions, which they received from their students. There is nothing incredible about this assertion.

### COUNT VI: THE DEFENDANTS ENGAGED IN A CIVIL CONSPIRACY BECAUSE THEY ALL HAD A COMMON DESIGN, A COMMON GOAL, AND THEY ACTED IN CONCERT TO EJECT MS. KIANI

Ms. Kiani asserts that since no discovery has been undertaken by the parties, she will not be able to adequately respond to the Defendants' argument.

She further declares that, once again, the Defendants' statement that Ms. Kiani "acknowledged" to have committed plagiarism is simply false. See Defs. Mem. at 16.

Ms. Kiani has never admitted to committing plagiarism. On the contrary, the main purpose of her efforts has always been to establish that she never committed such an act. The School's own handbook, defines plagiarism as "knowing use, without adequate attribution, of the ideas, expressions, or work, of another, with intent to pass such materials off as one's own." Disciplinary Regulations for All BUSL Students, Art. II (e); See Exhibit B. Throughout the process, Ms. Kiani has maintained that she never had such an intent. Indeed, she has attempted to explain that the reason for her failure to cite was largely due to her diminished cognitive ability because of the two years, during which she was under the influence of a Phenergan. See also Complaint. She was also led to believe that her actions were not necessarily unacceptable by the School standards.

As in Aetna Casualty & Surety Co. v. P & B Auto Body, et al., 43 F.3d 1546 (1st Cir. 1994), there existed a tortious act: the act to commit fraud, hence the conspiracy. Also as stated above, the allegation of fraud can go forward because it has been sufficiently pled.

Contrary to the Defendants' assertion, the allegation of a common design is not based merely on a "few stray remarks." See Defs. Mem. at 17. During her three-year stint, Ms. Kiani experienced and witnessed a concerted effort by certain members of the School who appeared to simply want her out of their school. The following are but a sampling of these actions and remarks:

(a)     As stated below, in Count VII, the Defendants systematically discriminated against Ms. Kiani by their failure to provide accommodations, and by their incessant efforts to shun her and disregard her concerns.

(b)     Defendant Dean Cass refused to even discuss the plagiarism matter with Ms. Kiani when she approached him on February 2, 2003 in the elevator. When Ms. Kiani asked him "can I talk to you about my problem?," He simply responded "No."

(c)    Defendant Mariner was involved in the fraud and civil conspiracy when she "reported" the "plagiarism" to Dean Cass despite the fact that she never attempted to inquire from Ms. Kiani in order to find out the reason for her actions. She was also the individual defendant who despite the fact that she knew full well about the alleged "plagiarism" and had graded Ms. Kiani accordingly, changed her grade once again upon learning the outcome of the "judicial" proceedings. In essence, contrary to the Defendants' assertion, she did not follow the School regulations and procedure. See Exhibit C (Disciplinary Regulations for All BUSL Students, Art. VII, 9). After all, the whole purpose of the Regulations is to allow the individual professors to re-grade once they "find out" about a violation of the disciplinary rules by the student. Defendant Mariner already "knew" about the violation when she graded Ms. Kiani and thus should not have been allowed to re-grade.

(d)    Defendant Kull was the individual who initially attached the negative stigma of "plagiarist" to Ms. Kiani's name. Thereafter, she was not given any credence with the other members of the faculty. As the result of Defendant Kull's actions, the faculty viewed Ms. Kiani with deep suspicion, leading to their refusal for basic accommodations. In one instance, Ms. Kiani had asked Professor Wally Miller whether she could innocuously use an old outline to which he had said yes, but later after speaking with Defendant Marx, she admonished him against it. In effect, Defendant Kull had transformed Ms. Kiani into a disgraced student.

(e)    On another occasion, Defendant Kull "lost" Ms. Kiani's term paper, and found them only after the time for Add/Drop had passed, forcing Ms. Kiani to take the course at Suffolk University.

(f)    Defendant Marx, a dean of the law school, was involved in every facet of Ms. Kiani's proceedings. Defendant Marx throughout the proceedings made Ms. Kiani lose her sense of self-confidence. Ms. Kiani was terrified to even speak to her because Defendant Marx seemed to always be the bearer of bad news, and to make matters worse, she would not even respond to Ms. Kiani's remarks or suggestions. Once on February 3, 2003, Defendant Marx literally covered her ears and told Ms. Kiani that she did not want to hear what she had to tell her.

(g)    Mr. Stephen Marks, a member of the Defendants' faculty informed Ms. Kiani that some of the Defendant faculty members had told him that: "If we can make an example out of Layla Kiani, think of what we can do to other students who aren't disabled."

Once discovery has been conducted, Ms. Kiani is confident that more

documents and evidence pointing to a common design will come to light. One

need not necessarily "stretch the limits of plausibility" to see the collusive model employed by the Defendants.

**COUNT VII: MS, KIANI'S CLAIM IS ONE OF DISCRIMINATION UNDER BOTH STATE AND FEDERAL LAWS--IN THE ABSENCE OF OTHER APPLICABLE LAWS, MS. KIANI'S CLAIM UNDER M.G.L. CHAPTER 151B SHOULD BE ALLOWED TO GO FORWARD, OR IN THE ALTERNATIVE, SHE REQUESTS TO BE ALLOWED TO AMEND HER COMPLAINT**

As a handicapped student, Ms. Kiani did not have access to the use of the library for the entire First year of law school. This is an accurate and true statement, and it does not "defy commonsense" as the Defendants have argued. Defs. Mem. at 17. Again, even at this stage of the process, the Defendants continue with their condescending and demeaning attitude toward this student.

To further elaborate, because the Defendants refused to provide Ms. Kiani with a stenographer, she had to resort to listening to the tapes of the lectures. However, it was impossible to do so during the day while she was at the school, since she did not have access to the study rooms of the library during her First year. Only by the Second year, was she allowed to use a room to listen to her tapes. Moreover, throughout her three years she did not have direct access to any of the books of the library on her own, simply because the library isles were too narrow, and the shelves too high for a wheel-chaired student.

The purpose of Ms. Kiani's complaint is to seek a remedy for the treatment, which she has received at the hands of the Defendants.

The Defendants completely miss the point by referring to a different Chapter of the law for the Massachusetts Commission Against Discrimination ("MCAD"). Both

M.G.L. c. 151C, § 2(a)-(f) and the supporting case are not applicable to the current case.
Therefore, the case <u>Oliver v. Holyoke Community College</u>, MCAD Docket No. 98-SED-
0467 (November 5, 2001), is equally inapposite. There, the Respondent who had been
discriminated against because of her race, had filed a complaint with the Massachusetts
Commission Against Discrimination. Here, Ms. Kiani does not intend to do likewise. As
the Defendants concede, Chapter 151C and <u>Holyoke</u>'s decision concern the treatment of
students during the "admissions" process, not while they are in school. <u>See</u> Defs. Mem. at
18. Ms. Kiani is seeking redress in courts, not before MCAD. Ms. Kiani's claim is based
on discrimination by the School in violation of both State and Federal laws.

It is noted that by failing and refusing to provide certain accommodations to Ms.
Kiani, the Defendants may have also discriminated against Ms. Kiani in violation of
M.G.L. c.272, §92A, the state's public accommodations civil rights law. This statute
applies to Schools, colleges, and other places of education.

Even if Ms. Kiani qualified under M.G.L.c. 151C, she did not have to exhaust all
her administrative remedies before she resorted to courts.[3] <u>See</u> Defs. Mem., fn.7
(referring to <u>Morrison v. Northern Essex Community Coll.</u>, 56 Mass. App. Ct. 784, 786
n.6, 780 N.E.2d 132 (2002)). A complainant under that statute can directly file a lawsuit
with the Superior Court.

**COUNT VIII: MS. KIANI'S CLAIM FOR UNJUST ENRICHMENT IS A
VIABLE CAUSE OF ACTION BECAUSE SHE IS ENTITLED TO
COMPENSATION UNDER BOTH LAW AND EQUITY**

---

[3] Section 1C of M.G.L.c. 214 states: "A person shall have the right to be free from sexual harassment, as
defined in chapter one hundred and fifty- one B and one hundred and fifty-one C. The superior court shall
have the jurisdiction in equity to enforce this right and to award damages."

The "contract" between Ms. Kiani and the Defendants could be viewed as one of implied-in-fact. There does not exist a well-articulated and express contract, which spells out the terms of the agreement between the parties. The parties did not sign on the dotted line as with ordinary contracts. Nor were there exchanges of covenants and promises. The terms, nonetheless, are implied. Therefore, Ms. Kiani has included the claim for unjust enrichment in the event that an enforceable contract is not found by the Court.

The theory of unjust enrichment is that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Nat'l Shawmut Bank v. Fidelity Mut. Life Ins. Co., 318 Mass. 142, 146 (1945), quoting American Law Institute Restatement of Restitution §1; See also Williamson v. DT Management, Inc. ,04-MBAR-208 (3-10-2004). The Restatement of Restitution § 1 (1937) states, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." For three years Ms. Kiani dutifully paid the Defendant school (and indirectly the individual Defendants) the total amount of $71,862.00. Now, it would be "unjust for the recipient to retain the benefit without compensation therefore." Nat'l Shawmut Bank, 318 Mass. at 146.

Moreover, courts in Massachusetts have held that unjust enrichment is a remedy that is contractual in nature, and therefore it is a fact-driven claim, which would require the trier of fact to hear and decide on it. See Williamson, 04-MBAR-208. The court in Williamson refused to allow the defendant's motion for summary judgment because "there remain[ed] a triable issue." Id.

In sum, this is Ms. Kiani's  fall-back claim in the event that legal remedies are not available to her.

**COUNT IX: MS. KIANI HAS ASSERTED SUFFICIENT ELEMENTS OF CONVERSION FOR THE CLAIM TO GO FORWARD**

Ms. Kiani's claim is based on the fact that the Defendants knew or should have known that they did not intend to provide the services, for which they had received Ms. Kiani's funds (the tuition). This is true since from the First year, they did not provide her the essential services and accommodations, necessary for her effective use of the School. As stated above, she was not provided with a stenographer, she did not have full access to the library throughout her studies, and finally, she was not even given the opportunity to adequately defend herself against the charges, which the Defendants lobbed against her.

A viable conversion claim requires a showing that there was a "wrongful exercise of dominion over personalty, including money, to which a plaintiff has an immediate right of possession." Williamson v. DT Management, Inc. 04-MBAR-208 (quoting Schmid v. Nat'l Bank of Greece, S.A., 622 F.Sup. 704, 713 (D. Mass. 1985), affirmed at 802 F.2d 439 (1st Cir. 1986), citing Marshall Vessels, Inc. v. Wright, 331 Mass. 487 (1954); Morrin v. Manning, 205 Mass. 205 (1910)). For three years, as Ms. Kiani continued to dutifully pay the Defendants with the expectation that they would provide a service to her--an education under her particular circumstances, the Defendants did not provide that service. Indeed, the Defendants wrongfully took control of Ms. Kiani's money, yet failed to provide her with an environment conducive to studying law. Worse, after having taken full control of Ms. Kiani's funds, they ultimately colluded to remove her from the school, thus completely depriving her of the benefit of her bargain.

**COUNT X: THE DEFENDANTS HAVE DEALT MS. KIANI A TRAUMATIC BLOW, AND AS A RESULT, SHE HAS SUFFERED SEVERE EMOTIONAL DISTRESS**

Once again, the Defendants incorrectly insinuate that Ms. Kiani has acknowledged that she committed plagiarism. See Defs. Mem. at 22 ("It is notable that Plaintiff acknowledges that, by the School of Law's definition, she plagiarized four separate papers. ¶¶ 39-41."). As stated before, Ms. Kiani has never done such a thing. Indeed, she has consistently maintained that she never plagiarized or intended to plagiarize. Complaint ¶ 41.[4]

Ms. Kiani, too, relies on the well-settled rule of  Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315 (1976), as the formula for the Court to determine whether a there lies a cause of action under intentional infliction of emotional distress. The Defendants seem to already concede that but for the requirement that the conduct be "outrageous," Ms. Kiani has met all the elements of Agis. Defs. Mem. at 22. The Defendants require the outrageous act to be "to the point of  unconscionability in order to avoid dismissal of their claims. " Id.. In Agis, the Plaintiff was a waitress who was fired from her job because her employer who believed that someone was stealing from the restaurant, began firing his employees on an alphabetical basis. Ms. Agis was the first person to be fired. The Court, in applying the test as outlined in the Defendants' Memorandum, ruled that the plaintiff had met the test. The Court held the "[p]laintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude that defendant's conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility." Agis at 145 (quoting  Alcorn v. Anbro Eng'r, Inc., 2 Cal. 3d 493, 498 (1970)).

---

[4] The School's disciplinary rules define plagiarism as "knowing use, without adequate attribution, of the ideas, expressions, or work, of another, with intent to pass such materials off as one's own." Exhibit B., supra. She argues that what she did was not plagiarism, but an unintentional oversight, largely brought about by the use of a medicinal drug.

Similar to Agis, the actions of the Defendants are extreme and outrageous. According to the dictionary, the term "outrageous" "applies to any action, or result of an action, so distasteful or appalling as to be shocking or intolerable. " The American Heritage Dictionary of the English Language, (William Morris ed.1973). Indeed, it would be hard to swallow that the actions of a school and its employees who induce a handicapped student to pay an exorbitant amount of money in tuition and expenses, to undergo extreme pressure and stress, the type which most people without a handicap find unbearable, and then to wait until the student has paid her last penny before dropping her from the School, as not extreme and outrageous.

It is ironic that none of the other cases, which the Defendants have cited even come close to what to Ms. Kiani has endured. For example, "a boyfriend's concealing of his vasectomy" or "an openly conducted [sexual] affair" is not in any way comparable to Ms. Kiani's plight. See Defs. Mem. at 23; Conley v. Romeri, 60 Mass. App. Ct. 799, 805, 806 N.E.2d 933 (2004); Quinn v. Walsh, 49 Mass. App. Ct. 696, 708, 732 N.E.2d 330 (2000). It is indeed rather insensitive to make such comparisons. The impropriety of these cases notwithstanding, the Court in Quinn v. Walsh did recognize that each case "must be determined on the particular facts put before us." Quinn at 709. Ms. Kiani's case, too, should be viewed with a watchful eye on the facts of her case.

Tort scholars have long held that "[i]t does not lie within the power of any judicial system to remedy all human wrongs." Prosser & Keeton, Torts § 4, at 23 (5th ed. 1984). However, when a conduct is so truly extreme, there needs to be a legal outlet for the injured. Moreover, under the so-called "eggshell" doctrine, if a defendant knows that the plaintiff is more sensitive and more susceptible than the average person, "liability will

follow if the defendant uses extreme and outrageous conduct intentionally to cause such distress." in Restatement 2d: Torts, s 46 (1965); <u>George v. Jordan Marsh Co.</u> 359 Mass. 244, *254, 268 N.E.2d 915,**920 - 921 (Mass. 1971). Although this rule is meant for certain groups such as children, pregnant women, and elderly people, it can reasonably be extended to included disabled people. The Defendants very well knew about Ms. Kiani's condition. To simply send an impersonal letter, coldly informing her that her three years of law school, all her efforts, all her dreams for the future, have finally come to naught, is indeed cruel and outrageous.

Contrary to the Defendants' assertion, Ms. Kiani does not have to allege that the Defendants were vindictive. First of all, despite its obviousness, without sufficient discovery this assertion could not be viably made. What is apparent is what actually took place. Ms. Kiani was allowed to go through three years and the suddenly was ejected from the School. Once can infer that there were elements of vindictiveness or even hatred. But this inference must be further solidified through discovery.

## INDVIDUAL DEFENDANTS SHOULD NOT BE DISMISSED BECAUSE EACH DEFENDANT ACTED TO HARM MS. KIANI

The Defendants' assertion that the claims are not linked to any one individual is also patently false. Unlike <u>Coyne v. City of Somerville</u>, 972 F.2d 440 (1st Cir. 1992), where the "complaint nowhere link[ed] these [people who were promoted] to any of the defendants," in Ms. Kiani's Complaint, individual Defendants are either specifically named or are alluded to by means of reference. <u>Id.</u> at 444.  In Count VI, above, Ms. Kiani has put forth a sampling of the actions of the individual Defendants. Through discovery,

Ms. Kiani is confident that more evidence will come to light, further linking these individuals to the various violations of the law, as alleged in the Complaint.

The Defendants' cited case in their Memorandum, Campagna v. Massachusetts Dep't. of Environmental Protection, et al., 334 F.3d 150, 155 (1st Cir. 2003) is inapposite. There, the Court observed that the plaintiff's claim turned on "the allegations that [a defendant had] acted 'under the direction of the other defendants.'" Id. The Court then held that the plaintiff had failed to sufficiently identify the defendants and to link them to the specific acts. Id. Here, there is no such issue. In fact, Ms. Kiani's claims are not "bald assertions of rights denied," as the Memorandum alleges. See Defs.Mem. at 25.

In her "Statement of Facts," she sufficiently identifies the individual Defendants, linking them to the various claims of injury. See Complaint. The fact that she has not pinpointed every detail for every individual defendant stems from her obligation to comply with Federal Rules of Civil Procedure, requiring a "short and concise statement." Fed. R. Civ. P.8(a)(1). In other words, she has pleaded enough to pass muster under the notice-pleading requirements of the First Circuit.

The disregard of the Defendants for the welfare of Ms. Kiani is sadly apparent. For example, the professors (as well as the Deans) never took time to see what, if anything was wrong with Ms. Kiani. For instance, during the "judicial" proceedings, Defendant Kulll, Ms. Kiani's professor, had acknowledged that he thought that during his class, Ms. Kiani was sometimes "out of it." Yet, he never attempted to find out why she was "out of it." Had he done so, he would have found out that she was under the influence of medication while she was attending his class.

As stated in this Memorandum, what happened to Ms. Kiani was all due to the actions of the individual Defendants. They were responsible for all the actions, which finally culminated in the present state of affairs. To dismiss the individual Defendants is akin to dismissing this complaint as a whole. The Defendants created the myth of Plagiarism out of a cloth. They then wrapped Ms. Kiani into this cloth and tossed her out of their school. This is unconscionable, egregious, and extreme.

Procedurally, too, these Defendants are necessary for the proper and just adjudication of this case. For the reasons stated above, the individual Defendants are indeed "indispensable" parties to Ms. Kiani's Complaint. If these Defendants are dismissed, they will need to be re-joined later under Fed. R. Civ. P. 19(b).

## V. CONCLUSION

The Defendants have failed to state their claim under Fed. R. Civ. P. 12 (b) (6). Given the requirement that all factual allegations must be accepted as true, and in the light most favorable to Ms. Kiani, for the purposes of this rule, the Defendants cannot convince this Court that "beyond doubt" Ms. Kiani  "can prove no set of facts in support of [her] claim that would entitle [her] to relief." Flood v. New Hanover County, 125 F.3d 249, at 251. Since this burden is not met, the Court must therefore deny the Defendants' motion in its entirety. Although the Defendants state that their " Law School's procedures are far more generous than the law requires," yet these procedures needed to be followed and adhered by. Defs. Mem. at 26. In, Ms. Kiani's case, they were not.

It is interesting that the Defendants have, in various corners of their Memorandum, made allusions to their above-reproach, and almost "grand" stance vis-à-vis Ms. Kiani. They incessantly doubt even the possibility of a wrongful act by one of

their own. However, reality may be considerably harsher than the Defendants' sense of grandeur and purity. It is entirely possible that the individual Defendants, and the School as an entity, has acted improperly. It is also equally likely that the Defendants may have indeed embarked on the wrong path. Hubris is not a healthy trait, even for such a large academic institution. After all, size does not connote believability. Nor should it confer credibility.

## VI. PRAYER

For these reasons, Ms. Kiani, respectfully prays that the Defendants' Motion to Dismiss be denied. She also requests a hearing on the merits of the Motion. Ms. Kiani further prays that the Court rule that all of Ms. Kiani's claims proceed until their ultimate conclusion at a trial, and order that discovery proceed immediately.

Respectfully submitted,

Dated: November 2, 2004                   Ms. Kiani, by her attorney

/S/_____

Ben Tahriri
343 Washington Street
Newton, MA 02458
Tel: (617) 965-1090
Fax: (617) 965-5020
BBO# 652042