UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
04-11838-PBS

LAYLA KIANI

Plaintiff

v.

TRUSTEES OF BOSTON UNIVERSITY
RONALD CASS
ANDREW KULL
CHRISTINE MARX

Defendants

REPORT AND RECOMMENDATION ON
<u>MOTION TO DISMISS</u>

November 29, 2004

COHEN, M.J.

    In a rambling complaint consisting of some 126 paragraphs drafted by counsel,[1]

plaintiff seeks to hold the defendants, and each of them, liable for some $185,000 in

damages, more or less, on account of the fact that she was not permitted to graduate

from Boston University School of Law (School of Law).  At bottom, plaintiff, a

---

[1]    The action was originally filed in the Suffolk County Superior Court, and was removed to this court by the defendants based on federal question jurisdiction.

handicapped woman suffering from cerebral palsy, and who was accepted in and remained at the School of Law until shortly before she was to graduate, was discharged from the School of Law for "academic deficiency" - all of which was caused, in whole or part, upon a conclusion reached by the School of Law's Judicial Discipline Committee that she had committed acts of plagiarism, and/or on account of a similar conclusion reached by a number of her professors at the School of Law.

Defendants have filed a motion to dismiss (# 05).  That motion to dismiss, in turn, was referred to this court for report and recommendation consistent with the provisions of 28 U.S.C. § 636(b) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts.[2]

I.    Breach of Contract (Count I) - Trustees of Boston University

As best we can tell, and counsel for plaintiff tells us precious little on the matter, plaintiff contends that all of the defendants breached a contract to her detriment.  In particular, plaintiff alleges that, in connection with the with the disciplinary hearing, she was not advised of her "right"[3] to remain silent, or that she was not asked to sign a document indicating that she was advised of her right to remain silent, or, perhaps,

---

[2]    Plaintiff requested oral argument on the motion.  Under Rule 7.1(d) of the Local Rules of this Court, the court may, notwithstanding a request for oral argument, decide a matter on the papers submitted.  In this case, this court finds and concludes that oral argument would not assist the court.  Plaintiff's memorandum of law filed by counsel, riddled with invective here and there, and devoid of developed legal argument, certainly has not assisted this court, and there is no reason to believe that oral argument would be anything different.

[3]    Plaintiff refers to it as her "right" to remain silent without further elucidation.  It is not clear whether that so-called "right" is based on notions of contract law, or based on constitutional underpinnings. If the latter, plaintiff - for the reasons set forth with respect to Count 2, note 18, *infra* - has failed to satisfy this court that the constitution (of either the United States or the Commonwealth of Massachusetts) includes a "right" to remain silent in any and all things.

both.[4]

1.    With respect to the breach of contract claim brought under the common law of Massachusetts, defendants, referring to portions of the transcript of the disciplinary hearing in issue say (Memorandum in Support, pp. 6-7 and note 2) that her claim, in this respect, is not true.  But, defendants' suggestions notwithstanding, this court cannot rely on that transcript.  The limits of what may, and what may not, be referred to in the context of a Rule 12(b)(6) motion to dismiss was visited once again by our Circuit very recently in *Rodi v. Southern New England School of Law*, __ F.3d __, 2004 WL 2537204 (1st Cir. November 10, 2004).  There that Court observed (*Id.* at * 3-4):

> In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it. *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir.2003);

---

[4]      In her complaint, plaintiff alleges (¶¶ 57, 58):

57. More specifically, the Defendant University's own procedural rules and regulations require that a student be afforded the right to remain silent. See Disciplinary Regulations for All BUSL Students, Art. IV, Section 1. A true and accurate copy of the Disciplinary Regulations is annexed as Exhibit F hereto and is specifically incorporated herein by reference.

58. The Defendants failed to provide the Plaintiff with a verbal and written document informing her of her right to remain silent.

In her Memorandum of Law in opposition to the motion to dismiss, however, plaintiff says (p. 9):

Article IV (1) of the Disciplinary Regulations states that

All students are to be informed of the right to counsel and the right to remain silent, and shall be warned that anything the student may say may be used against the student. The student *[shall be requested to sign a statement to the effect that he or she has been informed of the above rights and has received the above warning]*. (Emphasis added).

The italicized emphasis above was that of the plaintiff.  From this, it is not clear that she contends that she was not informed of her so-called right to remain silent, or that she was not requested to sign a statement indicating that she was so informed, or both.  Indeed, it is not even clear whether she says that she was not afforded that right at the Judicial Committee hearing, or sometime prior thereto.  Article IV(1) of the disciplinary rules relates to the investigation and presentation of charges to the Judicial Committee. The Judicial Committee hearing procedures are set forth in Articles V and VI of the disciplinary rules, and the italicized language in Paragraph 58 of the Complaint does not appear in any of Articles V and VI.

*Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 241 n. 4 (1st Cir.2002). This sometimes includes documents referred to in the complaint but not annexed to it. See Coyne v. Cronin, __ F.3d __, __ (1st Cir.2004) [No. 03-2357, slip op. at 11]; *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir.1998); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988). Finally, the jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice. *Colonial Mortg. Bankers*, 324 F.3d at 15-16; *Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir.2000).

Giving force to these principles, we may consider on this appeal the facts alleged in the complaint, the Larkin and Prentiss letters (which were annexed to it), and any matters that may be judicially noticed. We also may consider SNESL's 1997-1998 catalogue, alleged by the plaintiff to comprise a part of the contract between the parties, as a document fairly incorporated into the complaint.

The transcript of the hearing simply does not fit within the contours of *Rodi* and its progenitors, and cannot be considered in the context of a motion to dismiss brought under Rule 12(b)(6).[5]

2.    Nevertheless, in this court's view, giving all the allegations in the complaint their due, plaintiff still fails to state a claim for breach of contract.

Plaintiff, in her complaint, and in her memorandum of law in opposition to the motion to dismiss, say precious little about her breach of contract theory.  To be sure, she says that when she enrolled in the Law School, there was a contractual relationship.  That, of course, goes without saying (and without need of extended authority), but that says nothing about the claim here.

---

[5]    There is another reason why alluding to the submitted transcript of the hearing does not dispose of the breach of contract claim.  As we have indicated in the text above and in note 4, *supra*, it is not clear that plaintiff contends that she was not informed of her so-called right to remain silent, or that she was not requested to sign a statement indicating that she was so informed, or both.  The submission goes to one, but not the other.

Of course, if the transcript is accurate, and Count 1 is not subject to dismissal on other grounds, we suggest that plaintiff peruse Rule 11, F.R. Civ. P., before she continues to pursue the claim that she was not informed of her right to remain silent.

We assume that plaintiff means to say that the Disciplinary Rules of the Law School constituted a contractual promise to her that the Law School would abide with its disciplinary procedures in matters of discipline.   But merely saying that (and she does not even do that) does not make the day.

We have found no case under Massachusetts law which discusses the import of written disciplinary rules of a private school or university in terms of an implied contractual theory.[6]  Most, if not all, arise in the employment context - *i.e.*, whether an employee (or employer) handbook can form the basis of a binding contract - either express or implied.   On that, the leading case is, and remains, to be *O'Brien v. New England Telephone and Telegraph Company*, 422 Mass. 686, 664 N.E.2d 843 (Mass. 1996).   There the court observed, *inter alia* (*Id.* 664 N.E.2d 847-849):[7]

> Since our opinion in *Jackson v. Action for Boston Community Development, Inc.,* 403 Mass. 8, 525 N.E.2d 411 (1988), in which we last considered the question of personnel manuals, some confusion has arisen.   In that opinion, we held that the summary judgment evidence demonstrated that the parties had not entered into an implied contract on the basis of a personnel manual that the defendant employer had distributed to its employees.  *Id.* at 14, 525 N.E.2d 411.
>
> Principles stated in the *Jackson* opinion remain sound.   A personnel manual may form the basis for an express contract.  *Id.* at 13, 525 N.E.2d 411.   Surely, if the parties agree in advance of employment that a personnel manual will set forth relative rights and obligations of employer and employee, the manual becomes part of the employment contract.   A similar result would be obtained if, during the course of at-will employment, the parties agree, orally or in writing, that thereafter their rights and obligations would include the provisions of an employee manual.   An employee remaining with the employer after receiving a

---

[6]        And plaintiff, in her memorandum in opposition to the motion to dismiss, does not address the question in those terms.

[7]        And we extract from *O'Brien* at some length, inasmuch as it expresses alternative theories.

manual provides the consideration necessary to support the contract. *Id.* at 14, 525 N.E.2d 411.   It is also apparent that the circumstances of a particular employment relationship could warrant a finding of an implied contract that includes the terms of a personnel manual. *Id.* If an employer adheres to the procedures set forth in its manual, that would be some evidence that the terms of the manual were part of the employment contract. *Id.*

The *Jackson* opinion has led to confusion because certain facts that were stated to be present or not present in that case (*id.* at 14-15, 525 N.E.2d 411) have been viewed as constituting a list of conditions that must exist in order to justify a ruling that the terms of a personnel manual are part of an express or implied employment contract.   See *Pearson v. John Hancock Mut. Life Ins. Co.,* 979 F.2d 254, 256-257 (1st Cir.1992); *Biggins v. Hazen Paper Co.,* 953 F.2d 1405, 1423-1424 (1st Cir.1992), vacated on other grounds, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993);  *Cadrin v. New England Tel. & Tel. Co.,* 828 F.Supp. 120, 122 (D.Mass.1993).   Cf. *O'Brien v. Analog Devices, Inc.,* 34 Mass.App.Ct. 905, 906, 606 N.E.2d 937 (1993) (manual played no part in employment agreement because employee did not read manual until after she began her employment); *Mullen v. Ludlow Hosp. Soc'y,* 32 Mass.App.Ct. 968, 969, 592 N.E.2d 1342 (1992) (no contract because terms of manual were not negotiated, manual was received after employee began working, employer could change manual unilaterally, and manual said it was not a contract).

The various circumstances discussed in the *Jackson* opinion are not a rigid list of prerequisites, but rather explain factors that would make a difference or might make a difference in deciding whether the terms of a personnel manual were at least impliedly part of an employment contract. For example, one of the *Jackson* factors is whether there had been negotiations over the terms of the personnel manual. *Jackson*, *supra* at 15, 525 N.E.2d 411.   If there had been negotiations leading to an agreement, that fact alone would justify the conclusion that more than an at-will employment contract existed.   The fact that the NET manual was not the subject of negotiation is neither significant nor surprising. Negotiation of the terms of a company-wide manual for nonunion employees is not likely and is not an essential precondition of the enforceability of the employer's obligations stated in the manual.   Of course, if a manual furnished to an employee stated a term of employment, the employee would not be an at-will employee.  *Id.*

The *Jackson* opinion thought significant, in support of its result, that the employer retained the right unilaterally to modify the terms of the

manual because that made any offer in the manual illusory.  *Id.* at 14-15. On the other hand, if an employee reasonably believed that the employer was offering to continue the employee's employment on the terms stated in the manual, the employee's continuing to work after receipt of the manual would be in the nature of an acceptance of an offer of a unilateral contract (see *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626-627 [Minn.1983] ), and the promise would not be illusory.   The fact that the employer did not intend to make such an offer, and that there was no explicitly bargained-for exchange, does not matter if employees in general would reasonably conclude that the employer was presenting the manual as a statement of the conditions under which employment would continue.  See Restatement (Second) of Contracts § 24 (1979) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it").

The *Jackson* opinion also indicates that a finding that the terms of a personnel manual are part of an employee's contract would be supported if the employee signed the manual, manifested assent to it, or acknowledged understanding of its terms, or if the employer called special attention to the manual.  *Jackson, supra* at 15, 525 N.E.2d 411.   Although O'Brien did not sign the personnel manual (the document that contains whatever contractual rights that she may have beyond those of an at-will employee), there was evidence that she received a new copy of the manual annually.

There is nothing in this case, alleged or otherwise, which even comes close to fitting within the contours of the *O'Brien* rationale.  While it cannot be gainsaid, as plaintiff says, that the relationship of the School of Law and plaintiff was contractual in nature, plaintiff does not allege, and, quite assuredly, could not allege, that she bargained for the provisions set forth in the disciplinary rules <u>prior</u> to enrolling in the School of Law.[8]  Nor does she allege that, after her initial enrollment at the School of

---

[8]      The long and short which plaintiff alleges *vis a vis* the events leading up to her enrollment at the School of Law is set forth in Paragraphs 22 through 24 of her complaint.  There she alleges:

22. The Plaintiff then applied for admission to Defendant University's law school.

23. In the year 2000, the Defendant University, which operated a well-known law school with

(continued...)

Law, she bargained with the School of Law in terms of the provisions of the disciplinary rules, and that the School of Law, orally, or in writing, assured her that the School of Law would adhere faithfully to the minutia set forth in the disciplinary manual.  Nor can she say that, negotiations put to one side, she remained at the School of Law after her initial enrollment because of that which was set forth in the disciplinary manual.  That is to say, she does not allege that, after her initial enrollment, she remained at the School of Law only because, in whole or part, she was prompted to so remain based on the contents of the disciplinary rules.[9]  In short, there is nothing alleged in this case which even suggests that the School of Law, expressly or impliedly, promised the plaintiff that it would follow all of the provisions set forth in the disciplinary manual, much less that plaintiff chose to enroll at, or remain at, the School of Law based on such promises.  In

---

[8]    (...continued)
stringent admission requirements sent the Plaintiff a letter of acceptance.

24. The acceptance was based on the merits of the Plaintiff's qualification, and not due to any preference due to her gender or handicap status.

Plaintiff does not allege that her application for enrollment was based on any sort of assurance that the School of Law would adhere to the provisions of the disciplinary rules.  And it would blink reality to suggest otherwise.  Surely, law schools and universities do not negotiate enrollments in their respective schools with would be candidates - in terms of disciplinary rules, or otherwise.

[9]    Not only does plaintiff not allege that to be the case, but she seemingly seems to suggest that she was unaware of any of the provisions of the disciplinary rules - much less the disciplinary rule granting an alleged "right" to remain silent.  On this, plaintiff, by and through counsel in her memorandum in opposition (p. 10) says:

Secondly, the student cannot be reasonably expected to know the intricate contents of a school disciplinary regulations. The Defendants argue that because Ms. Kiani was a law student, she should have somehow known the contents of the Disciplinary rules. Defs. Mem. at 7-8. This is an unreasonable expectation. Indeed it was certainly reasonable that considering Ms. Kiani's hardship due to the shock and dismay at the misfortune that had befallen her that she would not sit down and read the School's disciplinary manual. She reasonably expected the School and the Defendants to at least follow their own rules. They did not. In fact, not only was she not informed of her right to remain silent, apparently, she was encouraged to "interview" with the members of the Committee. (Emphasis added).

If plaintiff never even perused the disciplinary manual, it could hardly be said by her or anyone that she enrolled in, and maintained her enrollment in, the School of Law on account of the representations set forth in that disciplinary manual.

these circumstances, plaintiff alleges nothing indicating that she is entitled recover on the grounds of breach of contract.[10]

3.      Moreover, even if it could be said that the School of Law impliedly promised to plaintiff that she would be advised of her right to remain silent, plaintiff has alleged nothing to suggest that the failure to do so constituted a material breach.  For one thing, plaintiff does not allege in any of the 121 paragraphs of her complaint that she did not maintain her silence during the course of the entire investigation and judicial

---

[10]      Plaintiff refers to *Lyons v. Salve Regina College*, 565 F.2d 200 (1st Cir. 1997) and *Russell v. Salve Regina College*, 938 F.2d 315 (1st Cir. 1991), and other federal cases, suggesting that the test is one of "reasonable expectations."  We do not gainsay that general suggestion.  But even then, the our Circuit has cautioned that - in the context of the unique university and student relationship, contract law should not be woodenly applied.  Thus, in *Lyons*, the Court cautioned (*Id.* at 202):

> The Court proceeded on the assumption that the College Manual and the College Academic Information and Registration Materials set out the terms of an ordinary commercial contract between Salve Regina College and the members of its student body including plaintiff.  We are of the opinion that the approach which the Rhode Island Supreme Court would adopt, in construing the language of a claimed contract between a student and her college or university, is that prescribed in the opinion of the Court of Appeals for the Tenth Circuit in *Slaughter v. Brigham Young University*, 514 F.2d 622 (10th Cir. 1975). There the Court ruled:
>
> > The trial court's rigid application of commercial contract doctrine advanced by plaintiff was in error . . . . It is apparent that some elements of the law of contracts are used and should be used in the analysis of the relationship between plaintiff and the university to provide some framework into which to put the problem . . . . <u>This does not mean that "contract law" must be rigidly applied in all its aspects, nor is it so applied even when the contract analogy is extensively adopted. . . . The student-university relationship is unique, and it should not be and can not be stuffed into one doctrinal category</u>. . . . (Emphasis added).

That is particularly true here, when the disciplinary rules are read as a whole rather than the splinter presented by the plaintiff.  While it is true that Sections IV.1 and VI.6 of the Disciplinary Rules refer to a student's right to remain silent, Section VI.12 makes clear that any procedural error - and, in this case, that is all that plaintiff alleges - will not result in the invalidation of "...the proceeding or disposition of the case."  Thus, while Sections IV.1 and VI.6 may giveth, so, too, does Section VI.12 taketh away.

The Massachusetts courts appear to adopt this approach as well. *E.g.*, *Schaer v. Brandeis University*, 432 Mass. 474, 735 N.E.2d 373 (Mass. 2000).  But in this case, plaintiff has not even alleged facts concerning reasonable expectations.  In her complaint, consisting of some 121 rather conclusory allegations, she does not allege even once that she was aware of the disciplinary rules - much less the minutia of the disciplinary rules.  And she says as much by and through counsel in her Memorandum of Law. *See* note 9, *supra*.  To be sure, plaintiff, unaware of the stuff of the rules, could reasonably expect that the School of Law, before disciplining her for plagiarism, would be fair in its procedures used in reaching judgment.  And that expectation - fairness - is precisely what she received - nothing more, and nothing less.

committee proceedings.[11]  For another, even if she did not maintain her silence, there is simply no allegation to the effect that anything she might have said at any time resulted in her suspension[12] or ultimate expulsion.[13]

Accordingly, plaintiff has not made out a breach of contract claim against the defendant Trustees of Boston University.

---

[11]    As we have said, the complaint is silent in this regard.  In her memorandum in opposition, at p. 10, the most that plaintiff, by and through counsel, would allow is: "In fact, not only was she not informed of her right to remain silent, apparently, she was encouraged to 'interview' with members of the Committee.  See Defs. Mem. Exhibit 1."  (Emphasis added).  The reference to Defs.Mem. Exhibit 1 in the quoted text below is, in fact, a reference to the portion of the transcript of the hearing submitted by the defendants in support of the motion to dismiss.  See Section I.1 of this Report and Recommendation above.  And, to the extent that plaintiff chooses to refer to that exhibit in her Memorandum of Law, the doctrine of completeness requires the observation that plaintiff did, in fact, maintain her silence.  As shown in that partial transcript referred to by the plaintiff:

> PROFESSOR RYCKMAN:...I also want to comment that in Article IV of the disciplinary regulations one of the tasks of the person appointed by the Dean, and I am the Dean's designate for disciplinary matters, is to discuss the matter with the student if the student chooses to have that haappen.
>
> Obviously the student has a right to remain silent and on advice of counsel I was informed that Miss Kiani did not wish to be interviewed by me.  That is why these materials don't contain a transcript of that interview which is customary and I am sure you have seen before in prior cases. (Emphasis added).

It is thus clear beyond peradventure that whether or not plaintiff was advised of her right to remain silent (and, as shown immediately above, plaintiff's own references show that she was so advised), it was and is simply a matter of no harm, no foul, since she did maintain her silence.

[12]    According to plaintiff's own attachments to her complaint, her suspension in May of 2003 was not the result any formal disciplinary action.  As indicated in Dean Cass' letter appended to the complaint, the suspension was an "Interim Sanction" issued under Section IV.4 of the Disciplinary Rules - i.e., a sanction in the form of suspension pending investigation and hearing of charges.

[13]    Her eventual expulsion from the School of Law was not the result of any sanction imposed as a result of the disciplinary hearing.  She was expelled because her grade average fell below 2.00 - a prerequisite to continuing her legal studies.  To be sure, her grade average fell when various professors recalculated her grades accounting for plagiarisms in various writings she had submitted to those professors.  But it can hardly be said that she was expelled for anything she might have said (and we have no indication, as set forth above, that she said anything) during the course of the investigation of or hearing relating to her plagiarism.

In her memorandum of law, plaintiff suggests that, in her view, she did not commit acts of plagiarism as defined by Section II.2.e of the disciplinary rules.  Significantly, however, she has not alleged in her complaint, and has not said in her opposition, that the Judicial Committee could not have reasonably concluded that she committed plagiarism based on the evidence before that Committee.  In this respect, it is significant that plaintiff did not even choose to seek further review of the decision of that Committee, even though she was entitled to do so under Article VIII of those disciplinary rules.

Nor has plaintiff ever maintained that the professors who revised her grades downward based on their view that she had plagiarized papers in their respective courses acted in an arbitrary or capricious fashion.

II.     Breach of Contract (Count I) - Individual Defendants

        Count 1, breach of contract, is also brought against the individual defendants,

Ronald Cass, Wendy Mariner, Andrew Kull, and Christine Marx.

        It is clear beyond peradventure that the plaintiff has failed to state a claim

sounding in contract against these individual defendants.  Even if, contrary to what we

conclude above, there was an enforceable contract between plaintiff and the Trustees

of Boston University to the effect that plaintiff would be advised of her right to remain

silent attendant to any disciplinary proceedings, and even if, again contrary to what we

conclude above, that the Trustees of Boston University breached that agreement in a

material respect, nothing is alleged, in terms of identifiable fact, showing that any of the

named individual defendants were a party to that contract.  In her complaint, plaintiff

simply alleges in a conclusory fashion: "56.  As university employees, the individual

Defendants had engaged in a contractual relationship with the student, the Plaintiff."

(Emphasis added).  That hardly carries the day.  As anyone with even a passing

familiarity with Contracts 101 surely must know, to be a party to a contract, one must

make an offer which is thereafter accepted.  There is no such allegation here as to any

of the individual defendants.  And even if plaintiff alleged that any of the individual

defendants participated in any of the negotiations (if any such negotiations there

should be) leading up to any implied contract between the School of Law[14] (and she

---

[14]        *Via* the Trustees of Boston University.

does not[15]), even that is not enough.  And that is because, in the words of the First

Circuit (*Veranda Beach Limited Partnership v. Western Surety Co.*, 936 F.2d 1364,

1378 (1ˢᵗ Cir. 1991)):

> It is, after all, black letter law that when an agent contracts with third persons on behalf of a disclosed principal, the contractual obligations and benefits do not inure to the agent's behoof.  *See*, *e.g.*, *Columbia Broadcasting System, Inc. v. Stokely-Van Camp, Inc.*, 522 F.2d 369, 375 (2d Cir.1975);  *Gearing v. Berkson*, 223 Mass. 257, 111 N.E. 785, 786 (1916);  3 Am.Jur.2d, Agency § 314 (1986).

That ends the matter in terms of breach of contract claims against the individual

defendants, inasmuch as the plaintiff has failed to state a breach of contract claim

against any of the individual defendants.

III.    Denial of Procedural Due Process (Count II) - All Defendants

In Count II, plaintiff alleges that all of the defendants - by failing to advise her of

her right to remain silent, and by appointing as counsel for the plaintiff a member of the

faculty of the School of Law[16] - denied plaintiff procedural due process as guaranteed

by the Fourteenth Amendment, all in violation of the Civil Rights Act, 42 U.S.C. § 1983.

In the circumstances, it is clear that, under Count II, plaintiff has not alleged sufficient

facts warranting relief under the provisions of Section 1983.

---

[15]    In the opening paragraphs of her complaint, to wit: paragraphs 3, 6-9, plaintiff simply alleges that all were "employees" of the School of Law, that  Cass was the former Dean of the School of Law,  that defendants Mariner, and Kull were teachers at the School of Law, and that Marx was an Assistant Dean at the School of Law. After that, Cass is referred to in only two instances - both relating to his involvement as Dean in the disciplinary investigation, and, in no instance, in terms of making a contract with any one.  Defendant Mariner is thereafter referred to in only four instances, and only in the sense of her having reported the plagiarism in the first instance, and in the sense of having reevaluated plaintiff's grades.  There is not a single allegation suggesting that Mariner participated in any contractual negotiations, or was in any sort of contractual relationship with the plaintiff.  Apart from being identified as a teacher at the School of Law, there is not a single allegation in the remainder of the complaint referring to defendant Kull.  So, too, with defendant Marx.  Apart from being identified as an Assistant Dean at the School of Law, there is not a single allegation in the remainder of the complaint referring to defendant Marx.

[16]    Arnold Rosenfeld, Esquire.

For one thing, to the extent that the claim is brought against the individual defendants, wholly apart from the matter of "state action" discussed *infra*, there is not a single allegation indicating or suggesting that any of the <u>individual</u> defendants were members of the investigation or hearing on the plagiarism charges.  Merely being employees of the School of Law, and nothing more, surely does not make out a claim under Section 1983.

For another, to the extent that plaintiff seeks refuge in Section 1983, plaintiff has failed to allege sufficient facts showing "state action" as required by Section 1983.  On that matter, all that plaintiff alleges is set forth in Paragraph 61 of the complaint, to wit:

> 61.  Upon information and belief, the Defendant University receives federal financial assistance and is therefore subject to the provisions of the 14th Amendment of the US Constitution.

Receipt of federal funding, however, is clearly not enough to render the actions of a private university into the required state action under Section 1983. *E.g.*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982); *Berrios v. Inter American University*, 535 F.2d 1330, 1332 n. 5 (1st Cir. 1976).

Indeed, in her memorandum in opposition, plaintiff abandons any notion of state action for the purpose of Section 1983 liability, saying only at pp. 14-15:

> Although as a general matter, students at a private university do not enjoy the same due process privileges as public schools, it would be far fetched to assume that a private school can shamelessly maltreat its students. As Lisa Tenerowicz observes,
>
> > in the absence of constitutional protections, courts generally have required that private school disciplinary procedures adhere to a "fundamental" or "basic" fairness standard and not be arbitrary or capricious. More precisely, state and federal courts have often held that a private school's

> disciplinary decisions are fundamentally fair if they comport
> with the rules and procedures that the school itself has
> promulgated.

Tenerowicz, at 663-664.

> The public-private distinction notwithstanding, it would be a "cruel
> hoax on the integrity of the educational process for a private university to
> take refuge in such a distinction." See Tenerowicz, at 685. Indeed,
> "because colleges and universities perform an essential function in a
> democratic society and because they have been given a position of
> esteem, trust and responsibility, they must, in return, treat students fairly,
> with equal dignity, care and concern." Id.

> It would have been reasonable for Ms. Kiani to expect the
> Defendants to at least treat her with the same respect and fairness
> afforded by the Constitution to the students of public schools. These
> Defendants appear to hold themselves out to a higher ethos and esteem.
> Hiding behind the veil of the private-school distinction would be and
> should be contrary to the mission and the mandate of the Defendant
> University. (Emphasis added).

Notwithstanding plaintiff's view as to what the law ought to be, it is clear that the

fact that the School of Law may accept federal funding does not make it - much less the

individual defendants - a state actor for Section 1983 purposes.  Plaintiff, alleging and

saying no more,[17] fails to state a Section 1983 claim under Count II against any of the

---

[17]    Plaintiff, in her papers, makes no argument - much less a meaningfully developed argument - suggesting that any of the defendants were "state actors" within the meaning of Section 1983 jurisprudence.

In United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997), the United States Court of Appeals for this Circuit observed:

> To make a bad situation worse, the appellant's briefs in this court advance these alleged
> constitutional violations in vague and cryptic terms. Appellate judges are not clairvoyants, and it is
> surpassingly difficult for us to make something out of nothing. Cf. William Shakespeare, King
> Lear act 1, sc. 4 (1605). We have steadfastly deemed waived issues raised on appeal in a
> perfunctory manner, not accompanied by developed argumentation, see, e.g., Martinez v. Colon,
> 54 F.3d 980, 990 (1st Cir.), cert. denied, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995);
> Ruiz v. Gonzalez Caraballo, 929 F.2d 31, 34 n. 3 (1st Cir.1991); United States v. Zannino, 895
> F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990), and
> this case does not warrant an exception to that salutary practice. "It is not enough merely to
> mention a possible argument in the most skeletal way, leaving the court to do counsel's work...."
> Zannino, 895 F.2d at 17.

(continued...)

defendants.[18]

_____

[17]    (...continued)
To that, this court here would only add that district judges, like appellate judges, are not clairvoyants.   For want of any argument to the contrary, and given that federal funding, standing alone, does not make a private actor a state actor, a point that plaintiff does not gainsay, it is clear that plaintiff cannot establish a claim under Section 1983 as alleged in Count II.

Plaintiff does not purport to bring this claim under the Massachusetts Civil Rights Statute.  And for good reason, since liability under that statute - although not requiring a showing of state action - does require a showing of "threats, intimidation, or coercion". _See Longval v. Commissioner of Correction_, 404 Mass. 325, 333, 535 N.E.2d 588 (1989); _Abdullah v. Secretary of Pub. Safety_, 42 Mass.App.Ct. 387, 396- 397, 677 N.E.2d 689 (1997).  Plaintiff does not allege any threats, intimidation, or coercion in this case.

[18]    Plaintiff casually suggests that the Constitution of the United States requires appointment of counsel in school disciplinary matters, and, subsumed in that right is a right to appointment of counsel not associated with the School of Law.  This court's reading of the Constitution does not square with the first suggestion, much less the second.  As to the second, plaintiff surely blinks reality in suggesting that her appointed counsel, a well known member of the Massachusetts Bar, would fail to zealously defend the rights of his client merely because he happened to be a professor at the School of Law.  Plaintiff, or current counsel for plaintiff (or, perhaps, both) surely do not know the stuff of lawyering when making that suggestion.  After all, we know that our Federal Defenders zealously defend their respective clients despite the fact that their salaries derive from the same branch of government.  So, too, do we know that, in court martial proceedings, appointed counsel most often is a member of the armed forces.  As to the first suggestion, core concepts of due process do not require the appearance of chosen counsel, much less appointed counsel in non-criminal matters. _E.g._, _Baxter v. Palmigiano_, 425 U.S. 308 (1986); _Wasson v. Trowbridge_, 382 F.2d 807, 812 (2d Cir.1967); _Donohue v. Baker_, 976 F.Supp. 136, 146 (N.D.N.Y. 1997); _cf. Gabrilowitz v. Newman_, 582 F.2d 100 (1st Cir.1978)(holding that counsel should be appointed where a party will be asked incriminating questions which could be used in a pending criminal investigation - a matter clearly not this case, alleged, or otherwise).

Moreover, plaintiff's central theme, that one has a constitutional right to remain silent at any time at any place under any circumstances falls on its own petards.  The only "right" to remain silent as set forth in the Constitution of the United States derives from the Fifth Amendment.  As the Supreme Court recently reaffirmed (_Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County_, 124 S.Ct. 2451, 2461,159 L.Ed.2d 292 (2004)):

The Fifth Amendment prohibits only compelled testimony that is incriminating. See _Brown v. Walker_, 161 U.S. 591, 598, 16 S.Ct. 644, 40 L.Ed. 819 (1896) (noting that where "the answer of the witness will not directly show his infamy, but only tend to disgrace him, he is bound to answer"). A claim of Fifth Amendment privilege must establish

" 'reasonable ground to apprehend danger to the witness from his being compelled to answer.... [T]he danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things,--not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct.' " _Id._, at 599-600, 16 S.Ct. 644 (quoting _Queen v. Boyes_, 1 Best & S. 311, 321 (1861) (Cockburn, C.J.)).

As we stated in _Kastigar v. United States_, 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Fifth Amendment privilege against compulsory self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Suspects who have been granted immunity from prosecution may, therefore, be compelled to answer; with the threat of  prosecution removed, there can be no reasonable belief that the evidence will be used against them.

(continued...)

IV.    <u>Violation of the Americans with Disabilities Act (Count III) - Individual Defendants</u>[19]

In Count III, plaintiff generally alleges that the defendants, without reference to any of the individual defendants, much less any reference to a particular provision of the Act, violated her rights under the Americans with Disabilities Act (ADA - 42 U.S.C. §§ 12101 *et seq.*).

In the circumstances, plaintiff fails to state a claim against any of the individual defendants.

For one thing, it is clear that, plaintiff's broad and unspecific reference to the ADA in its entirety (*i.e.*, 42 U.S.C. §§ 12101 *et seq.*) notwithstanding, that this portion of the claim is brought under Title III of the ADA.[20]  And that being the case, none of the individual defendants can be held liable for the simple reason that plaintiff has not alleged, and, indeed, cannot allege, that any of the individuals *qua* individuals, as

_____

[18]    (...continued)
In this case, plaintiff does not even suggest that anything she might have said - much less that which she did say - would be or could be incriminating within the meaning of Fifth Amendment jurisprudence.  And to suggest otherwise would be to merely whistle in the dark.

[19]    Defendants move to dismiss *vis a vis* Count III only with respect to the individual defendants, and not the defendant Trustees of Boston University.

[20]    Title I of the ADA relates to employment discrimination, and this is not an employment discrimination.  Title II relates to discrimination "public entities", and, for the reasons set forth above *vis a vis* plaintiff's Section 1983 claim, this is not a "public entity" case.  Title III, on the other hand, relates to discrimination in places of public accommodation, to wit:

§ 12182. Prohibition of discrimination by public accommodations

(a) General rule

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation <u>by any person who owns, leases (or leases to), or operates</u> a place of public accommodation. (Emphasis added).

Only Title III of the ADA is applicable to this case.

indicated in the plain and unequivocal language of the controlling statute, "...own[ed], lease[d] (or lease[d] to), or operate[d]" the School of Law. *See e.g.*, *Emerson v. Thiel College*, 296 F.3d 184, 188-189 (3d Cir. 2002).

Moreover, even if plaintiff could, in some manner, establish that Title III of the ADA applies to professors and/or deans of private universities serving as institutions of public accommodation, the general allegations set forth in the complaint clearly do not carry the day against these defendants.[21]  As indicated elsewhere, defendants Kull and Marx are only identified in the *Parties* portion of the complaint, and no where else. Defendants Cass and Mariner are referred to in several instances, but, in none of those instances are any of the remarks conclusorily set forth in Paragraphs 73 or 74 attributed to them.[22]  Plaintiff fails to state a claim against the individual defendants under Count III.

---

[21]       All that she alleges in her complaint is as follows:

71. The Plaintiff suffers from a severe form of Cerebral Palsy, and is considered a disabled individual under ADA.

72. At all times, the Plaintiff was qualified to continue her studies as a law student at the Defendants' school;

73. The individual Defendants had on several occasions intentionally made remarks <u>such as</u> that the Plaintiff was "not intellectually up to" the Defendants' standards.

74. <u>One of the employees of the Defendant University</u>, a professor had remarked that there had been "some regret admitting her" to the School.

75. Based on the subsequent actions of the Defendants, it is clear that the Plaintiff's disability was a motivating factor in her exclusion from the JD program. (Emphasis added)

[22]       And even if plaintiff could properly allege as fact that one or more of the individual defendants "made remarks <u>such as</u> that the Plaintiff was 'not intellectually up to' the Defendants' standards", there is a complete lack of any allegation of causation in terms of the plaintiff's expulsion from school.  While we do not condone such remarks (and we hardly think that any such remarks were made by any of the individual defendants), the current record before this court suggests buy only one reasonable conclusion.  Plaintiff was expelled from the School of Law because of her plagiarism, resulting in a regrading and failure of certain courses below the required average.  Plaintiff does not allege that any such remarks contributed to her expulsion in any way.

V.    Violation of the Rehabilitation Act of 1973 (Count IV) - Individual
      Defendants[23]

In Count IV, plaintiff generally alleges that the defendants, again without reference to any of the individual defendants, violated her rights under the Rehabilitation Act of 1973 (29 U.S.C. § 794).

For one thing, like claims brought under Title III of the ADA, it is clear that none of the individual defendants can be held liable under the Rehabilitation Act of 1973. That statute provides in relevant part:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....(Emphasis added).

In this case, plaintiff has not alleged, and, indeed, cannot allege, that any of the individuals *qua* individuals "...receiv[ed] Federal financial assistance.". *See e.g.*, *Emerson v. Thiel College*, *supra*, at 189-190; *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir.2001); *Doe v. Town of Bourne*, 2004 WL 1212075 *4 (D.Mass. May 28, 2004).[24]

---

[23]    As with the case with Count III, defendants move to dismiss *vis a vis* Count IV only with respect to the individual defendants, and not the defendant Trustees of Boston University.

[24]    There Judge Woodlock of this court concluded (*Id.*):

I need not revisit the statute of limitations issue with respect to these claims because individuals in their individual capacities are not liable under § 504, which applies only to recipients of federal financial aid. *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir.2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); *Castro Ortiz v. Fajardo*, 133 F.Supp.2d 143, 150-51 (D.P.R.2001) (citing cases holding that "no personal liability can attach to agents and supervisors under Title VII, ADEA, ADA or the Rehabilitation Act"). *But see McCachren v. Blacklick Valley Sch. Dist.*, 217 F.Supp.2d 594 (W.D.Pa.2002) (allowing individual capacity claims under § 504). The mere fact that in the Complaint the Does name Grondin and Demitri in their official, as well as individual, capacities is not sufficient to state a viable claim; they do not allege, nor have they adduced any evidence, that Grondin or Demitri received federal funds for the Bourne schools. *See Emerson v.*

(continued...)

Moreover, even if plaintiff could, in some manner, establish that the

Rehabilitation Act of 1973 applies to individuals who just happen to be professors

and/or deans of private universities receiving federal financial assistance, plaintiff still

fails to state a claim against any of the individual defendants under Count IV.  As is the

case with Count III, purely conclusory allegations clearly do not carry the day against

these defendants.[25]   Apart from the unhelpful reference to "the defendants", none of

---

[24]        (...continued)
*Thiel College*, 296 F.3d 184, 190 (3d Cir.2002) ("Because the individual defendants do not receive federal aid, [plaintiff] does not state a claim against them under the Rehabilitation Act."); *Mitchell v. Mass. Dep't of Corr.*, 190 F.Supp.2d 204, 213 (D.Mass.2002) (dismissing Rehabilitation Act claims because "[t]here is no evidence here that [individual defendants] are a 'program or activity receiving Federal financial assistance.' ' (quoting 29 U.S.C. § 794(a))). Thus, I dismiss the § 504 claims in Counts 7 and 8

[25]        All that she alleges in her complaint is as follows:

76. The Plaintiff reavers, realleges and incorporates by reference the allegations contained in the above paragraphs as if each had been separately set forth herein.

77. The Plaintiff is a qualified handicapped individual as defined as defined in 29 U.S.C. § 706(7).

78. The Plaintiff was excluded from the Program, which she was pursuing, in violation of the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

79. Solely because of the Plaintiff's handicapped status, the Defendants engaged in conduct, which ultimately resulted in her complete exclusion from the Defendants' school.

80. This conduct included various attempts by the Defendants to isolate the Plaintiff and discriminate against her by depriving her of the essentials necessary for a severely handicapped student.

81. More specifically, since the very beginning of the First year, and in fact throughout the course of her studies, the Defendants refused the Plaintiff's request that she be accommodated with a Stenographer, which was essential to her work.

82. For a considerable period, the Plaintiff was also deprived of accommodation by not being given access to a private room in the library to listen to her class tapes.

83. The Plaintiff was therefore forced to use the main lobby of the library to study, thus depriving her of the opportunity to listen to her class tapes, as was necessary for a successful study program.

84. The Plaintiff was forced to wait until the second year before she could be given a key to use a room in the library.

85. As a result of this delay in accommodation, the Plaintiff academically and emotionally suffered.

the specific acts set forth in Paragraphs 79 through 84 is alleged to have been

committed by any one, much less all, of the individual defendants casually named as

such in the complaint.  Plaintiff fails to state a claim against the individual defendants

under Count IV.[26]

VI.    Fraud (Count V) - All Defendants

In Count V, plaintiff attempts to plead a claim of common law fraud against all of

the defendants.  That claim is laid in the broadest, yet the most nonspecific terms, to

wit:

> 86. The Plaintiff reavers, realleges and incorporates by reference the allegations contained in the above paragraphs as if each had been separately set forth herein.

> 87. Upon information and belief, the Defendants have engaged in conduct designed to defraud the Plaintiff.

> 88. Specifically, the Defendants, at the outset as well as throughout the Plaintiff's three years of law school, had made misrepresentations to the Plaintiff in order to obtain money for tuition and services from the Plaintiff under false pretenses.

> 89. The Plaintiff reasonably relied to her detriment upon the representations of the Defendants when she paid the tuition and other school-related fees for every semester and continued to incur costs and expenses in connection with her legal education and in preparation for graduation from a law school.

> 90. Upon information and belief, the Defendants knew that their misrepresentations to the Plaintiff were false, were relied upon by the Plaintiff, and were made with the intent to defraud the Plaintiff. (Emphasis added).

As pointed out by defendants in their memorandum in support of the motion to

---

[26]    Significantly, if not understandably for the reasons set forth in the text, plaintiff, in her Memorandum in Opposition, says nothing with respect to Counts III and IV brought against the individual defendants, even though the individual defendants have moved to dismiss all claims against them.

dismiss, in order to fairly state a claim for relief based on fraud, a plaintiff must allege (1) that the defendants made knowingly false statements; (2) that those statements were made with the intent to deceive; (3) that those statements were material to a plaintiff's decision to act or not to act; (4) that the plaintiff reasonably relied on those statements; and (5) that the was injured as a result of her reliance. *Zyla v. Wadsworth, A Division of The Thomson Corp.*, 360 F.3d 243, 254 (1st Cir. 2004) (citing *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 225 (1st Cir. 2003) (applying Massachusetts law).    Moreover, and more importantly in terms of the complaint in this case, Rule 9(b) the Federal Rules of Civil Procedure[27] require that the elements of

---

[27]    As a general principal, the particularity <u>pleading</u> requirements of Rule 9(b) of the Federal Rules of Civil Procedure apply even as to state law claims.  As stated in *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985):

> Although state law governs the burden of proving fraud at trial, the procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b). *Simcox v. San Juan Shipyard, Inc.*, 754 F.2d 430, 439 n. 9 (1st Cir.1985); 5 C. Wright and A. Miller, Federal Practice and Procedure, §§ 1204, 1296 (1969). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Thus, while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule. One of the main purposes of the rule is to apprise the defendant of fraudulent claims and of the acts that form the basis for the claim. *Simcox*, 754 F.2d at 439; *McGinty v. Beranger Volkswagon, Inc.*, 633 F.2d 226, 228-29 (1st Cir.1980); *Felton v. Walston and Co.*, 508 F.2d 577, 582 (2d Cir.1974).

Whether the *Hayduk* rule applies strictly to actions - as here - initially filed in the state court and then removed to a federal court is one that need not be decided.  And that is precisely because Rule 9(b) of the Massachusetts Rules of Civil Procedures is identical to Rule 9(b) of the Federal Rules of Civil Procedure, and the Massachusetts courts have consistently interpreted that rule as being coextensive with the requirements of the federal rule. *E.g.*, *Equipment & Systems For Industry, Inc. v. Northmeadows Const. Co., Inc.*, 59 Mass.App.Ct. 931, 932, 798 N.E.2d 571, 574 (Mass. App.Ct. 2003), to wit (*Id.*):

We think that when a judge considers a Mass.R.Civ.P. 12(b)(6) motion to dismiss a complaint alleging fraud and deceit, the requirement that there be an "exceedingly liberal reading" of a complaint, *Brum v. Dartmouth*, 44 Mass.App.Ct. 318, 321, 690 N.E.2d 844 (1998), rev'd on other grounds, 428 Mass. 684, 704 N.E.2d 1147 (1999), must include consideration of the requirements of Mass.R.Civ.P. 9(b). We recognize that "[t]he plaintiffs need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." *Orion Ins. Co. PLC v. Shenker*, 23 Mass.App.Ct. 754, 758, 505 N.E.2d 561 (1987), quoting from *Bell v. Mazza*, 394 Mass. 176, 184, 474 N.E.2d 1111 (1985). We think, however, that rule 9(b) heightens the pleading requirements placed on plaintiffs who allege fraud and deceit. <u>In this, we agree with the Federal courts in their consideration of the cognate Federal Rules 12(b)(6) and 9(b)</u>. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1

(continued...)

fraud "shall be stated with particularity[,]", and not in a conclusory fashion. *E.g.*, *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004).[28]

In this case, plaintiff fails every test - *i.e.*, in terms of time, place, and content of the alleged false representations. That is to say, plaintiff fails to state which of the defendants, if any, made what representations, and, if so, when and where those representations were made.[29] Count V must be dismissed for failure to comply with Rule 9(b).

VII.    Civil Conspiracy to Commit Fraud (Count VI) - All Defendants

In Count VI, plaintiff attempts a twist on Count V, that is, she attempts to plead a claim of common law civil conspiracy to commit fraud against all of the defendants. That claim, like the substantive fraud claim, is again laid in the broadest, yet the most nonspecific terms, to wit:

---

[27]    (...continued)
(2002); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-1128 (2d Cir.1994); *Lucia v. Prospect St. High Income Portfolio, Inc.*, 36 F.3d 170, 174 (1st Cir.1994). *See also Schwartz v. Travelers Indem. Co.*, 50 Mass.App.Ct. 672, 677, 740 N.E.2d 1039 (2001) ( "reasonable approach, one consistent with long-standing practice ... as well as generally accepted canons of construction, is to view [an issue], governed by the specific provisions of [a rule], as constituting an exception to the general practice set forth [in another rule]"). (Emphasis added).

[28]    There our Court of Appeals recently reaffirmed the principle, referring to its earlier holding in *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18-19 (1st Cir. 2002), stating (*Id.* at 226):

> We have said that Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations.

[29]    Plaintiff says (Memorandum in Opposition , p. 9) that, in certain circumstances, the particularity requirement of Rule 9(b) can be relaxed, to wit:

> However, Rule 9(b) can be "relaxed" in certain instances. For example, the Rule may be relaxed "when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion."

That is pure and simple poppycock in the circumstances of this case. If representations were made by any of the defendants to the plaintiff, then the plaintiff is the only practical source for the "what"of those representations, when they were made, where they were made, and by whom they were made. This is simply not a case where one must discover facts from the opposing party first before pleading as one is supposed to plead under Rule 9(b).

92. The Plaintiff reavers, realleges and incorporates by reference the allegations contained in the above paragraphs as if each had been separately set forth herein.

93. Upon information and belief, the Defendants engaged in conduct amounting to a Civil Conspiracy to commit fraud. *See Commonwealth. Kyte v. Philip Morris, Inc.*, 408 Mass. 162 (1990).

94. The Defendants' conduct has consistently illustrated a common design by the Defendants to engage in fraud.

95. More specifically, the Defendants had over the period of the three years, which the Plaintiff spent in law school, had made comments that they were not content with the presence of the Plaintiff.

96. Nonetheless, the Defendants collectively continued to mislead the Plaintiff and they never informed her that they planned to eject her from the School after she had fully paid her tuition for three years and after she had incurred a substantial amount of her family's and borrowed funds.

Count VI must be dismissed for the same reasons Count V must be dismissed - *i.e.*, for want of pleading with particularity as required by F.R. Civ. P. 9(b). That rule applies to "conspiracies" to commit fraud - precisely that which is alleged here - as it does to substantive fraud counts. *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985).[30] Here, as was and is the case with Count V, Count VI must be dismissed for

---

[30]    There the Court observed (*Id.*):

Moreover, in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met. *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972); *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir.1966); *Klein v. Council of Chemical Associations*, 587 F.Supp. 213, 227 (E.D.Pa.1984); *Greater Valley Terminal Corp. v. Peltz St. Terminals*, 21 F.R.D. 167, 168 n. 2 (E.D.Pa.1957). (Emphasis added).

Even if the pleading requirement was governed by state law, the result would be the same. As indicated in *Kurker v. Hill*, 44 Mass.App.Ct. 184, 188, 689 N.E.2d 833, 836 n. 5. The defendants argue that a claim for civil conspiracy must be pleaded with particularity. This may be true where the complaint charges conspiracy to defraud, see Hayduk v. Lanna, 775 F.2d 441, 443-444 (1st Cir.1985), but the defendants cite no authority applying the pleading standard of Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), to civil conspiracy claims generally. (Mass.App.Ct. 1998):

The defendants argue that a claim for civil conspiracy must be pleaded with particularity. This may be true where the complaint charges conspiracy to defraud, see *Hayduk v. Lanna*, 775

(continued...)

failure to comply with Rule 9(b).

VIII.    Unlawful Discrimination (Count VII) - All Defendants

In Count VIII, plaintiff contends that all defendants discriminated against her in violation of the provisions of G.L. c. 151B.  That Massachusetts statute, however, by its clear and unequivocal terms, relates only to discrimination in employment and other matters, none of which relate to students at universities, public or private.  Plaintiff was not, and does not pretend to have been, an employee of the School of Law.  No claim is properly asserted under the provisions of G.L. c. 151B.[31]  Count VII must be dismissed for failure to state a claim upon which relief may be granted.

IX.    Unjust Enrichment (Count VIII) - All Defendants

In Count VIII, plaintiff alleges that the defendants were unjustly enriched at her expense.  Count VIII fails to state a claim upon which relief may be granted.  The elements of unjust enrichment were recently stated by Judge Stearns of this court in *Micromuse, Inc. v. Micromuse, PLC*, 304 F.Supp.2d 202, 209 n. 8 (D.Mass. 2004), to wit:

> Unjust enrichment is an equitable claim. In this context, the court is being asked to imply a contract in the event that it finds no enforceable

---

[30]        (...continued)
F.2d 441, 443-444 (1st Cir.1985), but the defendants cite no authority applying the pleading standard of Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974), to civil conspiracy claims generally. (Emphasis added).

[31]        In her Memorandum in Opposition, pp. 20-21, plaintiff does not even pretend to make any argument, much less a developed argument, for a position that G.L. c. 151B applies to discrimination against students.  Although G.L. c. 151C refers to students, it applies only to the admission or non-admission of students, and plaintiff specifically eschews any reliance on G.L. c. 151C.

In response, however, plaintiff says that she should be permitted to amend her complaint to lay the cause under G.L. c. 214, § 1C.  That amendment would be futile, since G.L. c. 214, § 1C, on its face, applies to sexual harassment, a claim not made here, and, more importantly, that is a penal statute which does not even purport to provide a private right of action.

agreement [between the parties] and to order restitution. . . . To satisfy the five elements of unjust enrichment, a plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a relationship between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law. . . . Where a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies. . . . This principle is simply an extension of the fifth element of the doctrine, that is, where a plaintiff has an adequate remedy at law, a claim of unjust enrichment is unavailable.

Plaintiff fails to establish the fifth element above as to all defendants,[32] since, as specifically alleged by the plaintiff, there was a contract between the School of Law.[33] Thus, plaintiff has an adequate remedy at law in terms of the general contract between the School of Law and the plaintiff as a student. No claim for unjust enrichment lies.

X.    Conversion (Count IX) - All Defendants

Count IX consists of a common law conversion claim brought against all of the defendants, alleging that all of the defendants converted her tuition of some $71,862 paid over the course of three years.

Under Massachusetts law, conversion is the intentional or wrongful exercise of ownership, control or dominion over personal property to which a defendant had no right of possession at the time of the alleged conversion. *Abington Nat'l Bank v. Ashwood Homes, Inc.*, 19 Mass. App. Ct. 503, 507, 475 N.E.2d 1230 (1985); *Cadle Co. v. Schlichtmann*, 267 F.3d 14, 21 (1st Cir. 2001). There are no facts pleaded which

---

[32]    Plaintiff also fails the first element to the extent that claims for unjust enrichment are brought against the individual defendants, since plaintiff has not alleged, and, indeed, cannot allege, an "enrichment" by the individual defendants at the expense of the plaintiff.

[33]    A contractual relationship to the extent that plaintiff would be permitted to study and graduate from the School of Law if she complied with all conditions of the School of Law in exchange for tuition.

suggest conversion. When plaintiff paid her tuitions to the School of Law[34] over the course of the years, the School of Law had rightful possession of those tuition monies, and its use of those monies for whatever purpose does not constitute common law conversion. Even more so for the individual defendants, since there is not a single, solitary, fact alleged which suggest that any of the individual defendants had, at any time, possession of plaintiff's tuition payments. Counts IX must be dismissed.

XI.    Intentional Infliction of Emotional Distress (Count X) - All Defendants

Finally, in Count X, plaintiff brings a common law intentional infliction of emotional distress claim against each of the defendants. Plaintiff, however, fails to state a claim for relief under Count X.

As substance for her claim, plaintiff alleges (¶ 113):

The actions of the Defendants in informing the Plaintiff Six (6) Days before her graduation, their maltreatment of her during her studies, their subsequent refusal to allow her to attend the graduation ceremony, and finally their action in dropping her under the guise of "academic deficiency" were extreme.

In order to make out a claim for intentional infliction of emotional distress, a party must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' . . . (3) that the actions of the defendant were the cause of the plaintiff's distress, . . . and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man

---

[34]        *I.e.*, the Trustees of Boston University.

could be expected to endure.' " *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976).  The fact that she was suspended some six days before her graduation would not provide any reasonable trier of fact a basis to find that that conduct was extreme and outrageous, and beyond all possible bounds of decency and was utterly intolerable in a civilized community.  After all, that initial suspension was issued as an interim sanction as authorized by the very disciplinary rules on which plaintiff relies, and was only done so when Professor Mariner reported the acts of plagiarism to the responsible Dean.  So, too, with the fact that she was not permitted to finish her schooling.  Once again, she was expelled from the School of Law because her grades fell below that which was expected of law students.  All universities and colleges worth their salt have rules and regulations concerning the maintaining of a minimum grade average, and no reasonable trier of fact could conclude that that conduct was extreme and outrageous, and beyond all possible bounds of decency and was utterly intolerable in a civilized community.  Finally, to the extent that plaintiff, by virtue of Paragraph 113, refers to "maltreatment of her during her studies", plaintiff has not alleged one specific fact showing that any one of the defendants participated in that maltreatment.  Once again, therefore, no reasonable trier of fact could conclude that that conduct was extreme and outrageous, and beyond all possible bounds of decency and was utterly intolerable in a civilized community.   Count X, accordingly, fails to state a claim upon which relief may be granted.

XII.   Conclusion

For the reasons set forth above, this court recommends[35] that the district judge to whom this case is assigned allow defendants' motion to dismiss (# 05) in all respects, leaving only Counts III and IV *vis a vis* the Trustees of Boston University pending.

_____
UNITED STATES MAGISTRATE JUDGE

---

[35]     The parties are hereby advised that under the provisions of Rule 72(b) of the Federal Rules of Civil Procedure and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file specific and  written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating* v. *Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States* v. *Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc.* v. *Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States* v. *Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott* v. *Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also, Thomas* v. *Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).