# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LAYLA KIANI, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 04-CV-11838-PBS |
| TRUSTEES OF BOSTON UNIVERSITY, | ) |
| Defendant. | ) |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant Trustees of Boston University submits this memorandum in support of its motion for summary judgment on Counts I, III, and IV of the complaint.

Plaintiff was a student at Boston University's School of Law. She committed plagiarism in violation of the Law School Disciplinary Regulations ("Regulations") and was sanctioned accordingly. She does not challenge the Law School Judicial Committee's finding of plagiarism. Rather, Plaintiff claims that the University failed to satisfy certain procedural requirements in the Disciplinary Regulations, and breached its contract as a result. Plaintiff also claims that the University violated the Americans with Disabilities Act, 42 U.S.C., §§ 12101, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794, because she did not receive all the accommodations she requested, and was the subject of critical remarks by the faculty of the Law School. However, the facts establish that the University neither denied Plaintiff any procedural

protections nor violated the federal statutes prohibiting discrimination on the basis of disability. Plaintiff's disability was irrelevant to the actions taken by the School of Law.

<u>PROCEDURAL HISTORY</u>

Plaintiff filed her complaint in Suffolk Superior Court on August 9, 2004.  On August 24, 2004, the University removed the case to the United States District Court pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1367(a).  Thereafter, the University filed a motion to dismiss Counts I, II, V-X, and all individual defendants (the former Dean of the Law School, two members of the faculty, and one of the Assistant Deans).

Pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 2(b) of the Rules for United States Magistrate Judges in this jurisdiction, the Court referred this case to Hon. Lawrence P. Cohen, Magistrate Judge.  On November 29, 2004, Magistrate Judge Cohen issued his Report and Recommendation pursuant to Fed. R. Civ. P. 72(b), and recommended that the Court "allow defendants' motion to dismiss (#05) in all respects, leaving only Counts III and IV *vis a vis* the Trustees of Boston University pending."  (The University did not move to dismiss Counts III and IV.)  Plaintiff filed a timely objection.

On December 16, 2004, this Court adopted the Magistrate Judge's Report and Recommendation in most respects, dismissing Counts II, V-X, and the individual defendants, but preserving the breach of contract claim.

Pursuant to this Court's October 18, 2004, Scheduling Order, the parties conducted discovery.  The Scheduling Order set the discovery deadline for April 29, 2005.  The University's motion for summary judgment and this memorandum comply with the Scheduling Order's requirement for filing on or before May 13, 2005.

<u>STATEMENT OF FACTS</u>

Plaintiff graduated from the University of Texas at Arlington in the spring of 2000.  She

applied to and was accepted by Boston University School of Law (the "Law School").  <u>Ex. 1</u>:

Kiani dep. 10-11.  In the summer of 2000, prior to matriculation, Plaintiff submitted a request for

accommodations to Allan Macurdy, the University's Director of Disability Services.  <u>Ex. 2</u>.

Plaintiff's request was accompanied by a letter from her treating physician (Plaintiff suffers from

cerebral palsy and has severe physical disabilities).  <u>Ex. 3</u>.

On July 28, 2000, Mr. Macurdy recommended that the Law School grant Plaintiff the

accommodations she requested, all of which were supported by her treating physician:  extra

time on examinations and a tape recorder for classroom work.  In addition, Mr. Macurdy

recommended that Plaintiff be given a note-taker for the classroom and a scribe or tape recorder

for her examination answers.  <u>Ex. 4</u>.  The Law School endorsed Mr. Macurdy's recommendation.

<u>Ex. 5</u>; <u>Ex. 6</u>:  Macurdy aff., ¶ 7.

Plaintiff matriculated in the fall of 2000.  Early in the semester, she independently

concluded that she needed a stenographer to assist her in the classroom.  Her treating physician

had not recommended this accommodation.  Plaintiff and her mother met with Mr. Macurdy to

discuss her request.  <u>Ex. 1</u>:  Kiani dep. 18-22; <u>Ex. 6</u>, ¶¶ 8-11.

Mr. Macurdy denied Plaintiff's request that the University provide her with a

stenographer, because the opportunity to use a tape recorder and rely on a note-taker provided

comparable benefits.  In addition, she failed to support her request with documentation from a

physician or other professional in the field.  <u>Ex. 6</u>, ¶¶ 9-11.

On October 26, 2000, Plaintiff contacted Christine Marx, Assistant Dean of the Law

School, to discuss her request.  Dean Marx told Plaintiff that she could appeal Mr. Macurdy's

decision to the Provost and provide supporting documentation. <u>Ex. 7</u>.  Plaintiff never pursued

this route, and she dropped any further effort to secure a stenographer. <u>Ex. 1</u>:  Kiani dep. 25-30.

     In January 2003, Professor Andrew Kull discovered that Plaintiff had plagiarized a paper

she submitted in a Restitution course he had taught in the preceding fall semester.  Professor

Kull discussed the matter with Dean Ronald A. Cass and Associate Dean Stephen Marks.  Dean

Cass ultimately decided not to prosecute the case, but advised Professor Kull that he was

required to grade the paper, and Ms. Kiani's performance in the course, according to his own

standards.  Professor Kull gave Plaintiff a grade of F for the course. <u>Ex. 8</u>:  Kull Dep. 27-30, 45-

46, 56-57; <u>Ex. 9</u>:  Marks aff. ¶¶ 4, 6.

     The Law School Disciplinary Regulations define plagiarism and describe the procedures

for addressing allegations of academic misconduct. <u>Ex. 10</u>:  School of Law Disciplinary

Regulations.  In May 2003, Professor Wendy Mariner determined that Plaintiff had plagiarized a

paper she had written to satisfy the requirements of Professor Mariner's course, Managed Care

and the Law.  Professor Mariner concluded that Plaintiff had plagiarized from multiple authors,

including Professor Mariner's own published work. <u>Ex. 11</u>:  Mariner dep. 39-43.  She reported

her conclusions to Dean Cass, who suspended Plaintiff pending an investigation, as authorized

by the Disciplinary Regulations. <u>Ex. 12</u>; <u>Ex. 13</u>.

     Also in accordance with the Disciplinary Regulations, Dean Cass referred the matter to

his delegate, Professor William Ryckman, who reviewed the work Ms. Kiani had submitted to

Professor Mariner.  He, too, concluded that Plaintiff had plagiarized.  Professor Ryckman then

collected every available paper Plaintiff had written during the course of her Law School career,

and found that she had plagiarized papers she submitted to Professors Andrew Kull, Kate

Silbaugh,[1] Mark Pettit, and Frederick Bendremer.  Ex. 14:  Ryckman aff. ¶¶ 2-6; Ex. 15:

Silbaugh aff. ¶¶ 5-7; Ex. 16:  Pettit aff. ¶ 5.

On July 17, 2003, Dean Cass sent Plaintiff a copy of the charges.  Ex. 17.  In mid-to-late

July, 2003, Professor Ryckman sent Plaintiff's attorney a copy of the charges, all supporting

documentation, and the Disciplinary Regulations, which included in them a notice that Plaintiff

had the right to remain silent during the course of the investigation of student misconduct.[2]  Ex.

14, ¶ 10.

In the ordinary course, the Dean's designee (here, Professor Ryckman), who is

responsible for assessing the evidence and presenting charges, meets with the student accused of

misconduct in advance of the hearing and, among other things, advises the student of her right to

remain silent, and that anything she says may be used against her.  The student is also asked to

sign a statement in writing to the effect that she has received these warnings.  Ex. 10, Art. IV(1).

Plaintiff, who was represented by Arnold Rosenfeld, Esq., a well-regarded Boston attorney and

visiting professor at the Law School, declined to meet with Professor Ryckman in advance of the

hearing.  Ex. 14, ¶¶ 7-10; Ex. 1:  Kiani dep. 65-68.

Pursuant to the Disciplinary Regulations, the Dean convened a Judicial Committee.  On

September 12, 2003, Plaintiff, accompanied by counsel, appeared before the Judicial Committee.

When the hearing began, Professor Ryckman stated that Plaintiff had declined to meet with him,

and advised her of her right to remain silent.  Ex. 18:  Judicial Committee hearing transcript.

---

[1]     Because of a clerical error, Plaintiff and her counsel did not receive all the materials relating to the paper she
submitted to Professor Silbaugh. Therefore, that paper was not presented to the Judicial Committee.  Ex. 15,
¶¶ 6, 7.  Earlier, Dean Cass had elected not to pursue academic misconduct charges against Plaintiff for
plagiarizing in the paper she submitted to Professor Kull.  Ex. 9, ¶¶ 4, 6.

[2]     Plaintiff testified that she had "skimmed over [the Disciplinary Regulations] the first year" and read them in
the spring of 2003.  Ex. 1:  Kiani dep. 64-65.

Nonetheless, with counsel present, Plaintiff spoke with members of the Committee.  Ex. 1: Kiani dep. 80-81.

On November 7, 2003, the Judicial Committee rendered its decision, concluding that Plaintiff had plagiarized extensively on papers she had submitted to Professor Mariner, Professor Pettit, and Professor Bendremer.  Ex. 19.

The Disciplinary Regulations give faculty the right to adjust grades in accordance with the findings of the Judicial Committee.  Ex. 10, Article VII(9).  Professor Mariner, who had initially given Plaintiff a D, resubmitted her grade, this time giving Plaintiff a grade of F for the course on Managed Care and the Law.  Ex. 20.  As a result, Plaintiff's cumulative GPA fell below 2.0, the minimum GPA required to remain as a student in the Law School.  On December 18, 2003, Plaintiff was advised that she was being terminated as a student because of "academic deficiency."  Ex. 21.

Plaintiff petitioned the Academic Standards Committee in January 2004.  The Committee decided to recommend to the faculty that Plaintiff's petition for reinstatement be denied.  Ex. 22. She was thereafter given the opportunity to appear before the Committee and argue her case (which she did), but on February 4, 2004, the Committee again declined to recommend reinstatement.  Ex. 23.  On February 23, 2004, the faculty of the Law School met and voted not to reinstate Plaintiff.  Ex. 24.

Plaintiff did not graduate from Boston University School of Law.

## STANDARD OF REVIEW

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50, 106 S. Ct. 2505 (1986).

Once the moving party has demonstrated the absence of genuine issues of material fact, the opposing party must identify disputed facts that compel a trial. But the mere existence of a dispute is not enough to bar summary judgment. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 448 (1st Cir. 1997) (citation omitted); National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

The nonmovant "may not rest upon the mere allegations or denials of the [moving] party's pleading," and instead "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Bryant v. Caritas Norwood Hosp., 345 F. Supp. 2d 155, 162 (D. Mass. 2004). The nonmovant's failure to make "a showing sufficient to establish the existence of an element essential to [its] case and on which [it] will bear the burden of proof at trial" compels summary judgment against it. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The evidence compels the conclusion that there are no material facts in issue, and the law requires the entry of judgment in favor of the University.

ARGUMENT

The remaining issues in this case revolve around Plaintiff's claim that the University breached its contract (Count I), discriminated against her by virtue of several disconnected stray remarks (Count III), and denied her request for accommodations as a student with a disability (Count IV). In particular, Plaintiff alleges that the University failed to provide her notice of her right to remain silent, as set forth in Article IV(1) of the Law School Disciplinary Regulations. She also claims that various Law School employees spoke unkindly of her, and of her intellectual abilities, reflecting discriminatory intent. Finally, Plaintiff alleges that the University discriminated against her when it denied her request for a stenographer to assist her in the classroom.

The complaint attempts to weave these allegations together by somehow linking them to difficulties Plaintiff experienced as a result of an adverse reaction to what she describes as an improperly prescribed medication. But there is no evidence to support this notion, and, even if it were true, it has no bearing on this case. The evidence shows that the Law School complied with its own procedures. Its conduct falls well within established protocols governing the relationship between academic institutions and students. Plaintiff has also failed to state when the various members of the Law School faculty allegedly spoke ill of her, but, regardless, the stray remarks do not amount to discrimination. Further, the evidence does not provide <u>any</u> support for Plaintiff's claim that the University's denial of her request for a stenographer constitutes discrimination. In any event, that claim is barred by virtue of the relevant statue of limitations because it ripened more than three and one-half years prior to the filing of this complaint.

COUNT I:     The University Did Not Breach Any Contractual Relationship with
             Plaintiff.

"The student-law school relationship is essentially a contractual one."  Kiani v. Trustees
of Boston Univ., et al. (Order, December 16, 2004) (citing cases).  See, e.g., Cloud v. Trustees of
Boston University, 720 F.2d 721, 724 (1st Cir. 1983); Pacella v. Tufts Univ. Sch. of Dental
Med., 66 F. Supp. 2d 234, 240-41 (D. Mass. 1999); Guckenberger v. Trustees of Boston Univ.,
957 F. Supp. 306, 317 (D. Mass. 1997); Schaer v. Brandeis Univ., 432 Mass. 474, 478, 735
N.E.2d 373 (2000); Morris v. Brandeis Univ., 60 Mass. App. Ct. 1119, 804 N.E.2d 961, 2004
WL 369106 at *1 (2004) (unpublished); Berkowitz v. President and Fellows of Harvard Coll., 58
Mass. App. Ct. 262, 269-70, 789 N.E.2d 575 (2003); Sullivan v. Boston Architectural Ctr., Inc.,
57 Mass. App. Ct. 771, 773, 786 N.E.2d 419 (2003).

There are two fundamental guideposts:  First, courts apply "the standard of 'reasonable
expectation—what meaning the party making the manifestation, the university, should
reasonably expect the other party to give it.' "  Schaer, 432 Mass. at 478 (quoting from Cloud,
720 F.2d at 724).  Second, courts "adhere to the principle that '[c]ourts are chary about
interfering with academic and disciplinary decisions made by private colleges and
universities.' "  Schaer, 432 Mass. at 482 (citing Schaer, 48 Mass. App. Ct. 23, 26, 716 N.E.2d
1055 (1999)).  Applying these principles illuminates fatal defects in this case.

Plaintiff is not challenging the University's right to govern academic discipline, or the
content of the Law School's Disciplinary Regulations.  Nor does she challenge the Judicial
Committee's finding of plagiarism.  Rather, Plaintiff's narrow breach of contract claim revolves
around the assertion that she was not afforded notice of her right to remain silent as set forth in
Article IV(1) of the Law School Disciplinary Regulations.  Ex. 10.  That claim is categorically
false.

Plaintiff was already aware of her rights.  Under oath, she testified that she had read the Disciplinary Regulations in the spring of 2003, after she received Dean Cass's May 12, 2003, letter informing her that she had been suspended.  Ex. 1:  Kiani dep. 65.  Professor Ryckman sent her attorney a copy of the Disciplinary Regulations during the summer, more than a month before the hearing.  And Plaintiff acknowledged that at the September 12, 2003, Judicial Hearing she heard Professor Ryckman specifically state that she had the right to remain silent.  Ex. 14, ¶¶ 8, 10; Ex. 1: Kiani Dep. 79.  She was thus aware of the contents of the Regulations when, with her attorney present, she elected to speak at her Judicial Committee hearing.  Ex. 1:  Kiani dep. 80-81.

Plaintiff did not read the Regulations before she applied to Law School.  Ex. 1:  Kiani dep. 71.  Thus she cannot claim reliance on the Regulations as a condition for entering into the contractual relationship with the University.[3]

Plaintiff advised her attorney that she did not want to meet with Professor Ryckman, the Dean's delegate pursuant to Article IV(1) of the Disciplinary Regulations, because "he is legendary. . . .  I have heard that he makes students emotionally uncomfortable."  Ex. 1:  Kiani dep. 66-68.  Had she met with Professor Ryckman before the hearing, he would have advised her of the procedures governing academic discipline hearings.  Ex. 14, ¶ 7.  Plaintiff's emphatic refusal to meet with Professor Ryckman meant that he could not personally advise her of her

---

[3]     Magistrate Judge Cohen noted that "[w]e have found no case under Massachusetts law which discusses the import of written disciplinary rules of a private school or university in terms of an implied contractual theory."  Report and Recommendation at 5.

right to remain silent until the date of the hearing.  However, this is a "no injury—no foul" situation, for many reasons.[4]

First, Plaintiff was well represented by a capable and respected member of the Massachusetts Bar.  Plaintiff's participation in the hearing was guided by counsel.  Second, Plaintiff admitted that she had read the Disciplinary Regulations.  She knew her rights.  And, third, Plaintiff has neither asserted nor offered evidence to suggest that her failure to exercise her right to remain silent had any outcome on the proceedings.  As Magistrate Cohen noted, "plaintiff has alleged nothing to suggest that the failure [to receive notice of her rights prior to the hearing] constituted a material breach."  Report and Recommendation at 9.

Plaintiff may claim that she had a "reasonable expectation" (Schaer, supra, at 478) that the University would adhere to the Disciplinary Regulations.  In fact, the University did adhere to those regulations.  Plaintiff was never "requested to sign a statement to the effect that he or she has been informed of the above rights" (Disciplinary Regulations, Article IV(1)) because she refused to meet with Professor Ryckman.  But Professor Ryckman had sent her attorney the Disciplinary Regulations, and Plaintiff had read them.  Thus the University—"the party making the manifestation" (Schaer/Cloud)— reasonably expected that Plaintiff understood her right to remain silent.

Plaintiff cannot read one section of one article of the Disciplinary Regulations in isolation.  Magistrate Judge Cohen aptly noted that Article VI(12) "makes clear that any procedural error—and, in this case, that is all the plaintiff alleges—will not result in the invalidation of '. . . the proceeding or disposition of the case.'  Thus, while Sections IV.1 and

---

[4]     Plaintiff did not claim that she did not understand the meaning of Article IV(1).  Therefore she cannot claim that, had she signed a statement that she had been informed of her right to silence, she would have been better protected.

VI.6 may giveth, so, too, does Section VI.12 taketh away." Report and Recommendation at 9 n.10.

A transcript of the opening remarks at Plaintiff's September 12, 2003, hearing before the School of Law Judicial Committee establishes that Plaintiff was informed of her right to remain silent:

> Obviously the student has the right to remain silent and on advice of counsel I was informed that Ms. Kiani did not wish to be interviewed by me. That is why these materials don't contain a transcript of that interview. . . .

Ex. 18, p. 7; Ex. 25: Maclin aff. Thus the allegation that Plaintiff was not informed of her right to remain silent (Complaint, ¶¶ 45, 58) is false.

Consistent with the First Circuit's guidance in Cloud, the University reasonably expected that Plaintiff, a law student, would be familiar with the protocols set forth in the Disciplinary Regulations. Further, the University reasonably expected that Plaintiff heard and understood Professor Ryckman's statement that she had the right to remain silent, thus satisfying its obligation to provide her with notice of her rights. The Disciplinary Regulations do not specify that a student must be given notice at any particular point in the process: she knew her rights and heard them repeated in time for her to decide whether or not to exercise that right.

The Supreme Court, and courts in this Circuit, have honored the traditional deference granted educational institutions to make academic judgments. Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 225 (1985); Sweezy v. State of New Hampshire, 354 U.S. 234, 262-64 (1957) (Frankfurter, J., concurring); Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 23-26 (1st Cir. 1991), after remand, 976 F.2d 791 (1st Cir. 1992); Vargas-Figueroa v. Saldana, 826 F.2d 160, 162-63 (1st Cir. 1987). As the First Circuit has observed, "[t]here can be no doubt that

courts should be slow to intrude into the sensitive area of the student-college relationship especially in matters of curriculum and discipline." Russell v. Salve Regina Coll., 890 F.2d 484, 489 (1st Cir. 1989), rev'd on other grounds, 499 U.S. 225 (1991), and reinstated on remand, 938 F.2d 315 (1st Cir. 1991).

In Schaer, the Supreme Judicial Court noted that courts are reluctant to interfere with academic and disciplinary decisions made by private universities. 432 Mass. at 482. Colleges and universities, "in order properly to carry out their functions, must be given more contractual leeway than commercial parties." Russell, 890 F.2d at 489. Federal and state courts in this jurisdiction consistently honor these admonitions.

In disciplinary proceedings, the courts apply both a "reasonable expectations" test and a "basic fairness" test to determine good faith. Courts look to see if a school followed its own procedures. Cloud, 720 F. 2d at 725; Schaer, 432 Mass. at 481. Magistrate Judge Cohen noted that Plaintiff, who did not rely on the Disciplinary Regulations when she considered enrolling in the Law School, "could reasonably expect that the School of Law . . . would be fair in its procedures used in reaching judgment. And that expectation—fairness—is precisely what she received—nothing more, and nothing less." Report and Recommendation, p. 9, n.10.

Plaintiff cannot establish that the University violated either a procedural or substantive contractual right. The Law School followed its own internal rules. The evidence shows that Plaintiff has failed to establish a claim for breach of contract. Count I must be dismissed.

<u>COUNTS III and IV</u>:     <u>Plaintiff Cannot Prove that She Is the Victim of Discrimination</u>.

The ADA and the Rehabilitation Act prohibit discrimination against an otherwise qualified individual based on her disability.  The Rehabilitation Act applies to, among others, recipients of federal financial assistance.  (Boston University receives federal funds.)  The ADA applies to private employers and providers of public accommodations, including educational institutions.  In this Circuit, "the case law construing the ADA generally pertains equally to claims under the Rehabilitation Act."  <u>Calero-Cerezo v. U.S. Dep't. of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004).

Count III asserts a violation of the Americans with Disabilities Act, 42 U.S.C., § 121, <u>et seq</u>. ("ADA").  Plaintiff claims that her "disability was a motivating factor in her exclusion from the JD program" (Complaint, ¶ 75).  Count IV asserts that the University violated the Rehabilitation Act of 1973, 29 U.S.C., § 794, because it failed to provide Plaintiff with a stenographer (Complaint, ¶ 81).

To the extent these claims ripened more than three years prior to the filing of the complaint, they are barred by the applicable statute of limitations.  To the extent that the allegations supporting Counts III and IV are not barred, they are either untrue or fail to make out a <u>prima facie</u> case sufficient to survive a motion for summary judgment.

A.     <u>Stray Remarks Do Not Amount to Discrimination, and Count III Must Be Dismissed.</u>

Plaintiff complains that several members of the faculty made remarks that she construes as evidencing discriminatory intent.  Complaint, ¶¶ 73-75.  She has not stated when these remarks were made.  The law in this Circuit is well-founded.  Stray remarks are insufficient to establish either pretext or discriminatory animus.  <u>Swana v. Nu Visions Mfg., LLC</u>, 353 F. Supp. 2d 153, 159 (D. Mass. 2005); <u>Gonzalez v. El Dia, Inc.</u>, 304 F.3d 63, 69 (1st Cir. 2002).

Plaintiff has not shown that any of the individuals to whom she attributes what she considers to be derogatory remarks had any role in any of the decisions that led to her dismissal from the School of Law.  She claims that "Professor Rothman told her attorney that other members of the faculty wanted to dismiss her because she was 'bringing down the School's ranking.'"  Ex. 26:  Response No. 7 to Defendant's First Set of Interrogatories Directed to Plaintiff.  However, there is no one on the Law School faculty with the name of Rothman.  She claims that Professor Mark Pettit told her attorney that "someone at the school made the comment that 'there had been some regret in admitting me to the school.'"  Ex. 26, Response No. 8.  Professor Pettit's affidavit establishes the context in which such remarks may have been made.  Plaintiff claims that Professor Marks wanted to make "an example of Layla Kiani."  Ex. 26, Response No. 9.  But Professor Marks categorically denies this harsh assertion, and describes his own effort to help Plaintiff understand the concept of plagiarism.  Ex. 9, ¶¶ 2-3, 5.  Plaintiff claims that Professor Kull told her that he would not have given her a failing grade had he known that she was on medication.  Ex. 26, Response No. 12.  But Professor Kull testified that he could not imagine that he would have treated her any more leniently had he known that she was on medication.  Ex. 8:  Kull dep. 49-50.

Plaintiff was dismissed not because she plagiarized, but, rather, because her GPA fell below the minimum required to remain as a student.  The test is objective, and unrelated to her belief that she was not well-regarded by her faculty.  None of the faculty to whom stray remarks are attributed played any role in the decisions that led to Plaintiff's dismissal from the School of Law.

In Wallace v. O. C. Tanner Recognition Co., 299 F.3d 96 (1st Cir. 2002), the Court of Appeals, quoting previous decisions, set out the governing law:

> Typically, statements made by one who neither makes nor influences [a] challenged personnel decision are not probative in an employment discrimination case. . . . [S]tatements by non-decision makers, or statements by decisionmakers unrelated to the decisional process itself normally are insufficient to prove [an] employer's discriminatory animus.

299 F.3d at 101 (quotations and case citations omitted). "[M]ere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not probative of pretext absent some discernable evidentiary basis for assessing their temporal and contextual relevance." Anderson v. Home Depot USA, Inc., 2004 WL 42569, *5 (D. Mass. 2004) (quoting Straughn v. Delta Airlines, Inc., 250 F.3d 23, 36 (1st Cir. 2001).

    The remarks to which Plaintiff refers in her answers to interrogatories all have a context. If the faculty expressed concern about Plaintiff's intellectual ability, or, with hindsight, questioned the judgments exercised in admitting her to Law School, they were all based upon the fact that Plaintiff had struggled as a student and then engaged in massive plagiarism. The challenged remarks do not even hint at discrimination. Rather, and as the affidavit of Professor Pettit reflects, they express sadness and regret. That is insufficient grounds to find discrimination, and Plaintiff has failed to establish a prima facie case of discrimination under the ADA. Count III must be dismissed.

    B.    Count IV Is Barred by the Statute of Limitations because It Ripened More than Three Years Prior to the Date the Complaint Was Filed.

    Neither Title III of the ADA nor the Rehabilitation Act establishes a limitations period. In this jurisdiction, courts have adopted the limitation period of the most analogous state statute. Vargas Alicea v. Consortium of Mayaguez/Las Marias, 360 F. Supp. 2d 367, 370 (D. P.R. 2005) (citing Downs v. Mass. Bay. Transp. Auth., 13 F. Supp. 2d 130, 136 (D. Mass. 1998) and other cases). Discrimination claims are best characterized as claims for personal injury (see, e.g.,

Goodman v. Lukens Steel Co., 482 U.S. 656, 661, 107 S. Ct. 2617, 2621 (1987) (characterizing discrimination as "a fundamental injury to the individual rights of a person"); Hicky v. Irving Indep. Sch. Dist., 976 F.2d 980, 983 (5th Cir. 1992).  In Massachusetts, the pertinent statute of limitations in a personal injury action is three years.  G.L. c. 260, § 2A; Sigros v. Walt Disney World Co., 190 F. Supp. 2d 165, 168 (D. Mass. 2002); Downs, 13 F. Supp. 2d at 136.

Early in the fall of 2000, during her first semester as a student in the Law School, Plaintiff met with Allan Macurdy, Director of Disability Services, and requested a stenographer. Her request was denied.  Plaintiff never submitted documentation to support her request, and never appealed to the Provost or any other academic officer.  But she believed that that decision was incorrect.

An exchange of e-mails between Plaintiff and Christine Marx, Assistant Dean for Student Affairs at the Law School, is instructive.  On October 26, 2000, Plaintiff advised Dean Marx that she

> went to my appointment with Allan Macurty [sic] today and he
> informed me that providing a transcriber would not be possible
> because it would be going beyond the University's policies to
> provide this. . . .  What is the exact procedure of [sic] getting in
> touch with the Provost and is there any documentation that can be
> used to show how my request is supported by my disability??

Dean Marx replied by advising Plaintiff that "there is a grievance procedure for the University for those who believe they have been discriminated against on the basis of, e.g., disability." Dean Marx went on to describe the procedure.  Ex. 7.

Thus, by no later than October 26, 2000, Plaintiff believed she was entitled to an accommodation, and knew it had been denied.  She was also informed that the University

provided a mechanism for appealing a decision from the Office of Disability Services.[5]  But she

did nothing.  Ex. 1:  Kiani dep. 28-30.  Clearly, Plaintiff knew or should have known that she

had a claim of disability discrimination on or around October 26, 2000.  But the complaint in this

case was not filed for more than three years and nine months, until August 9, 2004.  The statute

of limitations expired in October of 2003.  Plaintiff's failure to file a timely complaint amounts

to a waiver of her claim that the denial of this accommodation constitutes discrimination.  She

cannot secure the jurisdiction of this Court to pursue Count IV, and it must be dismissed.

   C.   The University Did Not Discriminate When It Denied Plaintiff's Request for a
        Stenographer.

Even if the Court determines that Count IV complies with the statute of limitations, the

claim must be dismissed on the merits because Plaintiff cannot show that the denial of the

accommodation she requested amounts to discrimination.

Although Count IV is pleaded under the Rehabilitation Act, the ADA analysis applies

with equal force.  In this jurisdiction, most recently-reported cases alleging that an academic

institution denied accommodations have been brought under the ADA.[6]  Title III of the ADA

prohibits discrimination by privately-operated places of public accommodation, including

educational institutions.  The law's general prohibition states:

> No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,

---

[5]  Plaintiff claims that she does not recall seeing Assistant Dean Marx's reply, and the Dean's computer
program had, apparently, deleted the date of her e-mail.  However, Exhibit 7 is a business record.  It shows
that Dean Marx wrote to Plaintiff in good faith, as part of her responsibilities, in the regular course of
business, long before this litigation began.  Beal Bank, SSB v. Urich, 62 Mass. App. Ct. 1101, 2004 WL
2238519 (2004) (unpublished).  It has all the elements of trustworthiness.

Regardless, Plaintiff is under a duty to file a claim within three years of the date she knew or should have
known of an alleged act of discrimination—the denial of an accommodation.  Her claim that she had not seen
Dean Marx's reply to her October 26, 2000, e-mail does not alter that duty.

[6]  See Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 795-96 (1st Cir. 1992), and Wynne, 932 F.2d 19, 23
(1st Cir. 1991), for an earlier analysis of an accommodations issue under the Rehabilitation Act.

> facilities, privileges, advantages, or accommodations of any place
> of public accommodation by any person who owns, leases (or
> leases to), or operates a place of public accommodation.
> 42 U.S.C., § 12182(a).

"Under Title III of the ADA, courts typically have gauged the discriminatory effect of a policy or practice by the degree to which that policy or practice denies access to a disabled individual. . . ." Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003). Thus, at least part of the analysis involves reviewing the University's decision to deny Plaintiff's request for a stenographer in light of other accommodations that provide a comparable benefit.

To prevail in her discrimination claim, Plaintiff must show (1) that she is disabled; (2) that she was otherwise qualified to participate as a law student; (3) that she made a request for a reasonable accommodation; and (4) that the request was unreasonably denied. Bercovitch v. Baldwin Sch., 133 F.3d 141, 154 (1st Cir. 1998); Wynne, 976 F.2d at 795; Axelrod v. Phillips Acad., Andover, 46 F. Supp. 2d 72, 83 (D. Mass. 1999).

The University does not have a duty to provide an accommodation simply because it is requested. Rather, Plaintiff must show that the proposed accommodation would enable her to perform the essential functions of her mission—here, creating a record of discussions in the classroom—that would otherwise not be possible. She must further show that it would be feasible for the University to provide the requested accommodation. If Plaintiff succeeds in carrying that burden, the University then has the opportunity to show that the accommodation "is not as feasible as it appears but rather that there are further costs to be considered, certain devils in the details." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001).

But the University is not required to grant Plaintiff the accommodation of her choice, even if it is feasible. Title I of the ADA provides the employer with "the ultimate discretion to choose between effective accommodations." Bryant, 345 F. Supp. 2d at 170 (citing Quintiliani

v. Mass. Bay Transp. Auth., 2000 WL 1801841 at *6 (D. Mass. 2000), quoting 29 C.F.R. § 1630.9, App.)  Similarly, the regulations accompanying Title III of the ADA explicitly state that "Congress did not intend under title III to impose upon a public accommodation the requirement that it give primary consideration to the request [for a specific accommodation] of the individual with a disability." 28 C.F.R. 36 App. B, § 36-303.

In Wynne, a case brought under the Rehabilitation Act, the First Circuit cited Regents of the Univ. of Michigan v. Ewing, supra, 475 U.S. at 225, to support its conclusion that judicial deference to academic decisionmaking extends to its review of accommodations decisions. 932 F.2d at 25.  Here, Allan Macurdy, Director of Disability Services, made a reasoned, and reasonable, determination that the University was able to provide the resource Plaintiff needed (a record of communications in the classroom) by way of alternative, less expensive means.  Ex. 6, ¶¶ 6-10.  Plaintiff may argue that one of her classmates had a stenographer as an accommodation, but he was deaf, and his disability, and his needs, have no bearing on the reasonableness of accommodations any other student received.  Ex. 15, ¶ 3.  Particularly in light of Plaintiff's failure to provide documentary evidence supporting her "need" for a stenographer, the University's reasoned judgment does not constitute discrimination.[7]

---

[7]    Plaintiff claims that certain aspects of the Law School library were inaccessible, but she never complained while she was a student, or requested accommodations to assist her.  Ex. 1:  Kiani dep. 55-56.

Plaintiff has offered no evidence to support a conclusion that she would not have plagiarized, or that her grades would have improved, had she been provided with a stenographer. She has not, and cannot, meet her burden of proving that the University's decision to provide her with a note-taker and/or a tape recorder for classroom work was unreasonable.  She has not, and cannot, establish that the denial of her request for a stenographer constitutes discrimination. Count IV must be dismissed.

<u>CONCLUSION</u>

For the reasons set forth herein, Defendant Trustees of Boston University respectfully requests this Court to grant its motion for summary judgment and DISMISS Counts I, III, and IV of the Complaint.

Respectfully submitted,

TRUSTEES OF BOSTON UNIVERSITY,
By its attorney,


/s/Lawrence S. Elswit
Lawrence S. Elswit
(BBO #153900)
Boston University
Office of the General Counsel
125 Bay State Road
Boston, Massachusetts  02215
Date:  May 13, 2005          (617) 353-2326