UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAYLA KIANI, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TRUSTEES OF BOSTON UNIVERSITY, )<br>)<br>Defendant. )<br>) | **Exhibit 6**<br><br>CIVIL ACTION NO. 04-CV-11838-PBS |

<u>AFFIDAVIT OF ALLAN H. MACURDY</u>

The affiant, Allan H. Macurdy, being duly sworn, states:

1.  I am the Director of the Office of Disability Services at Boston University. I have held that position since the spring of 1996. As such, I supervise the provision of services to students with disabilities, and serve as the Section 504 compliance officer for Boston University. I am responsible for all aspects of disability accommodation involving students and employees of the University.

2.  I am also a Visiting Associate Professor at Boston University School of Law. Among other areas, I specialize in disability rights law, and have participated in appellate cases involving state and federal discrimination laws. I have advised and counseled numerous individuals with disabilities, their attorneys and advocates, as well as organizations involved in advocacy for, and services to, persons with disabilities.

3.  At some point in the summer of 2000, Ms. Kiani (who was then called Layla Jamshid) and her mother met with me to discuss the procedure for requesting accommodations that had been recommended by her physician. We discussed the accommodations she had been provided as an undergraduate. I told her that independent documentation would be required, and

that she might not receive every accommodation she had had at the undergraduate level. However, I also told her that new accommodations would be considered if she provided appropriate documentation.

4. At this meeting, we had an extended conversation about what law school was like and what she should expect.

5. My records indicate that on June 19, 2000, Ms. Kiani faxed to the Office of Disability Services a letter from Dr. John A. Herring, M.D., of the Texas Scottish Rite Hospital (Dr. Herring's letter is attached to the University's Memorandum in Support of its Motion for Summary Judgment.). Dr. Herring's letter stated that Ms. Kiani would need "extra time for exams and will need to be allowed to tape lectures." These recommendations were consistent with the accommodations Ms. Kiani and I discussed at our initial meeting.

6. On July 28, 2000, I wrote to Ronald Cass, then Dean of the School of Law, and to Stephen Marks, Associate Dean, recommending the accommodations that Dr. Herring had suggested. I also recommended additional accommodations: the use of a scribe for examinations, and a notetaker in class. In particular, my recommendations were as follows:

| | |
|---|---|
| For examinations: | Up to double time for in-class and eight-hour take-home examinations.<br>Use of a scribe or tape recording of examination answers |
| In Class: | Use of a notetaker or permission to tape record lectures |

7. These accommodations were provided to Ms. Kiani at the start of classes for the Fall 2000 semester, and continued thereafter. She was provided everything that her doctor had recommended, everything she herself requested at our initial meeting, and two additional accommodations (the scribe for examinations and a note-taker in the classroom).

8. In or about October, 2000, Ms. Kiani, accompanied by her mother, again met with me. At this meeting, Ms. Kiani requested the additional accommodation of a stenographer.

9. I informed Ms. Kiani that a stenographer in class was not required. Her limited ability to take her own notes in class was sufficiently accommodated by a notetaker or by tape-recording the class. I concluded that she was capable of drawing information from the classroom and did not need a word-for-word transcript. At Boston University, students who cannot take notes (but are not hearing-impaired) are provided with alternative notes but are not entitled to a word-for-word transcription of the class. Her disability did not require a stenographer as an accommodation. My refusal to recommend a stenographer had nothing to do with whether or not she had had one as an undergraduate, but rather, my decision was based on whether it was clinically and academically supportable.

10. In addition, Ms. Kiani did not support her request for a stenographer with a recommendation from her health care provider. The Office of Disability Services requires students with disabilities to support their requests for accommodations with a letter, report or evaluation indicating why particular accommodations are recommended.

11. During our meeting, I was concerned that Ms. Kiani interacted with, and through, her mother, who attended our meetings. Their interaction impeded the conversation between Ms. Kiani and me. Not only were the conversations three-way, but the conversation between Ms. Kiani and her mother was conducted in her mother's native language. As a person with a disability, a practicing lawyer, and a member of the faculty, I am sensitive to anything that undermines a disabled person's credibility or independence. I was concerned that Ms. Kiani take responsibility and limit the amount of interaction with her mother during meetings.

12. After our October 2000 meeting, Ms. Kiani did not subsequently contact me or the Office of Disability Services to pursue the issue of a stenographer. She sent no additional medical documentation to support her request for this accommodation.

Further affiant sayeth not.

Subscribed and sworn under the penalty of perjury.

_____
ALLAN H. MACURDY

Dated: May 11, 2005