UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**Exhibit 14**

| | |
|---|---|
| LAYLA KIANI, ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO. 04-CV-11838-PBS |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
| Defendant. ) | |

## AFFIDAVIT OF WILLIAM E. RYCKMAN

The affiant, William E. Ryckman, being duly sworn, states:

1. I am a member of the faculty of Boston University School of Law. I have taught at the Law School since 1962.

2. During academic year 2002-03, I was the Dean's designee in academic discipline cases. This meant that I was responsible for reviewing allegations of academic misconduct and determining the propriety of pursuing discipline in a particular case. Unfortunately, I have become very skilled at evaluating allegations of plagiarism.

3. Article II(2)(e) of the Law School's Disciplinary Regulations defines plagiarism as follows:

> Plagiarism is the knowing use, without adequate attribution, of the ideas, expressions, or work, of another, with intent to pass such materials off as one's own. All written work, whether in preliminary or final form, submitted by a student in the course of law study, in the course of employment, or in the course of other activities, whether or not related to the study or profession of law, is assumed to be the student's own work. Anything copied or

>paraphrased from another author or source must be appropriately identified, acknowledged, and attributed. <u>The use of the exact language of another without identification as a direct quotation by quotation marks or otherwise is plagiarism even though the source is cited in the student's work.</u> Violation of the rules stated in this paragraph may be subject to disciplinary action.

Emphasis added.

4. In late May of 2003, then-Dean Ronald A. Cass asked me to investigate Professor Wendy Mariner's assertion that Layla Kiani committed plagiarism when she submitted two papers in Professor Mariner's Managed Care and the Law course. Professor Mariner's concerns began when she discovered that Ms. Kiani had plagiarized her (Mariner's) own written work in a paper she submitted.

5. I reviewed the papers and the primary sources Professor Mariner identified. Online research makes the identification of plagiarism much simpler than it was twenty years ago. I was not surprised when I rapidly reached the conclusion that Professor Mariner's assertion was, sadly, correct.

6. When a student is charged with plagiarism, it is my practice to review every paper that student has submitted during the course of his or her Law School career. When I reviewed all of Ms. Kiani's papers, I discovered that she had also plagiarized papers she submitted in courses taught by Professors Mark Pettit, Andrew Kull, Frederick Bendremer, and Kate Silbaugh. For a variety of reasons, discussed in part in the affidavits of Professors Kull and Silbaugh, I ultimately recommended that the Law School pursue plagiarism charges against Ms. Kiani only with regard to papers she submitted in classes taught by Professors Mariner, Pettit, and Bendremer.

7. Article IV(1) of the Law School's Disciplinary Regulations [confirm name] states, in part:

> At the direction of the Dean, an Associate Dean or other delegate of the Dean shall discuss [reported student misconduct] with the student at the earliest opportunity. . . . All students are to be informed of the right to counsel and the right to remain silent, and shall be warned that anything the student may say may be used against the student. The student shall be requested to sign a statement to the effect that he or she has been informed of the above rights and has received the above warning.

Ordinarily, I advise a student of the rights set forth in the Disciplinary Regulations by meeting with the student in advance of the Judicial Discipline Committee hearing and discussing the allegations. However, when I extended an offer to sit down with Ms. Kiani, her attorney, Arnold Rosenfeld, advised me that she did not want to meet with me.

8. Therefore, "the earliest opportunity" (referring to Article IV(1)) that I had to <u>orally</u> advise Ms. Kiani of her right to remain silent occurred at the September 12, 2003, Discipline Committee hearing. A partial transcript of that hearing, showing that I gave Ms. Kiani notice of her right to remain silent at the outset of the hearing, is attached to Boston University's brief in support of its motion for summary judgment.

9. Ms. Kiani was represented at the Judicial hearing and, upon the advice of counsel, elected to participate and discuss the charges against her with members of the Judicial Discipline Committee.

10. However, Ms. Kiani was well aware of her rights. In mid-to-late July, 2003, I sent several binders to her attorney, Arnold Rosenfeld. Each binder contained the charges relating to a particular plagiarized paper, a copy of the paper, and original source materials from which Ms. Kiani had plagiarized. One of the binders also contained a copy of the Law School

- 4 -

Disciplinary Regulations, which describe, among other things, her right to remain silent. Thus, her claim in this lawsuit that she did not receive notice of her rights is completely specious.

11.     The fact that Ms. Kiani has alleged that she was not afforded the procedural protections provided by our Disciplinary Regulations is very disappointing to me as a long-time member of the faculty of Boston University Law School. We try to teach our students that the practice of law is a rigorous discipline that demands careful attention to facts, rules, codes of conduct, and the truth. It is clear that, in the case of Layla Kiani, either we as a faculty failed, or these lessons were simply ignored.

Further affiant sayeth not.

Signed under the pains and penalties of perjury.

_____
WILLIAM E. RYCKMAN

Date: May 11, 2005