BOSTON UNIVERSITY
SCHOOL OF LAW

MEMORANDUM                                   **Exhibit 19**

TO:        Dean Ronald Cass

FROM:      Professor Nancy Moore
           Member, Judicial Discipline Committee

DATE:      November 7, 2003

SUBJECT:   In the Matter of Layla Kiani

    The Judicial Discipline Committee met on September 12, 2003 at 1:30 p.m. for a hearing in the above-referenced matter. In attendance were Ms. Kiani, Arnold S. Rosenfeld, Esq. (serving as counsel to Ms. Kiani), Professor William Ryckman (the Dean's designate for presentation of the charges) and Professors Tracey Maclin (the Chair of the Judicial Discipline Committee), Michael Harper and Nancy Moore (the three faculty members of the Committee). Professor Ryckman presented the testimony of Professor Andrew Kull. In addition to her own testimony, Ms. Kiani presented the testimony of Professor Mark Pettit.

    At the close of the September 12 hearing, Mr. Rosenfeld requested permission to submit an affidavit from a physician scheduled to examine Ms. Kiani. The Committee conferred and on September 15, notified both Mr. Rosenfeld and Professor Ryckman that the Committee had agreed to permit Mr. Rosenfeld to submit an affidavit directed to the narrow issue of the student's "intent" to commit plagiarism as defined by the Law School's disciplinary regulations. This affidavit, along with two physician reports from Kirk R. Daffner, M.D., a neurologist, were received by the Committee on October 21, 2003 (with a copy to Professor Ryckman). Professor Ryckman's response to the affidavit was received on October 24, 2003.

    Subsequent to the September 12 hearing, the Committee also requested and received copies of Ms. Kiani's first year writing papers and the paper she submitted to Professor Kate Silbaugh in the second semester of the 2002-2003 academic year. Mr. Rosenfeld objected (both orally and in writing) to the Committee's consideration of these papers. He objected to the examination of Silbaugh paper because there were no charges against Ms. Kiani relating to the Silbaugh paper. Regarding the first-year writing paper, Mr. Rosenfeld contended that this paper was not relevant to the charges filed against Ms. Kiani, and thus, not germane to these proceedings. The Committee met again to continue its deliberations on October 29, 2003.

Ms. Kiani is charged with four counts of plagiarism, in violation of Article II, para. 2(e) of the Disciplinary Regulations of the School of Law, with respect to four papers she submitted in the 2001-2002 or 2002-2003 academic years. These papers consisted of: two papers submitted to Professor Wendy Mariner in the spring of 2003 (Counts I and II); drafts of a paper and the final paper submitted to Professor Mark Pettit in the spring of 2002 (Count III); and a paper submitted to Professor Frederic Bendremer in the spring of 2002 (Count IV).

Ms. Kiani concedes, with respect to all four counts, that she extensively used the expressions of another without adequate attribution, in that she used the exact language of others without either using quotation marks or block indents. However, she contests all four charges on the ground that she did not have the "intent" to pass the materials of others off as her own. Ms. Kiani testified that during her first year in law school she understood the need to use quotations marks or block indents. She further testified that she did not understand these rules in her upperclass years because she was under the influence of a powerful medication, Phenergan, that was inappropriately prescribed for her as a result of panic attacks she was having at that time. Ms. Kiani suffers from cerebral palsy and at the end of her first year she began taking a Phenergan, which she testified made her sleepy and inattentive, particularly during times of stress. According to Ms. Kiani, as she wrote papers in her upperclass years, she thought that when she cited to a case or article from which she was quoting, this was sufficient to indicate that she was quoting specific language, and not merely paraphrasing, even when the citation occurred only at the end of a long, fully quoted paragraph and even though she did not specifically cite to the particular page or pages from which the quotation was taken. In some, but not all instances, she prefaced the specific language used with the phrase "According to an article by [professor's name]." This usage occurred only in the spring of 2003. In addition, there were a few instances in which Ms. Kiani did not cite at all to the material from which she took the exact language, although this was the exception, rather than the rule. In one instance she used the exact language from an article by the professor to whom she was submitting the paper, and this led to the discovery of her similar conduct in the other papers.

The Committee read all of Ms. Kiani's papers that are the subject of the four counts of plagiarism and has compared them to the published articles and other sources cited in the charges. In addition, the Committee read a paper she submitted to Professor Andrew Kull in the fall of 2002, in which she received a failing grade because Professor Kull found that she had committed plagiarism in submitting the paper. (Ms. Kiani did not meet with Professor Kull to discuss the substance of his charge. No formal charges were brought against her.) We also read a paper she submitted to Professor Kate Silbaugh in the spring of 2002, which similarly contains extensive use of specific language of others without adequate attribution. We compared these papers with her first year writing papers, in one of which there was both extensive use of quotation marks and other evidence indicating that at that time Ms. Kiani was well aware of the requirements of adequate attribution. Finally, we heard testimony from Professor Andrew Kull and Professor Mark Pettit. Both professors saw Ms. Kiani on a regular basis during parts of her upperclass years. According to Professor Pettit, who employed Ms. Kiani as a research assistant as well as supervising her cert paper and serving as her informal advisor, he was unaware that she

was experiencing any difficulties as a result of her medication. Professor Kull testified that she regularly attended his seminar and that although there were times during the seminar in which she seemed to be either sleeping or "out of it," there were also times when she was alert and participating actively in the discussion.

A majority of the Commission finds that all four counts have been proved by clear and convincing evidence, in that in each of the four papers Ms. Kiani knowing used the works of others, without adequate attribution, with the intent to pass such materials off as her own. Specifically, the majority of the Committee reaches the following conclusions:

Ms. Kiani submitted a paper entitled "External Independent Review of Managed Care Organization Decisions: Better at State Level," for credit in Professor Wendy Mariner's seminar in Managed Healthcare which contained the exact language from certain cited sources (enumerated in the official charge) without indicating the same by the use of quotation marks or block indents.

Ms. Kiani submitted a paper entitled "Disclosure of Information to Patients: Better At the Federal Level," for credit in Professor Wendy Mariner's course in Managed Care which contained the exact language from certain sources (enumerated in the official charge) without indicating the same by the use of quotation marks or block indents.

Ms. Kiani submitted a paper and a final draft of a paper entitled "Daubert: Too Strict in the Context of Disabilities," to Professor Mark Pettit for 3 hours credit (supervised research and writing) and also in satisfaction of the upper class writing requirement which contained (1) unattributed passages from the student edition of Weinstein's <u>Evidence Manual</u> (5th edition) and (2) which contained exact language from certain cited sources (enumerated in the official charge) without indicating the same by the use of quotation marks or a block indent.

Ms. Kiani submitted a paper entitled "Nailques: Better Suited as an L.L.P. or a G.P.?" to Professor Frederic Bendremer for credit in his seminar on Unincorporated Business Entities which contained (1) unattributed passages from certain sources (enumerated in the official charge) and (2) used the exact language from certain cited sources without the use of quotation marks or a block indent.

Professor Ryckman made no recommendation on the question of which sanction to impose. Mr. Rosenfeld requested that the Commission accept his argument that the medical testimony is evidence of mitigating factors and decline to impose the presumptive sanction and impose a more moderate and appropriate solution, such as writing a supervised paper for submission to the faculty or to a specific professor. The Committee notes that under Article VII, para. 7, the presumptive sanction in plagiarism cases is expulsion or suspension. Normally, the penalty for such extensive and repeated instances of plagiarism would be expulsion. Despite the fact that Ms. Kiani committed plagiarism on four counts, a majority of the Committee is persuaded that she was taking an inappropriately prescribed medication, Phenergan, which

interfered to some extent with her cognitive functions and may have contributed to diminished judgment on her part. Taking these facts into consideration as mitigation, along with other evidence displayed at the September 12 hearing, a majority of the Committee concludes that expulsion or even a several-years suspension is inappropriate under the circumstances. Therefore, the majority of the Committee voted to suspend Ms. Kiani for a period of six months, beginning June 1, 2003 and ending November 30, 2003.

The Committee does not believe that it is appropriate to require Ms. Kiani to write an additional paper as a part of her sanction. The Committee notes, however, that each of the faculty members to whom she submitted the papers referenced in Counts 1 through IV will be given an opportunity to re-grade her work. If she receives a failing grade in any or all of those courses, or does not receive credit for her cert paper, she may be required to petition the Academic Standards Committee for readmission to the law school in order to complete the requirements for graduation. If she is readmitted, the majority of this Committee urges that Ms. Kiania be required to write one or more research papers, on a closely supervised basis, as a condition of her readmission.

Separate opinion by Professor Tracey Maclin,

I fully join the opinion authored by Professor Moore. For me, this is a very close case. The case is a close one not because there is any doubt that Ms. Kiani improperly used the work of others without proper attribution. She clearly did. As Professor Harper notes, Ms. Kiani "repeatedly and extensively used the works of others, without adequate attribution, in a way that must have misled the recipients of these papers." *See infra*. In my view, the case turns the proper interpretation of the phrase "with [the] *intent* to pass such materials off as one's own." DISCIPLINARY REGULATIONS FOR ALL BUSL STUDENTS, Art. II. (2)(e) (emphasis added).

Professor Harper states that the "standard for plagiarism in our regulations ... requires an intent to deceive; it is not satisfied by even reckless negligence or egregious incompetence." *See infra*. If Professor Harper's interpretation is correct, that means that before the Committee can find Ms. Kiani guilty of plagiarism, we have to conclude that she acted with the "purpose" or "knowledge" to mislead her professors. This is the point where I have concerns. To be sure, Ms. Kiani did, on several occasions, use the phrase "according to..." in her papers for Professor Mariner before she used sources without attribution. As Professor Harper comments, this is not the behavior of someone who has become "more covert and devious" when improperly using the work of another. *See infra*. This evidence can be viewed as support for Ms. Kiani's defense that, although she used sources without proper attribution, she did not display the requisite "intent" to deceive her professor that the paper she submitted was her own work.

Although Ms. Kiani's defense is plausible, I find that there is enough evidence in the record to support finding her liable for plagiarism. For example, as part of Count I, Ms. Kiani is charged with plagiarizing parts of Lisa Strauss, *Managed Healthcare Plans*, 16 Ga. St. U. L. Rev. 151 (1999). On page 6 of her paper, Ms. Kiani does cite and introduce the article with the phrase,

BU 0161

"[a]ccording to ..." In her next seven sentences, however, Ms. Kiani extensively quotes from the Strauss article without using quotation marks. At times, the quotes taken from the Strauss article are interwoven with Ms. Kiani's own language. Only at the end of her eighth sentence, which also extensively quotes from the Strauss article without attribution, does Ms. Kiani include footnote that contains an "Id" citation. In my view, this selection from Ms. Kiani's paper is sufficient evidence to show that she had the requisite "intent" to "pass [this] material[] off as [her] own" work, even if the word "intent" under our disciplinary regulations means to act "purposely" or "knowingly."

There is other evidence in the record to support a conclusion that Ms. Kiani acted with the requisite intent. In Count III, for example, Ms. Kiani is charged with plagiarizing a paper submitted to Professor Pettit. In that paper, Ms. Kiani extensively quotes from Weinstein's Evidence Manual Student Edition without attribution. *See* pages 3-4. In this paper, Ms. Kiani does not use the phrase, "according to...", although she does cite the specific case analyzed in the Weinstein book. (Ms. Kiani did the same thing in her paper submitted to Professor Bendremer, which forms part of the basis for Count IV.). This part of her paper, along with other passages, is sufficient to show that Ms. Kiani intended to deceive Professor Pettit that the paper she submitted was her own work. Indeed, Professor Pettit, who was called as a witness by counsel for Ms. Kiani, stated that he had no idea that Ms. Kiani had used sources without proper attribution in that paper.

There is no need to belabor the point. As I noted above, this is a close case only on the issue of Ms. Kiani's "intent." I agree with Professor Harper that Ms. Kiani's actions and "course of conduct... evinces a complete lack of cunning." *See infra.* Put another way, Ms. Kiani may not have had the "motive" to deceive her professors. But "motive" and "intent" are different legal concepts. In the criminal law, a person can be legally guilty of having the "intent" to commit a crime without necessarily having a "bad" motive. *See* Joshua Dressler, UNDERSTANDING CRIMINAL LAW 121 (3d. edition 2001) (explaining that "the 'intention' to cause social harm is no less 'intentional' simply because the actor's motive was not evil in character. For example, a doctor who kills his terminally ill patient to 'put him out of his misery' arguably has a good motive, but the killing is still 'intentional.'") (footnote omitted).

I do not know why Ms. Kiani repeatedly and blatantly used the work others without attribution. I suspect that Ms. Kiani was overwhelmed with the work-load required by law school. There is also evidence that the medication that Ms. Kiani was taking affected her ability to concentrate on her studies. One thing is clear from her testimony at the hearing. The last two years of law school became, as Professor Harper notes, a "daunting nightmare" for Ms. Kiani. At the same time, Ms. Kiani had already received a failing grade on a paper from Professor Andrew Kull because of her plagiarism. She had also been warned by Professor Silbaugh's assignment sheet that plagiarism was unacceptable. This history, in my view, is relevant to the question of Ms. Kiani's intent. After her experience with Professor Kull and reading Professor Silbaugh's warning, Ms. Kiani must have known that using the work of another without attribution was a violation of the Law School's disciplinary regulations. Apparently, the "nightmare" that law

BU 0162

school was for Ms. Kiani caused her to ignore those warnings. That the fact Ms. Kiani may have been overwhelmed is no excuse for actions. Her motives, however, are a relevant factor for sentencing, which is why I support the judgment Ms. Kiani should only be suspended for a period of six months starting June 1, 2003.

Dissenting opinion by Professor Harper,

Ms. Kiani, in the four papers covered by the charges in this case, as well as in the papers submitted to Professors Kull and Silbaugh noted in the majority opinion, repeatedly and extensively used the works of others, without adequate attribution, in a way that must have misled the recipients of these papers. The only issue in the case is whether Ms. Kiani did so with the "intent to pass" the "materials" of others "off as her own." Did Ms. Kiani, in other words, intend to mislead her professors?

I am not convinced that she had such intent. An individual with sufficient intelligence to obtain admission to this law school and to maintain even minimally satisfactory grades could be expected to show some modicum of guile when committing plagiarism. Ms. Kiani's course of conduct, by contrast, evinces a complete lack of cunning. As far as I could determine, in every instance in which she failed to provide adequate signals to her professor as to the source of her language, she either cited the source from which she took this language or, in some cases where the source of the language itself cited another primary source, the primary source itself. This practice, even in the absence of pinpoint or jump cites, of course made discovery and documentation of her inadequate attribution much easier than the plagiarism of the typical guileful student.

I understand that some plagiarists are sufficiently indolent and arrogant to cite all the sources from which they deceitfully draw. But I cannot understand Ms. Kiani's conduct as an example of such indolence and arrogance. I have particular difficulty understanding as intentionally deceitful her conduct after Professor Kull discovered her inadequate attribution on the paper she submitted at the end of the fall 2002 term. After being charged with plagiarism by one instructor, a student intending to deceive other instructors could be expected to become more covert and devious. Ms. Kiani did not. In papers written after learning of Professor Kull's reaction to her work for him, Ms. Kiani started introducing some of her 'unquoted and unindented' quotes with some general language meant to attribute, such as "according to", but she did nothing more devious. Indeed, in a paper for Professor Mariner Ms. Kiani, not just once, but multiple times, used language from Professor Mariner's own articles, flagging her use of this language with citations and "according to" introductions, but without quotations or block indentations. Furthermore, in Professor Silbaugh's course, after Professor Kull's charges against her, Ms. Kiani did not make her delinquent use of sources more covert in the face of a clear warning on Professor Silbaugh's assignment sheet stating that "every paper" will be checked "for plagiarism" and that "[y]ou may not copy any part of another text without quotation marks."

BU 0163

To be sure, it is also difficult to believe that any individual with sufficient intelligence to obtain admission to this law school and to maintain even minimally satisfactory grades could fail to understand that not using quotation marks or block indentations would mislead professors concerning the source of her language, or that professors when assessing the quality of her work would care only about the source of her ideas and not the source of her language. But ultimately I find Ms. Kiani's conduct to be more readily explicable as reckless negligence and incompetence, than as intentional deceit. Her use of quotations marks in the brief (though not the memorandum) that she wrote for her first year writing seminar suggest that she knew that such marks made legal writing more persuasive. She obviously could have and should have understood that such marks, or indentations, are needed to communicate the actual source of words. Her failure to so understand, and even more so her failure to exert the effort necessary to achieve such understanding after her experience with Professor Kull and the clear warning from Professor Silbaugh, might be explained by her apparent drug-induced enervation and the daunting nightmare that law school became for her.

I agree that explaining her behavior is not equivalent to excusing it. Ms. Kiani, like any other student, must be considered responsible for her behavior. The standard for plagiarism in our regulations, however, requires an intent to deceive; it is not satisfied by even reckless negligence or egregious incompetence. And I simply have not been convinced that Ms. Kiani's behavior, however reckless or egregious, was intended to deceive her professors.

BU 0164