that she might not receive every accommodation she had had at the undergraduate level. However, I also told her that new accommodations would be considered if she provided appropriate documentation.

4. At this meeting, we had an extended conversation about what law school was like and what she should expect.

5. My records indicate that on June 19, 2000, Ms. Kiani faxed to the Office of Disability Services a letter from Dr. John A. Herring, M.D., of the Texas Scottish Rite Hospital (Dr. Herring's letter is attached to the University's Memorandum in Support of its Motion for Summary Judgment.). Dr. Herring's letter stated that Ms. Kiani would need "extra time for exams and will need to be allowed to tape lectures." These recommendations were consistent with the accommodations Ms. Kiani and I discussed at our initial meeting.

6. On July 28, 2000, I wrote to Ronald Cass, then Dean of the School of Law, and to Stephen Marks, Associate Dean, recommending the accommodations that Dr. Herring had suggested. I also recommended additional accommodations: the use of a scribe for examinations, and a notetaker in class. In particular, my recommendations were as follows:

> For examinations: Up to double time for in-class and eight-hour take-home examinations.
> Use of a scribe or tape recording of examination answers
>
> In Class: Use of a notetaker or permission to tape record lectures

7. These accommodations were provided to Ms. Kiani at the start of classes for the Fall 2000 semester, and continued thereafter. She was provided everything that her doctor had recommended, everything she herself requested at our initial meeting, and two additional accommodations (the scribe for examinations and a note-taker in the classroom).

8. In or about October, 2000, Ms. Kiani, accompanied by her mother, again met with me. At this meeting, Ms. Kiani requested the additional accommodation of a stenographer.