# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**C. A. NO. 04-CV-11838-PBS**

| | |
|---|---|
| LAYLA KIANI ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | **PLAINTIFF'S MEMORANDUM** |
| ) | **IN SUPPORT OF HER** |
| ) | **OPPOSITION TO** |
| ) | **DEFENDANTS' MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| TRUSTEES OF BOSTON ) | |
| UNIVERSITY. ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(c), Plaintiff, Layla Kiani ("Ms. Kiani"),

respectfully submits the following Memorandum in support of her Opposition to

Defendants' Motion for Summary Judgment on Counts I, III, and IV of her complaint.

Ironically, both Defendants' and Ms. Kiani's Memoranda focus and differ on several, yet

the same key disputed facts, which form the basis of Defendants' argument. Therefore,

summary judgment would be an improper vehicle to address these issues.

In particular, Ms. Kiani points to four key factual issues, which can only be

determined by the trier of the fact:

1

(1)    Whether Defendants breached their contract with Ms. Kiani when they failed to follow their own procedure in informing her of her right to remain silent throughout the proceedings;

(2)    Whether, given Ms. Kiani's disabilities, a stenographer was a reasonable and feasible accommodation;

(3)    Whether Defendants' refusal to provide or allow Ms. Kiani, the services of a stenographer amounted to discrimination; and

(4)    Whether the collective actions of the Defendants' employees over the period of three years, which led to the filing of plagiarism charges against her, and her ejection from the School were discriminatory.

From the outset, Ms. Kiani disputes the Defendants' statement that she "committed plagiarism," or that "she does not challenge the Law School Judicial Committee's finding of plagiarism." See Def. Mem. at 1. To the contrary, in essence, the main premise of her complaint, and the core of her allegations against Defendants has always been that she did *not* commit plagiarism, and that the allegation was being used as a means to eject her from the School. See Complaint ¶ 41.

Indeed, she has consistently argued that had the School followed its own procedure, it would not have reasonably concluded that she plagiarized any of her term papers. This is especially so since according to the School's Rules, plagiarism required an "intent" to plagiarize. See Exhibit A: Disciplinary Regulations for All BUSL Students, Art. II (e). See also, Exhibit B: Dissenting Opinion by Professor Harper. Ms. Kiani never had such intent. By failing to remain silent, unbeknownst to her, over a five-hour grueling examination, apparently, she gave ample ammunition to support a charge of

plagiarism. Ms. Kiani is arguing that the three counts at issue are not simply about breach of contract, or discrimination against her. They represent the bigger picture that the Defendants' sole aim was, by disregarding their own rules and regulations, to eject Ms. Kiani from their school once and for all.

Lastly, as in the past, Defendants continue to wield the specter of the term "deference to academic decisionmaking", as if it constitutes a maxim of law. See Def. Mem. at 20. While the so-called "deference" is real and does and should be observed when appropriate, it is not an absolute concept. As the case-law illustrates, it should be used only when the court is considering decisions of academic nature, and not otherwise. In cases such as the current one, where the School has violated non-academic principles concerning its relation with its student, deference is inapposite, and cannot be the basis for a decision to dismiss a valid complaint against a school.

## FACTUAL BACKGROUND

In the spring of 2003, Defendants charged Ms. Kiani, a law student who suffers from a severe form of Cerebral palsy, with plagiarism. See Complaint at 4. Ms. Kiani, who had graduated Magna Cum Laude from the University of Texas, also suffers from dexterity handicaps due to her arthritis, resulting in a dramatic reduction in her ability to write with a normal speed. As a result, in the first weeks of her first year in law school, already buckling under the sheer amount of note-taking required of her in class, she asked for the assistance of a stenographer. She was flatly refused, and told that at the most, she would be provided with the same accommodations as she had in college. She attempted to explain to Defendants that in college, the course-load was not nearly as overwhelming, and the course materials were not as in-depth and intense as they were in law school. As

a result of the course pressure, Ms. Kiani began taking a somnolence-inducing medication, which had a calming effect. The medicine, however, also made her drowsy during the day, leading her to experience sleepiness during her classes as well as with her studies. Nonetheless, Ms. Kiani successfully completed all her courses, up until her third year.  In her third year of law school, Ms. Kiani had written four term papers, which later became the subject of the plagiarism proceedings. Ms. Kiani, had sought help from her professors by asking them to review her term papers before she would submit her final draft. For instance, one of her professors reviewed her paper at least "Six or Seven times" before she submitted her final draft to him. Exhibit C:, Kull Dep. at 16. Despite his in-depth reviews of the term paper, and although Ms. Kiani's final draft was "identical to the previous draft with a few pages added at the end," the Professor never mentioned to her that any of her citations were improper. Id. In another instance, another professor had graded Ms. Kiani's mid-term paper, although it contained "improper citations" and two months later graded her final paper. Exhibit  D Mariner Dep. at 36. Ironically, the "improper citations" in the mid-term paper, were on material which was written by the very professor who was grading it. Id. at  42. As a result, the professor gave Ms. Kiani a grade of D, acknowledging that she believed at the time, that Ms. Kiani had committed plagiarism. See Id. at 43-44. Defendants then assembled a "Judicial Discipline Committee," which on September 12, 2003, heard the case against Ms. Kiani. At the hearing, Ms. Kiani was represented by a Defendants' employee, a faculty member. She was also not afforded her right to remain silent, as required in the Defendants' disciplinary regulations. Despite a strong dissenting opinion, the Committee found Ms. Kiani in violation of the School's disciplinary rules and suspended her for six months. At

this point, Professor Mariner who had already given Ms. Kiani a D because she had believed that she had committed plagiarism, decided to further change her grade to a F. This single change of grade led Ms. Kiani's GPA to fall below what was permissible by the School, rendering her dropped from the School's J.D. program. As the result of Defendants' actions, in her complaint, Ms. Kiani has alleged that Defendants had breached their contract with her. She has also alleged that Defendants, by refusing her request for necessary and reasonable accommodations have violated the provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., P.L. 101--336, 104 Stat. 328 (1992); and Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (1988).

## LEGAL ARGUMENT

Under Fed. R. Civ. P. 56, the Court must grant Defendants' summary judgment Motion if "the record discloses that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Szabo v. Trustees of Boston Univ., No. 98-1410 (1st Cir. 1998). "To be a genuine issue of material fact, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Id. (quoting National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citations omitted). Moreover, in the current case, although the Court must adhere to these principles, it must also consider the

principle of "basic fairness" further discussed below.[1] This principle should be carefully considered as the stakes are tremendously high for Ms. Kiani.[2]

Defendants' Motion for Summary Judgment, seeks dismissal of all three counts of Ms. Kiani's complaint.

The first Count is brought under the theory of contracts. There is no question that a contract existed between the parties. In fact, Defendants have never refuted this assertion. See Def. Mem. at 5. The first issue, therefore, is whether Defendants breached their contract with Ms. Kiani.

---

[1] This principle is aptly applicable in this case. A handicapped student who has spent three grueling years in law school, who has substantially exhausted all her financial resources (her own funds as well as borrowed funds), has been aggrieved by the actions of Defendants. She has always argued that she did not commit plagiarism, and that she was under the influence of a medicine when she failed to correctly and adequately cite her sources on her term papers. In fact, she never intended to do anything wrong, unethical, or unlawful. If Defendants have their way, Ms. Kiani will never have any means to redress her grievances. As this document will further establish, this case is about correcting a wrong. Defendants have committed an injustice, and need to be held accountable for their actions.

[2] Ms. Kiani asks the Court to consider the substance of her complaint regardless of its form. For instance, Summary judgment should not be granted simply because of the form of Ms. Kiani's complaint. It is its substance, the core of her claims, which have sound legal bases , and therefore would be fair to survive. Indeed, it would be utterly unfortunate if form prevailed over substance in such a high-stakes case. It must also be noted that this is not a zero-sum game where if one party prevails, the other party necessarily loses. In other words, if Ms. Kiani prevails, the School will not need to be the "losing" party. To elaborate further, the main remedy, which Ms. Kiani is seeking is not monetary. It is an equitable remedy: she is asking that her case be reopened and be readjudicated before the School 's Judicial Discipline Committee. Ms. Kiani strongly believes that, if given another opportunity to present her case, she will be able to convince the Committee that she did not intend to plagiarize, and that she was under the influence of a medicine during the period in question. In fact, it is noteworthy that even the same Committee, which decided the case, did not vote unanimously. There, one Member, a professor, dissented and stated that she did not believe that Ms. Kiani intended to plagiarize. See Ex. B, Supra. In other words, if Ms. Kiani prevails, at most, the School will have to conduct another disciplinary hearing,, albeit this time observing all its procedural rules. Ms. Kiani, on the other hand, will be tremendously affected if her case fails to go forward. For instance, she will lose the opportunity to finish her degree at the Defendants' school, or transfer to a different ABA-accredited law school. She will also be deprived of any prospect to ever becoming an attorney. Finally, in addition to her financial losses, albeit unemployed, she will still be forced to pay back with interest her student loans. These are the injustices, which gravely concern Ms. Kiani.

**COUNT I : DEFENDANTS ENTERED INTO A CONTRACT WITH MS. KIANI AND THEN THEY BREACHED THEIR CONTRACT THROUGH THEIR CONDUCT BY FAILING TO OBSERVE A KEY PROVISION OF THE CONTRACT**

A contract is defined as "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement Second of Contracts, § 1, American Law Institute (1981).

More particularly, in interpreting "university contracts" the courts are generally guided by the principles set out in Schaer v. Brandeis Univ., 432 Mass. 474, 735 N.E.2d 373 (2000). There, the Court required a standard of "reasonable expectation -- what meaning the party making the manifestation, the university, should reasonably expect the other party to give it." Id. at 478, (quoting Giles v. Howard University, 428 F. Supp. 603, 605 (D.D.C. 1977)); Cloud v. Trustees of Boston University, 720 F.2d 721, 724 (1st Cir. 1983). When Ms. Kiani applied to the Defendants' school it was certainly reasonable for her to expect that Defendants would adhere to their own rules and standards. Equally, while she was at the School, dutifully abiding by all the various rules of the School, she reasonably expected Defendants to at least do the same. Defendants failed to abide by their own rules when they did not provide a written warning as mandated by the School's disciplinary rules and regulations and promulgated by Defendants. Article IV (1) of the Disciplinary Regulations states in pertinent part that:

> All students are to be informed of the right to counsel and the right to remain silent, and shall be warned that anything the student may say may be used against the student. The student *shall be requested to sign a statement to the effect that he or she has been informed of the above rights and has received the above warning*. (Emphasis added).
> Exhibit E.

7

Indeed, it is far from unreasonable for a prospective student to expect *full* adherence of the material terms of his or her contract with an academic institution. Ms. Kiani reasonably expected Defendants' school, a law school, to have uniform disciplinary rules and policies, and that such rules and policies are followed in the most concise and even-handed manner. In fact, when Ms. Kiani applied to the law school in the year 2000, the school had apparently made its disciplinary rules available on the Internet[3], leading students and prospective students to reasonably rely on its contents. The Defendants' argument that since Ms. Kiani was not aware of these rules, "she cannot claim reliance on [them] as a condition for entering into the contractual relationship with the University." Def. Mem. at 10. As discussed below, this argument cannot not pass legal muster. Furthermore, the Defendants' statement that "[t]he evidence shows that the Law School complied with its own procedures," hardly lends any further credibility to the School's position. Id. at 8.

The right to remain silent was a contractual right. It was a part and parcel of the contract, into which the parties entered, regardless of whether Ms. Kiani read the provision before she applied to the School. In fact, the School, by admitting Ms. Kiani, bestowed upon her this right. The right was meant to protect the student from undue pressure and exposure to undue liability. The right included the express requirement that Defendants request that the student sign a document. The Regulations also refer to "warning" which every student should receive. Defendants failed to provide Ms. Kiani, or her university-appointed attorney with any document, for her to sign. It would be unjust to arbitrarily single out one student to agree to waive this important right simply

---

[3] The document, titled "Disciplinary Regulations for all BUSL Students," in its first paragraph provides a web address of : "www.bu.edu/judicialaffairs/studentres.htm." See Exhibit A.

because Defendants did not want to follow their procedures. This would also be contrary to the apparent spirit and purpose of the provision, which is to afford the student certain safeguards against abuse by School officials.

In fact, Defendants' argument, as noted above, would militate against holding any contract valid. For example, when an individual enters into a contract with a credit-card company or a bank, he or she reasonably expects that that despite the fact that he or she has not read the company rules as they pertain to the individual, i.e., actions that they could take in the event of default by the individual, the rules would surely be followed as written. After all, if the individual is bound by these rules, the reasoning goes, so should the party, who in fact wrote them. Otherwise, any company can decide to not follow its own rules by simply arguing that the other contracting party has not read the rules. In contracts, one cannot pick and choose which provisions should or should not be followed. In this case, these Rules specifically pertained to Ms. Kiani as a student. They were crucial and material parts of the contract. Even if she never read them, by virtue of the fact that they were made available, it was reasonable to expect adherence of them.

Interestingly, the Defendants' Memorandum does not attempt to interpret the terms of the provision at issue here, leading the reader to believe that Defendants themselves believe that the provision is self-explanatory, and its meaning need not to be the subject of interpretation. Indeed, the terms of the provision at issue were clearly express terms. In contracts, ("[e]xpress terms are given greater weight than course of performance, course of dealing, and usage of trade, course of performance is given greater weight than course of dealing or usage of trade, and course of dealing is given greater weight than usage of trade." Affiliated FM Ins. Co. v. Constitution Reinsurance

<u>Corp</u> 416 Mass. 839, fn.10 (1994) (citing <u>Restatement (Second) of Contracts</u> § 203 (b) (1981).

      Finally**,** in interpreting contracts, the courts generally adhere to the principle that [i]f there is a plain, ordinary, and proper meaning of a term, that is evidence of how the parties intended to use that term." <u>Id</u>. at 846, quoting <u>Jamesbury Corp. v. Worcester Valve Co.</u>, 443 F.2d 205, 210 (1st Cir. 1971). There is nothing in the provision at issue that requires any interpretation.

      Defendants further seek to establish that in some manner, Defendants somehow advised Ms. Kiani of her right to remain silent. In her Complaint, Ms. Kiani has plainly stated that "[she] was *never* informed of her right to remain silent."(Emphasis added). Complaint ¶ 45; <u>See also</u> <u>Id.</u> ¶ 58 ("The Defendants failed to provide Ms. Kiani with a verbal and written document informing her of her right to remain silent."). To reiterate, at no point, before, during, or after the disciplinary proceedings of Sept. 12, 2003, did Defendants in any form advise Ms. Kiani of her right to remain silent. They did not do so verbally or in writing. Nor did they ask her attorney to have her sign a document to this effect. Defendants point to a Ms. Kiani's statement, made while under oath, and conclude, albeit incorrectly, that she "knew" that she had a right to remain silent. Def. Mem. at 12. This is a very creative, yet flawed stretching of the truth. In her deposition, Ms. Kiani stated that she had "read" the Disciplinary Regulations. Exhibit F: Kiani Dep. at 65. She never stated that she actually read the provision at issue. Moreover, she also stated that at the time she was "out of it" and that she "wished [she] was dead." <u>Id.</u> In fact, she later stated in her deposition that she did not know that she had the right to remain silent. <u>See</u> Exhibit F: Kiani Dep. at 79-81, 90. The Disciplinary Regulations is a

nine-page document, which purports to outline the school's disciplinary policies. See Exhibit A. The document is aptly written in legal parlance, purporting to convey the importance and seriousness of the issue of discipline. Ms. Kiani was never asked to read and understand the Regulations. Nor was she expected to infer from it that certain aspects of the Regulations were not going to be followed. In fact, she never imagined that the School would fail to abide by its own rules by failing to warn her of the important right to remain silent.

Defendants' claim that Professor Ryckman's statement during the hearing satisfied the requirement of the Regulations is far from credible. The casually-made remark, spoken in a matter-of-factly, journalist-like manner (See Def. Mem. at 12), which was not even directed at Ms. Kiani that "obviously the student has the right to remain silent" is grossly insufficient in apprising someone of their highly important right to remain silent. Understandably, in the highly emotional state of affairs during the hearing, Ms. Kiani, the "accused," was in no state of mind to listen to and comprehend what was being said by the participants, especially since the remarks were not directed to her. In hindsight, Ms. Kiani is appalled that Defendants would so aggressively argue to waive this right for her.

By not giving Ms. Kiani a written document to sign, as required, the School intentionally minimized, and in effect downplayed the importance of the proceedings, thus leading Ms. Kiani to fall into a false sense of security, innocently believing that by volunteering information, the Judicial Discipline Committee would be "understanding" and would take into account the medication as well as her mental and physical health.

Although this is not a criminal matter, however, the stakes are sufficiently high to use the following analogy: If a Miranda[4] warning is not given to an accused according to the required protocol, in certain instances, the evidence obtained could be considered the fruit of a poisonous tree, and would not be admissible.  See <u>USA v. Byram</u>, No. 97-2273 (1st Cir. 05/20/1998); <u>But</u> <u>See</u> <u>Oregon v. Elstad</u>, 470 U.S. 298, 309-10 (1985), (forbidding automatic application of the fruits doctrine for Miranda violations). Similarly, by not following its written procedure, the School in effect nullified its own proceedings.

As the result of Defendants' failure to forewarn Ms. Kiani of her right during the hearing, where for well over five hours she was placed on the witness stand and was extensively questioned by the judges, she has been irreparably harmed by the fact that her statements, made during these proceedings, obviously led to her suspension and ultimate ejection from the School. In fact, during her testimony, Ms. Kiani discussed her term papers in great detail, which in hindsight gravely implicated her. During the hearing, for example, she was asked numerous questions regarding the alleged plagiarism. Had she become aware of her right, she could have chosen to not answer them.  Therefore, it would not be unreasonable to argue that Defendants' action or lack thereof in not providing the warning, has in essence, invalidated the hearing and rendered its outcome null.[5]

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

[5] Defendants' Memo makes reference to Magistrate  Judge's  Report and Recommendation, written by the Hon. Lawrence P. Cohen, which in footnote 10 of the Report, reads:

> While it is true that Sections IV.1 and VI.6 of the Disciplinary Rules refer to a student's right to remain silent, Section VI.12 makes clear that any procedural error - and, in this case, that is all that Ms. Kiani alleges – will not result in the invalidation of "...the proceeding or disposition of the case." Thus, while Sections IV.1 and VI.6 may giveth, so, too, does Section VI.12 taketh away.

<u>See</u> Def. Mem. at 11-12.

The main reason Ms. Kiani calls the right to remain silent a "right" is not because of Ms. Kiani's allusion to the Constitutions of United States or the Commonwealth of Massachusetts. It is simply, yet precisely, because that *is* what the Defendants' own Disciplinary Regulations handbook calls it. See Exhibit E..

The students' contract can also in fact be considered as a contract of adhesion, a take-it-or-leave-it contract where one party basically imposes all its conditions on the other side. See Black's Law Dictionary, p. 40 (6th Ed. 1990). Even in that case, the party with the obvious power, is expected to at least follow its own rules. If anything, in the current case, it would be reasonable to assume that the Disciplinary Regulations were published in order to inform and perhaps even entice the students to apply to the School, and also to illustrate to the prospective students the kind of school Boston University Law School was.

Finally, Ms. Kiani explains why she did not take advantage of her right to appeal the Committee's decision. The fact is that at the time, Ms. Kiani believed, and upon advice of her university-appointed counsel, that under the School rules, she could not appeal in the absence of new evidence. See Exhibit A, Art. VI, § 13.

---

However, upon reading of the pertinent section of the Disciplinary Regulations, it appears that in the event of procedural errors, at the very least "corrective measures" should have been taken, which they obviously were not. In fact, in observance of the doctrine of completeness, the relevant section reads as follows:

> [VI] 12. Effect of procedural error**.** If, in the judgment of the Judicial Committee, any representative of the Dean's Office has failed to comply with the obligations of the Dean's Office under this Code or has otherwise acted in a manner that unduly prejudices the student, appropriate corrective measures may be directed at any stage of the proceedings. Corrective measures shall be within the discretion of the Committee, but procedural error *need not* require exclusion of evidence or otherwise invalidate the proceeding or disposition of the case. The proceedings of the Judicial Committee shall not ordinarily be invalid by reason of a defective mechanical recording of the proceeding.
> Emphasis added.

By using the term, "need not" instead of the ubiquitous "shall not," it appears that in fact, this section tends to keep open the possibility of invalidation of the hearing even under its own rules.

Moreover, an appeal would have been futile mainly because Ms. Kiani believed that

Dean Cass, considering his unfavorable stance toward Ms. Kiani, would have denied

her Petition for Reconsideration and/or appeal, hence, rendering her efforts akin to

running a fool's errand. Therefore, as stated above, Count I should not be dismissed

because there exist issues of material fact.

### COUNTS III AND IV: <u>MS. KIANI CAN ESTABLISH THAT SHE IS A VICTIM OF DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §§ 12101 ET. SEQ., P.L. 101--336, 104 STAT. 328 (1992); AND § 504 OF THE FEDERAL REHABILITATION ACT OF 1973, 29 U.S.C. § 794 (1988).</u>

In both of these counts, too, there are several issues of disputed facts, which can

only be addressed by the trier of fact. The first issue is whether the Defendants' refusal

to provide accommodations was based on reasonable and nondiscriminatory grounds.

This Court, as well as other courts, have held that the determination whether a particular

type of accommodation requested by a student is reasonable in a given case is ultimately

a question of fact that will depend on the particular circumstances of each case. <u>See

Carlin v. Trustees of Boston University,</u> 907 F. Supp. 509, 13 A.D.D. 641, 105 Ed. Law

Rep. 940 (D. Mass. 1995) (concluding that the plaintiff, a former pastoral psychology

Ph.D. student at the defendant's university, sufficiently established an issue of fact

whether the plaintiff was terminated from this program solely because of a mental

disability, thus precluding granting summary judgment to the defendant); <u>Wong v.

Regents of University of California,</u> 192 F.3d 807, 9 A.D. Cas. (BNA) 1227, 138 Ed.

Law Rep. 698 (9th Cir. 1999), <u>as amended,</u> (Nov. 19, 1999) (holding that the evidence

created an issue of fact with regard to the reasonableness of granting the plaintiff an

14

eight--week reading period before his pediatrics clerkship, as well as the issue of whether the plaintiff would be qualified to continue even with the requested accommodations). [6]

**A.** <u>Ms. Kiani Has Never Claimed Discrimination Solely Based on Stray Remarks.</u>

The Defendants' claim that Ms. Kiani is claiming discrimination based on several merely "stray" remarks is remarkably off the mark. See Def. Mem. at 8. In Count III of her complaint, Ms. Kiani clearly states that it was the Defendants' subsequent actions, which were discriminatory, not the remarks by themselves. <u>See</u> Complaint ¶ 75.  To be sure, Defendants' employees did make several derogatory remarks concerning Ms. Kiani. For example, Ms. Kiani's University-appointed attorney told her that Professor Rossman (previously incorrectly spelled as "Rothman") told him that the school wanted Ms. Kiani out of their school because she was "bringing down the school's ranking." Exhibit. G: Response No. 7 to Defendant's First Set of Interrogatories Directed to Plaintiff. Other examples abound. <u>See</u> Complaint ¶¶ 70-75; <u>see also,</u> Defendants' Exhibits 9, 26, 16.

Contrary to Defendants' claim, these were not "generalized" remarks. Def. Mem. at 14. They were intended for, and targeted Ms. Kiani. These type of remarks in fact set the stage for what transpired at the Judicial Discipline hearing on Sept. 12, 2003. Also, Defendants falsely claim that "Ms. Kiani has not shown that any of the individuals to whom she attributes what she considers to be derogatory remarks had any role in any of the decisions that led to her dismissal from the School of Law." Def. Mem. at 15. At least two of the individuals, whose names are mentioned in Defendants' memorandum  (Mark Pettit and Andrew Kull) were indeed key witnesses in the disciplinary hearing. In fact,

---

[6] For in-depth analysis of "reasonable accommodations" see Richard E. Kaye, <u>What Constitutes Reasonable Accommodation Under Federal Statutes Protecting Rights of Disabled Individual, as Regards Educational Programs or School Rules Applied to Learning Disabled Student,</u>  166 A.L.R. Fed. 503 (2004).

one of the individuals, Mark Pettit was a professor whose paper was the subject of the disciplinary hearing. <u>See</u> Exhibit H.

Moreover, the above argument notwithstanding, the law of this Circuit, does not absolutely close the door on the role of derogatory remarks in discrimination cases. The Court in <u>Gonzalez v. El Dia, Inc.</u>, 304 F.3d 63, 67 (1st Cir. 2002), observed that

> "stray workplace remarks," as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, *standing alone*, to establish either pretext or the requisite discriminatory animus.
> (Emphasis added).

None of the negative comments made by the various individuals stood alone. They were either preceded or followed by negative conduct on the part of Defendants. As noted above, two of the individuals in fact testified against Ms. Kiani during the Judicial Discipline hearing. Their testimony, in a substantive way, contributed to the ultimate ejection of Ms. Kiani from the law school. Ms. Kiani's claim is not about remarks that are simply insulting. These remarks were both scathing and destructive.

**B.** <u>Although There Is No Limitations Period Associated with ADA or the Rehabilitation Act of 1973, Nevertheless, Ms. Kiani's Injury Accrued on May 12, 2003, Well Within the Three-Year Permissible Period.</u>

As Defendants aptly note in their Memorandum, neither Title III of the ADA nor the Rehabilitation Act establish a limitations period. Defendants, however, go on to claim that a limitations period of three years apply in this case. Even if there were a limitation period, Ms. Kiani's claim was brought well within the three-year- period. Limitations periods generally start at the time when an injury has accrued. In discrimination cases, "[c]laims of discrimination accrue when the plaintiff is informed of the discriminatory act." <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d

431 (1980). In this case, the main injury that Ms. Kiani is complaining about is the

consequence of Defendants' conduct, which ultimately caused her ejection from the law

school. To be sure, the discriminatory act included, but was not limited to the School's

refusal to accommodate her with a stenographer. In fact, up until May 12, 2003, when she

received the ominous letter from Dean Cass, despite her sufferings and hardship, Ms.

Kiani was under the impression that she was going to graduate shortly. See Exhibit I.

Therefore, if a date needs to be provided, her injury accrued when she received the letter,

on May 12, 2003, well within the permissible period.


**C.** By Refusing Ms. Kiani's Request for a Stenographer, Defendants Discriminated Against Her Because Her Request was Both Reasonable and Feasible, and the Accommodation Would have Leveled the Field Vis-à-vis Other Students in Her Class.

Under the current law, accommodations should be both reasonable and non-

discriminatory. In this Circuit, it is discriminatory to not make:

> reasonable accommodations to the known physical or mental limitations
> of an otherwise qualified individual with a disability . . . , unless [the]
> covered entity can demonstrate that the accommodation would impose an
> undue hardship on the operation of the business of such covered entity.
> (Emphasis in original).

Manuella Dinoisio Reed v. LePage Bakeries, Inc., 244 F.3d 254, 257;
42 U.S.C. § 12112(b)(5)(A).

Under this principle, as the following facts illustrate, Defendants have acted

discriminatorily against Ms. Kiani.

In early October of 2000, shortly after the start of her classes, Ms. Kiani made an

appointment with the Defendants' Office of Disability Services in order to discuss her

problems concerning her inability with taking notes in class. She and her mother met with

Allan Macurdy, the Director of the Office. Ms. Kiani explained her predicament that

because of her arthritis in her hands, she had a very limited ability to write, and considering the in-depth nature of law school class lectures, she would need a stenographer[7]. Mr. Macurdy's terse response was that a stenographer was "not required." Exhibit J: Macurdy Affidavit, at 3. In fact, the interaction with Mr. Macurdy was so "uncomfortable" and "combative" that Ms. Kiani felt that she did not wish to continue the conversation. Exhibit F: Kiani Dep. at 21. At the time, Ms. Kiani was accompanied with her mother. It should be noted that since her birth, Ms. Kiani's mother has always been at her side, both caring for her and nurturing her. Mr. Macurdy made several comments including the statement that he did not wish to have a "triangular conversation" referring to her mother. Id. at 22. Not wishing "to make enemies," especially early in her first year, yet understandably disappointed, Ms. Kiani left and never returned to ask Mr. Macurdy for a Stenographer. Id. at 20-23.  Nevertheless, she did attempt to contact Dean Cass, the dean of the law school regarding her request, by going to his office, and by leaving a message with his office regarding her request.  See Id. at 23. She even contacted Assistant Dean Christine A. Marx. Dean Marx instructed her to go to Allan Macurdy. See Id. at 24-25. Defendants have produced a document, which purports to be an e-mail exchange between Ms. Kiani and Dean Marx. See Exhibit K. In her deposition, Ms. Kiani was asked about this email. She stated that although she recognized her own email to Ms. Marx, she did not remember receiving a reply from her. See Exhibit F: Kiani Dep. at 27-30.  In Dean Marx's deposition, when asked about this email, she answered that she did not know when the email was saved. Exhibit K: Marx Email. Ms. Kiani does not remember receiving a response from Dean Marx. Dean Marx

---

[7] According to the dictionary, a "stenographer" is a person who is "skilled in shorthand". The American Heritage Dictionary of the English Language, 1263 (William Morris ed.1973). See also Exhibit F.: Kiani Dep. at 32 ("a stenographer just records conversation verbatim").

also stated that she tried to "clean out" her email "periodically," acknowledging that she had deleted all emails, which were over a year old. Exhibit L: Marx Dep. at 31. Ms. Kiani is not alleging that any impropriety has taken place regarding this email. She is simply stating that she does not recall receiving it, and that she would have remembered if she had.

The burdens in discrimination cases rest on the shoulders of both parties. The plaintiff has the initial burden to produce that she is otherwise qualified. See Kaye, at 506. The plaintiff should produce "evidence of the existence of a reasonable accommodation that would enable the student to meet the educational institution's essential eligibility requirements." Id. The burden then shifts to the university to "produce evidence that the requested accommodation would require a fundamental or substantial modification of its program or standards." Id. The School can also show this by "producing evidence that the requested accommodations, regardless of whether they are reasonable, would not enable the student to meet its academic standards." Id. The School has not established that Ms. Kiani is not otherwise qualified to receive the assistance of a stenographer. In order for a person to be "otherwise qualified", the person "must prove that he [or she] is able to meet all of [the] academic requirements *in spite of* his [or her] handicap. (Emphasis in original). Axelrod v. Phillips Acad., Andover, 46 F. Supp. 2d 72, 83 (D. Mass. 1999) quoting Bercovitch v. Baldwin Sch., 133 F.3d 141, 154 (1st Cir. 1998). Indeed, Ms. Kiani has established that despite her disability, her lack of ability to take notes, and the influence of medicine, which she was under, she fared very well by completing all the academic requirements of the School for three long years. Contrary to Defendants' claims that Ms. Kiani was dropped because her GPA had fallen

below a minimum required, she was in fact ejected because she was accused of

plagiarism. <u>See</u> Complaint ; Def. Mem. Therefore, because of her struggles in law school

due to her disability, and in spite of them, she was otherwise qualified to receive the

accommodation, which she had requested. Her pre-law-school academic achievements

also point to the fact that she was otherwise qualified to receive the accommodation.

Defendants on the other hand, can not meet their burden. In <u>Wynne v. Tufts Univ.</u>

<u>Sch. of Med.</u>, 932 F.2d 19, 20 (1st Cir. 1991), the school had dismissed the plaintiff after

he failed "numerous courses during successive attempts to complete the first year

program." The <u>Wynne</u> Court, observing the requirements of the Rehabilitation Act, set

out the obligations of the schools as follows:

> {T]here is a real obligation on the academic institution to seek suitable
> means of reasonably accommodating a handicapped person and to submit
> a factual record indicating that it conscientiously carried out this statutory
> obligation.
> <u>Id.</u> at 20-21.

First, in meeting her request for a stenographer, there was no requirement for a

fundamental or substantial modification of their J.D. program. Defendants allude to

"further costs to be considered" when attempting to meet their burden. Def. Mem. at 19.

There is also no question of feasibility, as Defendants have already acknowledged that

stenographers have been used in the past for other students. <u>See</u> Def. Mem. at 20 ("one of

her classmates had a stenographer as an accommodation"). They have also argued that

they indeed provided Ms. Kiani with "comparable benefits." <u>Id.</u> at 3. Defendants,

however, do not provide any evidence to support this contention. They have simply stated

that Mr. Macurdy decided that the same goal can be accomplished by "way of alternative,

less expensive means." Def. Mem. at 20. There is nothing in the Defendants'

memorandum or Mr. Macurdy's Affidavit, which suggests that he was qualified to make such a determination. Mr. Macurdy, a person with no apparent medical training, could not be a final arbiter in determining whether a disabled person who suffered from cerebral palsy needed certain accommodations by simply deciding that a tape recorder or a note-taker was comparable to a stenographer. It would be a stretch of one's imagination if indeed they were. Besides, if as the School seems to assert, costs took precedence over the needs of the student, this could be discriminatory as well. Moreover, if costs were an issue, they were never discussed with Ms. Kiani.  Ms. Kiani could have made a decision on whether to borrow money herself to pay for this fundamental and indispensable vehicle. Such a discussion, and an informed decision based on the discussion, could have served a dual goal: It would had a highly positive effect both on Ms. Kiani's academic standing as well as on the School's view of her as a student. Defendants chose not to take any action to facilitate this goal.

## CONCLUSION

Ms. Kiani has established that there are genuine issues of material fact, which are still in dispute, and only the trier of fact can determine their ultimate outcome. Therefore, she respectfully requests that Defendants' Motion for Summary Judgment concerning Counts I, III, and IV of her complaint be denied.


                                        Respectfully submitted,

Dated: July 5, 2005                     Layla. Kiani, by her attorney


                                        /S/ Benjamin B. Tariri
                                        _____
                                        (f/k/a Ben Tahriri)
                                        343 Washington Street

Newton, MA 02458
Tel: (617) 965-1090
Fax: (617) 965-5020
BBO# 652042