UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAYLA KIANI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 04-cv-11838-PBS |
| v. ) | |
| ) | |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION
ON MOTION FOR SUMMARY JUDGMENT (Docket #25)

SOROKIN, M.J.

    Pending before the Court is Defendants' Motion for Summary Judgment. For the reasons set forth below, I recommend that the Court ALLOW the motion.

I.    BACKGROUND

    Upon graduating magna cum laude from the University of Texas at Arlington, plaintiff Layla Kiani ("Ms. Kiani" or "Plaintiff") was accepted to attend Boston University School of Law ("BUSL" or "law school") beginning in Fall 2000. Univ. of Texas Transcript, Ex. A (attached to complaint); Deposition of Layla Kiani 10-11, Pl.'s Ex. F (Apr. 21, 2005) (hereinafter, "Kiani Dep."). Having cerebral palsy and other medical conditions, Ms. Kiani submitted a request for accommodations to Allan Macurdy ("Macurdy"), Director of Disability Services at Boston University, before the start of school. Letter from Layla Kiani to Allan Macurdy, dated June 20, 2000, Def.'s Ex. 2. The request, supported by a note from her physician, asked that Ms. Kiani be given extra time on her exams and permission to tape lectures, among other things. Letter from

1

Dr. John Herring to Allan Macurdy, dated June 6, 2000, Def.'s Ex. 3.  Macurdy approved of the request and sent a letter to Ronald Cass ("Dean Cass"), Dean of BUSL, recommending both accommodations and, additionally, the use of a scribe or tape recorder for answering exam questions and a note-taker for lectures.  Letter from Allan Macurdy to Ronald Cass, dated July 28, 2000, Def.'s Ex. 4.  Dean Cass endorsed Macurdy's recommendation, and the accommodations were granted.  Letter from Aida Ten to Layla Jamshid, dated Oct. 6, 2000, Def.'s Ex. 5.[1]

Shortly after the start of law school in September 2000, Ms. Kiani became unhappy with her accommodations and talked with Macurdy about the need for a stenographer.  Kiani Dep. 19.  Ms. Kiani's new request was not accompanied by any supporting documentation.  Kiani Dep. 29-30.  Macurdy told Ms. Kiani that her existing accommodations were adequate and refused to recommend a stenographer as an additional accommodation.  Affidavit of Allan Macurdy ¶ 9, Def.'s Ex. 6 (May 11, 2005) (hereinafter, "Macurdy Aff.").  After this meeting, Christine Marx ("Dean Marx"), Assistant Dean of BUSL, received an e-mail from Ms. Kiani describing her need for a stenographer and asking her how to proceed further.  E-mail from Christine Marx to Layla Jamshid, dated Oct. 26, 2000, Def.'s Ex. 7.  Dean Marx replied with details on how to appeal Macurdy's decision to the Provost.[2]  Id.  She also advised Ms. Kiani to obtain documentation that might support her request for a stenographer.  Id.  Ms. Kiani took no further action and did not appeal Macurdy's decision.  Kiani Dep. 29-30.

---

[1] Layla Kiani changed her name from Layla Jamshid in the Summer of 2001.  Kiani Dep. 13.

[2] Ms. Kiani does not remember engaging in this exchange of emails with Dean Marx.  Kiani Dep. 25.  However, she has submitted no evidence disputing that the exchange occurred.

During her third year, in the Fall of 2002, Ms. Kiani took a course on Restitution taught by Professor Andrew Kull ("Professor Kull").  Deposition of Andrew Kull 10, Pl.'s Ex. C (Apr. 25, 2005) (hereinafter, "Kull Dep.").  In January 2003, while grading Ms. Kiani's term paper, Professor Kull discovered instances of what he believed to be plagiarism and reported this finding to Professor Stephen Marks ("Professor Marks"), Associate Dean for Academic Affairs at BUSL.  Id. at 35, 45.  On January 27, Professor Kull, Professor Marks, and Dean Cass held a meeting to discuss possible plagiarism by Ms. Kiani.  Id. at 45.  Dean Cass decided not to pursue a case against Ms. Kiani but informed Professor Kull that he could give her whatever grade he thought was warranted.  Affidavit of Stephen Marks ¶ 6, Def.'s Ex. 9 (May 9, 2005) (hereinafter, "Marks Aff."); Kull Dep. 45-46.  Professor Kull decided to give Ms. Kiani an "F" in the course.  Kull Dep. 56-57.

In the Spring of 2003, again, during her third year, Ms. Kiani enrolled in a course called Managed Care and the Law taught by Professor Wendy Mariner ("Professor Mariner").  Deposition of Wendy Mariner 7, 9, Pl.'s Ex. D (Apr. 26, 2005) (hereinafter, "Mariner Dep.").  In May 2003, Professor Mariner found instances of what she believed to be plagiarism in Ms. Kiani's final paper and contacted Dean Cass about her concerns.  Id. at 45-46.  Pursuant to Article IV(4) of the BUSL Disciplinary Regulations, Dean Cass suspended Ms. Kiani six days before graduation and designated Professor William Ryckman ("Professor Ryckman") to carry out an investigation into the alleged academic misconduct.  Letter from Ronald Cass to Layla Kiani, dated May 12, 2003, Def.'s Ex. 13; Affidavit of William Ryckman ¶ 4, Def.'s Ex. 14 (May 11, 2005) (hereinafter, "Ryckman Aff.").

During his investigation, Professor Ryckman reviewed all papers submitted by Ms. Kiani

3

during her career as a law student. Ryckman Aff. ¶ 6. The Disciplinary Regulations define plagiarism, in relevant part, as "the knowing use, without adequate attribution, of the ideas, expressions, or work, of another, with intent to pass such materials off as one's own." Disciplinary Regulations for All BUSL Students, Article II(2)(e), Pl.'s Ex. A. Based on this definition, Professor Ryckman discovered what he believed to be plagiarism in the papers that Ms. Kiani wrote for Professors Wendy Mariner, Mark Pettit, Andrew Kull, Frederick Bendremer, and Kate Silbaugh. Ryckman Aff. ¶¶ 5, 6.

Consequently, Professor Ryckman recommended that the law school pursue charges against Ms. Kiani for plagiarism in courses taught by Professors Mariner, Pettit, and Bendremer. Ryckman Aff. ¶ 6. It seems that Professor Ryckman did not recommend pursuing charges for plagiarism in Professor Kull's course because Dean Cass had previously decided not to take further action with regard to that instance of plagiarism. Marks Aff. ¶ 6; Defendant's Memorandum in Support of Motion for Summary Judgment 5, note 1 (hereinafter, "Def.'s Memo. S.J."). Also, charges were not pursued for work done in Professor Silbaugh's course because a clerical error prevented delivery to Ms. Kiani of the documents related to those charges. Katharine Silbaugh Aff. ¶ 6, Def.'s Ex. 15 (May 9, 2005). Dean Cass decided to move forward with Ryckman's recommended charges. Letter from Ronald Cass to Layla Kiani, dated July 17, 2003, Def.'s Ex. 17.

Arnold Rosenfeld ("Rosenfeld"), an adjunct professor at BUSL, represented Ms. Kiani. Kiani Dep. 63. At oral argument, both Plaintiff's and Defendants' counsel stated that Rosenfeld was assigned by the law school, though Ms. Kiani stated in her deposition that she chose Rosenfeld to represent her. Kiani Dep. 63. In any case, Rosenfeld defended Ms. Kiani against

4

the charges of plagiarism. Memorandum: In the Matter of Layla Kiani 1, Def.'s Ex. 19 (Nov. 7, 2003) (hereinafter, "Committee Memo.").

Professor Ryckman sent Rosenfeld a copy of the charges, supporting documentation, and the Disciplinary Regulations, which contained a notice that a student has the right to remain silent during investigations of student misconduct, among other things. Ryckman Aff. ¶ 10. Also, in accordance with the Disciplinary Regulations, Professor Ryckman offered to meet with Ms. Kiani to discuss the charges with her and to inform her of her right to counsel and her right to remain silent. Id. ¶ 7. Rosenfeld declined the offer at the behest of Ms. Kiani. Id.; Kiani Dep. 67. Ms. Kiani did not want to meet with Professor Ryckman because, according to Ms. Kiani, Professor Ryckman was "legendary" among students for making them "emotionally uncomfortable." Kiani Dep. 66.

On September 12, 2003, the Judicial Discipline Committee, consisting of Professors Tracey Maclin, Michael Harper and Nancy Moore, convened to consider the plagiarism charges against Ms. Kiani. Committee Memo. 1. Rosenfeld represented Ms. Kiani, who was present at the hearing, and Professor Ryckman presented the charges against her. Id. Before presenting the charges, Professor Ryckman explained some aspects of the Disciplinary Regulations. Judicial Committee Hr'g Partial Tr. 7, Def.'s Ex. 18 (Sep. 12, 2003). Specifically, Professor Ryckman said,

> In the disciplinary regulations, we have a definition of plagiarism which you are all familiar with that is in Article II, Subsection 1.E. I also want to comment that in Article IV of the disciplinary regulations one of the tasks of the person appointed by the Dean, and I am the Dean's designate for disciplinary matters, is to discuss the matter with the student if the student chooses to have that happen.
>
> Obviously the student has a right to remain silent and on advice of counsel I was

informed that Miss Kiani did not wish to be interviewed by me. That is why these materials don't contain a transcript of that interview which is customary and I am sure you have seen before in prior cases.

Id.

There is no dispute that both Ms. Kiani and her counsel were present for this statement. Committee Memo. 1. At her deposition, Kiani stated that she recalled Professor Ryckman making this statement. Kiani Dep. 79. Nonetheless, Ms. Kiani contends that she was never truly advised of her right to remain silent because Professor Ryckman, when making the quoted statement, did not address her directly. Plaintiff's Memorandum in Support of her Opposition to Defendants' Motion for Summary Judgment 11 (hereinafter, "Pl.'s Memo. Opp. S.J."). The parties have submitted neither a transcript of the entire disciplinary hearing nor Ms. Kiani's testimony from the hearing. The Court has only a partial transcript of the opening of the hearing submitted by Boston University as well as the summary contained in the Committee's decision memorandum.

At the hearing, Professor Ryckman presented testimony from Professor Kull, and Rosenfeld presented testimony from Professor Pettit and Ms. Kiani. Committee Memo. 1. Ms. Kiani also testified about the circumstances surrounding her alleged acts of plagiarism. Id. Ms. Kiani testified that she never plagiarized because she lacked the necessary intent and that her judgment was impaired while she was writing her papers because she was taking inappropriately prescribed medicine. Id. at 2. In support of Kiani's position, Rosenfeld submitted to the Committee after the hearing an affidavit and two physician reports from a neurologist to address whether or not Ms. Kiani had the intent to plagiarize. Id. at 1.

Upon review of all testimony and evidence, the Committee decided that Ms. Kiani was

6

guilty of plagiarism. Committee Memo. 3. The decision seems to have been a difficult one. See id. at 3-7. According to the written opinion issued by the Committee, one professor dissented on grounds that Ms. Kiani did not have the requisite intent for her acts to be considered plagiarism. Id. at 6. Another professor concurred with the majority opinion but characterized the decision as "a very close case." Id. at 4. The Committee accepted as a mitigating factor Ms. Kiani's use of inappropriately prescribed medicine and penalized her with a six month suspension rather than the presumptive penalty of expulsion.[3] Id. at 3-4. The Committee also noted that the relevant professors had the opportunity to re-grade Ms. Kiani's papers in light of her plagiarism. Id. at 4.

Accordingly, Professor Mariner changed Ms. Kiani's grade from a "D" to an "F." Letter from Wendy Mariner to Aida Ten, dated Dec. 16, 2003, Def.'s Ex. 20. Professors Pettit and Bendremer also submitted grade changes. Letter from Mary Jo Sullivan to Layla Kiani, dated Dec. 18, 2003, Def.'s Ex. 21. Consequently, Ms. Kiani's grade point average fell below the minimum required for good standing, and she was expelled from the law school for academic deficiency. Id.

Following her dismissal, Ms. Kiani petitioned the Academic Standards Committee for reinstatement. Academic Standards Committee Record, Def.'s Ex. 22 (Jan. 14, 2004). The Academic Standards Committee recommended that her petition be denied, and on February 23, 2004, the faculty voted to follow the recommendation and deny Ms. Kiani readmission into BUSL. Academic Standards Committee Record, Def.'s Ex. 23 (Feb. 4, 2004); Faculty Meeting Record, Def.'s Ex. 24 (Feb. 23, 2004). Ms. Kiani has not graduated from BUSL, nor any other

---

[3] The suspension was retroactively applied, so that Ms. Kiani's suspension began on June 1, 2003 and ended on November 30, 2003.

law school. Kiani Dep. 11.

On August 9, 2004, plaintiff Layla Kiani filed a ten-count complaint in Suffolk Superior Court (Docket #4). Pursuant to 28 U.S.C. § 1331 and 1367(a), defendants Trustees of Boston University ("University" or "law school") removed the case to this Court (Docket #1). The Court dismissed Count II and Counts V through X as to the University and all counts against the individual defendants (Docket #20) in response to Defendants' Motion to Dismiss (Docket #5).

Three counts remain against the University. Count I alleges a breach of contract by the University. Counts III and IV allege violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, respectively. The University now moves for summary judgment.

II.   DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue only exists when the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." National Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A fact is material if it has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). In considering whether or not a genuine issue of material fact exists, this Court "read[s] the record and indulge[s] all inferences in the light most favorable to the nonmoving party." Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 334 (1st Cir. 1993).

A party may defeat a motion for summary judgment if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment will be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

    A.    <u>The Breach of Contract Claim (Count I)</u>

In Count I, Plaintiff alleges that the law school's Disciplinary Regulations constitute a binding contract and that the law school breached this contract by failing to follow its own disciplinary procedures, in particular the provision regarding the right to remain silent. This provision, Article IV(1) of the Disciplinary Regulations, states, in relevant part:

> 1. *Investigation of reported student misconduct.* . . . At the direction of the Dean, an Associate Dean or other delegate of the Dean shall discuss the matter with the student at the earliest opportunity.... All students are to be informed of the right to counsel and the right to remain silent, and shall be warned that anything the student may say may be used against the student. The student shall be requested to sign a statement to the effect that he or she has been informed of the above rights and has received the above warning.

Disciplinary Regulations for All BUSL Students, Article IV(1).

Plaintiff alleges that the law school neither informed her of her right to remain silent nor asked her to sign an acknowledgment of her rights. Plaintiff eventually testified at the Judicial Discipline Committee hearing, and she contends that her testimony led to the Committee's decision finding her guilty of plagiarism. In sum, Plaintiff alleges that the law school's failure to follow its procedures constituted a breach of contract that eventually led to her suspension and dismissal.

A breach of contract claim requires, "at a minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." Guckenberger v. Boston University, 957 F. Supp. 306, 316-17 (D. Mass. 1997). For purposes of this motion, Defendants do not dispute that an entering student forms a contractual relationship with her university and that a disciplinary code can be part of that contract. Thus, the Court assumes, without deciding, that the Disciplinary Regulations are part of a valid contract between Ms. Kiani and the law school. See, e.g., Schaer v. Brandeis University, 432 Mass. 474, 478 (2000) (considering a breach of contract claim involving a university's disciplinary rules, under the assumption that a valid contract exists).

In interpreting the contract between a university and its student, this Court applies "the standard of 'reasonable expectation - what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.'" Cloud v. Trustees of Boston University, 720 F.2d 721, 724 (1st Cir. 1983) (quoting Lyons v. Salve Regina College, 565 F.2d 200, 202 (1st Cir. 1977), cert. denied, 435 U.S. 971 (1978)). Expressed another way, the law school's performance of its duties under the Disciplinary Regulations must "fall within the range of reasonable expectations of one reading the [Disciplinary Regulations]." Id. at 724-25; see also, Schaer, 432 Mass. at 478 (considering whether or not a university "failed to meet [the student's] reasonable expectations" under the contract). Because the contract governs a student-university relationship, it is important to note that "courts should be slow to intrude into the sensitive area of the student-college relationship, especially in matters of curriculum and

discipline." Russell v. Salve Regina College, 890 F.2d 484, 489 (1st Cir. 1989).[4]

    1.    The Alleged Breach of Contract

Article IV(1) of the Disciplinary Regulations says that the law school will inform a student of her right to remain silent and ask her to sign an acknowledgment before an official from the law school discusses charges of plagiarism with the student. The undisputed evidence shows that Boston University met its substantive and procedural obligations.

First, at the misconduct hearing attended by Ms. Kiani and her counsel, Professor Ryckman stated, "[o]bviously, a student has a right to remain silent." Judicial Committee Hr'g Partial Tr. 7. Plaintiff concedes in her deposition that she recalls Ryckman making the statement. Kiani Dep. 79. In short, the University gave her notice and she heard it. Second, the University assigned Ms. Kiani counsel. The record establishes that he represented her ably and vigorously. Third, Professor Ryckman sent to Ms. Kiani's counsel documents that included the Disciplinary Regulations. Ryckman Aff. ¶ 10. According to her own deposition, Ms. Kiani read the Disciplinary Regulations before the hearing. Kiani Dep. 65, 72-73. Finally, Professor Ryckman offered to meet with her to discuss the charges and her rights prior to the hearing, as provided for in the regulation that Ms. Kiani cites; however, Ms. Kiani refused Ryckman's offer.

Plaintiff's responses to these facts are insufficient. As for Professor Ryckman's statements, Plaintiff argues that because she was in a "highly emotional state of affairs," she "was in no state of mind to listen to and comprehend what was being said by the participants, especially since the remarks were not directed to her." Pl.'s Memo. Opp. S.J. 11. Regarding the

---

[4] Ms. Kiani does not request the Court to act as a court of appeal reviewing the merits of the plagiarism decision, a position made clear by counsel at oral argument.

regulations, Plaintiff contends that she was "so out of it" that she "wished [she] was dead" when she read the Disciplinary Regulations. Kiani Dep. 65. Therefore, she argues that she could not have understood what she read. Pl.'s Memo. Opp. S.J. 10. She also argues that she only read certain portions of the Disciplinary Regulations and not the sections involving her right to remain silent. Pl.'s Memo. Opp. S.J. 10.

The short answer to Ms. Kiani's arguments is that Professor Ryckman stated her right to remain silent; she heard him so state and even much later at her deposition recalled him making the statement. The University gave her notice; it met its substantive obligation. Moreover, the University could reasonably expect that Ms. Kiani understood the notice it provided her in the various forms already described, particularly because Ms. Kiani was represented by competent counsel. Conceivably, this case might be different if Ms. Kiani or her counsel had raised a lack of understanding of the notice at the time, but there is no such evidence.

Regarding the procedural aspect of the regulation, Article IV(1) provides that the law school will request a signed acknowledgment of rights. This provision ensures that the student receives notice of the right to remain silent. The record establishes Ms. Kiani received the required notice a number of times. Moreover, Article VI(12) of the Disciplinary Regulations states that procedural errors and defects do not invalidate Judicial Discipline Committee hearings.[5] This provision essentially limits the law school's contractual obligation to keep

---

[5] Article VI(12) states:

> 12. *Effect of procedural error.* If, in the judgment of the Judicial Committee, any representative of the Dean's Office has failed to comply with the obligations of the Dean's Office under this Code or has otherwise acted in a manner that unduly prejudices the student, appropriate corrective measures may be directed at any stage of the proceedings. Corrective measures shall be within the discretion of the

student misconduct proceedings free from procedural defects. Here, at most there is a technical deficiency of no significance: Ms. Kiani's only statements came after Professor Ryckman stated she had a right to remain silent and then only at the request of her counsel when he called her as a witness.

    2.    The Injury Plaintiff Claims

Moreover, Plaintiff has not shown that the alleged breach of contract caused her any damage. Plaintiff alleges that she "discussed her term papers in great detail [at the hearing], which in hindsight gravely implicated her." Pl.'s Memo. Opp. S.J. 12. The evidence shows otherwise.

For the finding of plagiarism, the Committee relied, not on Ms. Kiani's testimony, but instead on the paper record, i.e. Ms. Kiani's papers and the copies of the outside materials used in those papers. Committee Memo. 2, 4. Carefully analyzing Ms. Kiani's lack of attribution and quotation marks in her papers, one committee member states that the papers themselves provide "sufficient evidence to show that she had the requisite 'intent'" to plagiarize.[6] Id. at 5. As a whole, the opinion clearly indicates that the case was "essentially a paper case," just as Professor Ryckman stated at the start of the hearing. Judicial Committee Hr'g Partial Tr. 3. In other words, the Committee would certainly have reached the same decision adjudicating solely on the

---

> Committee, but procedural error need not require exclusion of evidence or otherwise invalidate the proceeding or disposition of the case.
> ...
> Disciplinary Regulations for All BUSL Students, Article VI(12).

[6] The Committee also looked at her first year papers, which were not implicated in the plagiarism charges, and noted that "Ms. Kiani was well aware of the requirements of adequate attribution." Committee Memo. 2. Thus, her first year papers provided the Committee with further evidence of the intent to plagiarize.

13

papers. As such, Ms. Kiani's testimony did not cause the Committee to find her guilty of plagiarism.

If anything, Ms. Kiani's testimony *helped* her case. Ms. Kiani defended herself by informing the Committee that she did not understand the rules of citation while she wrote her papers because she was taking inappropriately prescribed medicine. Committee Memo. at 2. The Committee seems to have struggled with its decision *because* of Ms. Kiani's testimony. One of three judges dissented from the finding of plagiarism for this reason, saying that Ms. Kiani's lack of citation "might be explained by her apparent drug-induced enervation." Id. at 7. Swayed by Ms. Kiani's testimony, another judge found the case to be a "very close" one. Id. at 4. Furthermore, the Committee chose a lesser penalty of suspension because of Ms. Kiani's testimony, even though the presumptive penalty for plagiarism is expulsion. Id.

Other than the blanket assertion that her testimony harmed her, Ms. Kiani submits no evidence suggesting her testimony actually damaged her case. Indeed, she has not submitted a transcript of the entire hearing or even of her testimony. Even drawing all reasonable inferences in Ms. Kiani's favor, on the undisputed facts before the Court, I cannot say that her testimony harmed her.

      3.      Basic Fairness

Lastly, Plaintiff asserts that the law school should be liable for breach of contract under the theory that the law school's conduct contravened basic fairness. In cases where a student contends that the university breached its contract because of a defective disciplinary hearing, courts not only engage in a reasonable expectations analysis but "also examine the hearing to ensure that it was conducted with basic fairness." Cloud, 720 F.2d at 725.

The law school's proceedings complied with notions of basic of fairness. Ms. Kiani was fully represented by counsel throughout the proceedings. At the hearing, Ms. Kiani had her counsel with her,[7] and there is no indication that she was ever coaxed or coerced into breaking her silence. Ms. Kiani chose to speak and presented information helpful to her case. The record reflects a meaningful effort on Rosenfeld's part to present a defense, which was partially successful. The Committee issued a comprehensive, thoughtful decision after wrestling with difficult issues. While I am sympathetic to Ms. Kiani's circumstances, she has produced no evidence to establish the basic unfairness of the proceedings other than her understandable unhappiness with the result.

Thus, I recommend that the Court enter summary judgment in Defendants' favor on Count I.

B.  The ADA Claim (Count III)

In Count III, Plaintiff alleges that law school faculty members made discriminatory remarks. Allegedly, a faculty member or members stated that Ms. Kiani was "not intellectually up to"[8] the law school's standards and that the school wanted her out because she was "bringing down the school's ranking."[9] Complaint ¶ 73; Response to Defendant's First Set of

---

[7] At oral argument, Plaintiff's counsel intimated that Ms. Kiani's school-appointed counsel, Rosenfeld, was biased in representing her because Rosenfeld is a professor at the law school with significant ties thereto. Plaintiff candidly informed the Court that Rosenfeld is an *adjunct* professor, i.e. at most a part-time or incidental law school employee. Plaintiff failed to produce any evidence whatsoever to support her "biased counsel" argument.

[8] Plaintiff alleges that Rosenfeld had told her that Professor Rossman had told him that a faculty member had said this.

[9] Plaintiff alleges that Rosenfeld had told her that Professor Rossman had told him that a faculty member had said this.

Interrogatories Directed to Plaintiff No. 7, Def.'s Ex. 26 (Mar. 30, 2005) (hereinafter, "Pl.'s Interrog."). A faculty member or members also allegedly stated that there had been "some regret admitting [Kiani]" to the school.[10]  Complaint ¶ 74; Pl.'s Interrog. No. 8. Plaintiff further alleges that a faculty member said, "If we could make an example of Layla Kiani think of what we could do [sic] other students who are not disabled."[11] Pl.'s Interrog. No. 9. Plaintiff contends that these remarks evidence a discriminatory motive and that her disability was a motivating factor when the law school dismissed her. Pl.'s Memo. Opp. S.J. 15. Thus, Plaintiff brings a discrimination claim under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*.

Analysis of discrimination claims usually involves the familiar burden-shifting approach employed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1995). See, e.g., Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 (1st Cir. 2002). For the purposes of this case, however, a full McDonnell Douglas analysis is unnecessary because the parties focus on one key issue: whether or not the alleged remarks by faculty members are sufficient to show that Ms. Kiani's dismissal was motivated by her disability. See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430-31 (1st Cir. 2000) ("At the summary judgment phase, courts should not unduly complicate matters . . . by applying legal rules which were devised to govern the basic allocation of burdens and order of proof." (citations and internal quotation marks omitted)).

In general, "'stray workplace remarks,' as well as statements made either by

---

[10] Plaintiff alleges that Rosenfeld had told her that Professor Pettit had told him that a faculty member had said this.

[11] Plaintiff alleges that Professor Marks had told her that a faculty member had said this. Professor Marks denies in his affidavit ever making the statement.

nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) (dismissing an employment discrimination claim brought under the ADEA and ADA). "[M]ere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not *probative of pretext* absent some discernible evidentiary basis for assessing their temporal and contextual relevance." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) (dismissing race and gender discrimination claims; emphasis in original).

In this case, the context of each remark, even after discovery, remains a mystery. Ms. Kiani has never specified who said the remarks or when they were said. Ms. Kiani heard of each remark through an attenuated chain of third-parties. Moreover, the statements themselves are either unrelated to Ms. Kiani's disability or too ambiguous to evidence a discriminatory motive. Plaintiff's reliance on these stray remarks is tenuous at best.

Plaintiff argues that even if stray remarks, standing alone, are inadequate, the remarks in this case are sufficient because they "were either preceded or followed by negative conduct" by faculty members. Pl.'s Memo. Opp. S.J. 16. Specifically, both Mark Pettit and Andrew Kull testified at the Judicial Discipline Committee hearing, allegedly contributing to Ms. Kiani's eventual dismissal. Id. Plaintiff's argument fails because there is no evidence that either Professor Pettit or Kull made any of the alleged remarks.[12] Furthermore, there is no evidence that

---

[12]Ms. Kiani alleges that "Professor Mark Pettit conveyed to [Kiani's] University-appointed attorney that someone at the school made the [discriminatory] comment." Pl.'s Interrog. No. 8. Also, Ms. Kiani has not implicated Professor Kull in connection with any remark.

any of the remarks were made by members of the Discipline Committee appointed by Dean Cass. Thus, there is no evidence that the speakers had any role in the decision of which she complains. See Webber v. International Paper Co., 417 F.3d 229, 236-37 (1st Cir. 2005) (ruling irrelevant discriminatory remarks by personnel not involved in the allegedly discriminatory act).

Accordingly, I recommend that the Court enter summary judgment in Defendants' favor on Count III.

### C. The Rehabilitation Act Claim (Count IV)

In Count IV, Plaintiff alleges that the law school discriminated against her "by depriving her of the essentials necessary for a severely handicapped student." Complaint ¶ 80. In particular, Plaintiff alleges that the school's failure to accommodate her with a stenographer violated the Rehabilitation Act of 1973, 29 U.S.C. § 794.[13] In response, Defendants argue that Plaintiff cannot bring the Rehabilitation Act claim because the statute of limitations has expired.

"[T]he case law construing the ADA generally pertains equally to claims under the Rehabilitation Act." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Neither the ADA nor the Rehabilitation Act explicitly defines a statute of limitations period, however. Downs v. Massachusetts Bay Transp. Auth., 13 F. Supp. 2d 130, 136 (D. Mass. 1998); see also, Sigros v. Walt Disney World, Co., 190 F. Supp. 2d 165, 168 (D. Mass. 2002). Therefore, this Court must "borrow the most analogous statute of limitations from

---

[13] In addition to the stenographer, Count IV also alleges that the law school failed to provide Ms. Kiani with a private room to listen to her in-class tape recordings. To bring a Rehabilitation Act claim, Plaintiff must have requested the reasonable accommodation. See Reed v. Lepage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001). However, there is no evidence that the Plaintiff ever requested a private room as a reasonable accommodation, and neither party disputes this issue. Therefore, the claim alleging the failure to provide a private room need not be considered further.

18

[Massachusetts] law, provided that it does not conflict with federal law or policy." <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 118 (1st Cir. 2003). Since ADA claims can be characterized as personal injury claims, Massachusetts' three-year statute of limitations for personal injury claims applies. <u>Downs</u>, 13 F. Supp. 2d at 136; M. G. L. ch. 260 § 2A. At oral argument, Plaintiff agreed that the three-year statute of limitations governs.

On or about October 26, 2000, Ms. Kiani went to Allan Macurdy and requested a stenographer. E-mail from Christine Marx to Layla Jamshid; Macurdy Aff. ¶ 8; Kiani Dep. 19. Macurdy told Ms. Kiani that her request was denied, and she decided not to pursue her request any further. <u>Id.</u> Thus, she was informed of the alleged discriminatory act, i.e. the refusal to provide a stenographer, on or about October 26, 2000. Plaintiff filed the present suit on August 9, 2004. Because more than three years elapsed between the time Ms. Kiani learned of the refusal to provide her a stenographer and the filing of her suit, the statute of limitations bars this claim.

Quoting <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 258 (1980), for the proposition that "[c]laims of discrimination accrue when the plaintiff is informed of the discriminatory act,"[14] Plaintiff contends that her claim under the Rehabilitation Act "accrued when she received the letter [of suspension from Dean Cass], on May 12, 2003." Pl.'s Memo. Opp. S.J. 16-17. Under the Rehablitation Act, however, Plaintiff challenges the denial of the stenographer which occurred on or about October 26, 2000. Even if the lack of a stenographer had somehow contributed to Ms. Kiani's getting suspended, the suspension would be a mere consequence of

---

[14]Plaintiff quotes <u>Delaware State College</u>, which does not contain this quote. The quote can actually be found in <u>Everett v. Cobb County School District</u>, 138 F.3d 1407, 1410 (11th Cir. 1998), which cites <u>Delaware State College</u>.

the discriminatory act and not the act itself.  For statute of limitations purposes, "[the] proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful."  Delaware State College, 449 U.S. at 258 (internal quotation marks omitted; emphasis in original).

Because the statute of limitations bars the claim, the Court need not consider whether or not the law school failed to provide reasonable accommodations.

III.    CONCLUSION

For the foregoing reasons, I recommend that the Court ALLOW Defendants' Motion for Summary Judgment (Docket #25) and enter judgment in favor of Defendants.[15]

/s/ LEO T. SOROKIN
LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

Date: November 10, 2005

---

[15] Any party objecting to the proposed findings and recommendations of this Report and Recommendation must file a written objection thereto within 10 days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.